UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
TORREY GRAGG,                )   No. C12-0576RSL
                             )
            Plaintiff,       )
                             )
    v.                       )   ORDER GRANTING IN PART
                             )   MOTION FOR JUDGMENT ON THE
ORANGE CAB COMPANY, INC., *et al.*,  )   PLEADINGS AND GRANTING
                             )   LEAVE TO AMEND
            Defendant.       )
_____)

This matter comes before the Court on "Ridecharge, Inc. and Orange Cab Company, Inc.'s Motion for Judgment on the Pleadings." Dkt. # 29. Plaintiff alleges that he received an unsolicited text message from defendants, acting in concert, offering a free smart phone application ("app") that would allow plaintiff to book defendants' taxi cabs. Plaintiff maintains that the offer was part of a larger marketing campaign in the State of Washington and elsewhere, that downloading the app would redound to the commercial benefit of defendants, and that defendants sent the unsolicited text message by means of an automated telephone dialing system ("ATDS"). Plaintiff alleges that this conduct violates three statutes and seeks declaratory, injunctive, and compensatory damages on behalf of himself and others who are similarly situated. Defendants seek dismissal of all of plaintiff's claims.[1]

---

[1] The Court finds that this matter can be decided on the papers submitted. Plaintiff's request for oral argument is, therefore, DENIED.

ORDER REGARDING MOTION FOR
JUDGMENT ON THE PLEADINGS

Where, as here, a motion under Fed. R. Civ. P. 12(c) is used to raise the defense of failure to state a claim, the Court's review is the same as it would have been had the motion been filed under Fed. R. Civ. P. 12(b)(6). McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). Although the Court's review is generally limited to the contents of the complaint (Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996)), Ninth Circuit authority allows the Court to consider documents referenced extensively in the complaint, documents that form the basis of plaintiff's claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted (United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003)). Because the screen shot of the text message plaintiff received on February 26, 2012, falls within one or more of these categories, the allegations of the complaint and the text message will be accepted as true for purposes of this motion and construed in the light most favorable to plaintiff. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). The other factual allegations put forth by the parties – such as defendants' assertions that plaintiff requested a taxi and received the text message while a taxi was en route to his location – have not been considered.

**A. PLEADING STANDARD**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory or (ii) insufficient facts under a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los

1  Angeles, 828 F.2d 556, 561 (9th Cir. 1987). The allegations must give rise to something more
2  than mere speculation that plaintiff has a right to relief. Twombly, 550 U.S. at 555. The
3  question for the Court is whether the facts in the complaint sufficiently state a "plausible"
4  ground for relief. Twombly, 550 U.S. at 570. If the Court dismisses the complaint or portions
5  thereof, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130
6  (9th Cir. 2000).

**B. TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. § 227**

Defendants argue that plaintiff's TCPA claim fails because the allegation that an ATDS was used is wholly conclusory and not plausible on the facts alleged. Defendants point out that the text message plaintiff received was customized and assert that it was sent in response to a request for services from plaintiff. The message, in its entirety, reads:

> Taxi #850 dispatched @ 05:20. Smart phone? Book our cabs with Taxi Magic - #1 FREE taxi booking app http://cabs.io/29e1b7d

Dkt. # 34 at ¶ 6. Defendants argue that this customization negates any inference that an auto dialer was used to transmit the message.

The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1). The Federal Communications Commission ("FCC") has determined that both voice messages and text messages to wireless numbers are prohibited. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 68 Fed. Reg. 44144-01, 44166 (July 25, 2003).[2]

---

[2] The ban on calls to wireless numbers was intended to protect consumers from incurring costs related to unsolicited in-coming calls and therefore applies to all such calls (unless made for an emergency purpose or with prior express consent of the recipient) "regardless of the content of the call, and is not limited only to calls that constitute 'telephone solicitations.'" Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 68 Fed. Reg. 44144-01, 44166 (July 25,

An ATDS is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Machines used to dial telephone numbers from a list fall within the statutory definition of an ATDS: "the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective [than dialing randomly or sequentially generated numbers], but that the basic function of such dialing equipment[] had not changed – the capacity to dial numbers without human intervention." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 73 Fed. Reg. 6041-01, 6042 (Feb. 1, 2008).

Plaintiff alleges that he received an unsolicited text message, that he did not consent to receipt of the text message or the storage of his wireless number for marketing purposes, and that the message he received was sent by means of an ATDS. Based only on the allegations of the complaint, this last contention, while possible, does not appear plausible. Plaintiff does not disavow a business relationship with defendants, and he carefully avoids stating that he did not provide his wireless number to defendants, giving rise to the eminently reasonable inference that the text he received was a personal and individual response to a request for a taxi. Plaintiff's allegations regarding the frequency with which this message has been sent and the use of an ATDS to send them are unsupported by any specific facts and appear less likely than the alternate inference, namely that plaintiff received a customer-specific text (including an advertisement for Taxi Magic) through human agency, rather than an ATDS.

Although the Court finds that plaintiff's allegations regarding the use of the ATDS are insufficient under Twombly, leave to amend the complaint is appropriate. The record shows that plaintiff can, consistent with his Rule 11 obligation, provide additional allegations regarding (1) the number of texts defendants sent containing substantially the same message regarding

---

2003); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 73 Fed. Reg. 6041-01, 6042 (Feb. 1, 2008).

ORDER REGARDING MOTION FOR
JUDGMENT ON THE PLEADINGS            -4-

Taxi Magic and (2) the temporal disconnect between the time plaintiff utilized defendants' cab services and the time he received the text. Both allegations would support the conclusion that defendants used equipment to store and dial plaintiff's cell phone number long after he had completed his transaction with defendants in violation of the TCPA.[3]

**C. COMMERCIAL ELECTRONIC MAIL ACT ("CEMA"), RCW 19.190.010 *et seq*.**

CEMA precludes "the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service . . . ." RCW 19.190.060. "Commercial," in this context, means "sent to promote real property, goods, or services for sale or lease." RCW 19.190.010(5). Defendants argue that offering a free download through a text message is not "commercial" because nothing is offered for sale or lease. This argument has some support in the case law. In August of this year, the Honorable Marsha J. Pechman determined that a text message telling the recipient to "Get on Voxer" and providing a link to a website where he could download an app was not a "commercial electronic message" for purposes of CEMA because the download was free. Even though using Voxer in the future might result in charges, Judge Pechman reasoned that, absent an immediate exchange of money, there was no "sale or lease" and the offending text was not "commercial." Hickey v. Voxernet LLC, __ F. Supp.2d __, 2012 WL 3682978 at *5-6 (Aug. 13, 2012).

Two months after Hickey was decided, the Ninth Circuit considered the same sort of argument in the context of a Washington Automatic Dialing and Announcing Device Act

---

[3] Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more. See Hickey v. Voxernet LLC, __ F. Supp.2d __, 2012 WL 3682978 at *2-3 (Aug. 13, 2012).
  Contrary to defendants' argument, the inclusion of personalized information in a voice mail or text message does not immunize it from scrutiny under the TCPA. Programs capable of merging a list of consumer names or other identifying information with a boilerplate message are commonplace. The issue is whether the allegations of the complaint, taken as a whole and including the nature of the communication, give rise to a plausible belief that the message was sent using an ATDS.

ORDER REGARDING MOTION FOR
JUDGMENT ON THE PLEADINGS            -5-

("WADAD") claim. Chesbro v. Best Buy Stores, L.P., 697 F.3d 1230 (9th Cir. 2012). The WADAD prohibits the use of auto dialers "for purposes of commercial solicitation," which is defined as "the unsolicited initiation of a telephone conversation for the purpose of encouraging a person to purchase property, goods, or services." RCW § 80.36.400(2) and (1)(b). Because the state courts have not yet interpreted this provision, the Ninth Circuit turned to federal interpretations of the TCPA on the ground that the TCPA's prohibition against unsolicited "material advertising the commercial availability or quality of any property, goods, or services" was substantially similar to the WADAD's prohibition on "commercial solicitation." In Chesbro, Best Buy argued that the calls it made to alert customers regarding changes in its Reward Zone Program and to encourage them to use expiring reward certificates were informational calls and did not run afoul of the TCPA (or the WADAD) because they did not explicitly offer any property, goods, or services for sale. The Ninth Circuit disagreed, however, relying on an FCC determination that messages that served both customer service and marketing purposes (such as calls from mortgage brokers notifying customers that interest rates had fallen), fall within the purview of the TCPA:

> [S]uch messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement.

FCC Report and Order, 18 F.C.C.R. 14014, 14098 (July 3, 2003). The Ninth Circuit then reviewed the transcripts of Best Buy's calls to determine whether they encouraged the recipient to engage in future purchasing activity. The court found that "[neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them." Chesbro, 697 F.3d at 1234-35.

       Defendants argue that because Chesbro involved a WADAD claim and not a

ORDER REGARDING MOTION FOR
JUDGMENT ON THE PLEADINGS    -6-

CEMA claim, it does not apply to this case. Defendants do not, however, analyze the language of the two statutes or explain why different results should be reached simply because the sender chooses one form of communication over another. The WADAD prohibits telephone calls "for the purpose of encouraging a person to purchase property, goods, or services." CEMA prohibits text messages "sent to promote real property, goods, or services for sale or lease." Despite the differences in word choice, both statutes regulate communications that promote or encourage commercial transactions. The Ninth Circuit has determined that, contrary to the holding in Hickey, a direct and immediate sale need not be in the offing to trigger the WADAD. The Court finds that the same analysis should apply under CEMA.[4]

The question in this case is whether, considering the specific message "with a measure of common sense," one would understand it to be "intended to offer property, goods, or services for sale either during the [communication], or in the future." Chesbro, 697 F.3d at 1234; FCC Report and Order, 18 F.C.C.R. at 14098. While the Taxi Magic app itself was, like the toll free number mentioned in the FCC's Report and Order, offered at no cost, the only purpose of the offer was to promote or encourage the use of defendants' taxi services. Under the Ninth Circuit's analysis in Chesbro, one could reasonably conclude that the text promoted future commercial transactions and triggered CEMA. In addition, prohibiting unsolicited text messages that purport to offer a "free" download or link designed to result in future purchases comports with the legislative findings and intent in enacting CEMA:

> The legislature recognizes that the number of unsolicited commercial text messages sent to cellular telephones and pagers is increasing. This practice is raising serious concerns on the part of cellular telephone and pager subscribers. These unsolicited messages often result in costs to the cellular telephone and pager subscribers in that they pay for use when a message is received through their

---

[4] The Ninth Circuit found that the TCPA definition was "substantially similar" to its counterpart in the WADAD. Because the definitions set forth in the WADAD and CEMA are much more closely aligned than the related provision of the TCPA, the interpretive rulings under federal law should be applied to both state laws.

ORDER REGARDING MOTION FOR
JUDGMENT ON THE PLEADINGS           -7-

> devices. The limited memory of these devices can be exhausted by unwanted text messages resulting in the inability to receive necessary and expected messages.
>
> The legislature [intends] to limit the practice of sending unsolicited commercial text messages to cellular telephone or pager numbers in Washington.

2003 Wn. Legis. Serv. 137, Sec. 1.

**D. CONSUMER PROTECTION ACT ("CPA"), RCW 19.86.010** *et seq*.

Defendants sought dismissal of plaintiff's CPA claim on the ground that it was wholly derivative of his defective CEMA claim. Motion (Dkt. # 29) at 12. In light of the above analysis, the CEMA claim is adequately pled and, if plaintiff is able to establish a violation of that statute, he will also have established an unfair or deceptive act in trade or commerce affecting the public interest for purposes of the CPA. RCW 19.190.060(2).

In reply, defendants argue that plaintiff has failed to plead cognizable injury under the CPA, noting that mere annoyance is not an injury to business or property. Reply (Dkt. # 39) at 10-11. Because this argument was raised for the first time in reply, plaintiff has not had an opportunity to respond. In light of the legislative purpose and intent in enacting CEMA, the Court declines to decide this issue without full briefing by the parties.

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff has not adequately pled the use of an automated telephone dialing system in support of his TCPA claim. Plaintiff may file a second amended complaint correcting this deficiency within twenty-one days of the date of this order.

Dated this 17th day of January, 2013.

*/s/ Robert S. Lasnik*

Robert S. Lasnik
United States District Judge

ORDER REGARDING MOTION FOR
JUDGMENT ON THE PLEADINGS            -8-