1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TORREY GRAGG,

                    Plaintiff,

          v.

ORANGE CAB COMPANY, INC., *et al.*,

                    Defendant.

No.   C12-0576RSL

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS, GRANTING
DEFENDANTS' MOTION TO
STRIKE, AND DENYING
LEAVE TO AMEND

These matters come before the Court on defendants' motion to dismiss plaintiff's second amended complaint.   Dkt. # 45.  Plaintiff Torey Gragg alleges that defendants Orange Cab Company, Inc. and Ridecharge, Inc. violated three consumer protection statutes.  The claims arise from a text message that defendants sent to plaintiff stating that a taxi cab was being dispatched to him and providing an advertising web link to download a smart phone application ("app") for booking defendants' taxis.

The Court previously granted in part and denied in part defendants' motion for judgment on the pleadings.   Dkt. # 42.  The Court dismissed plaintiff's federal Telephone Consumer

Protection Act ("TCPA") claim because plaintiff did not plausibly allege that defendants used an automatic telephone dialing system ("ATDS"), an essential element of the claim.  The Court, however, granted leave to amend the complaint on this claim.  The Court held plaintiff's claim under Washington State's Commercial Electronic Mail Act ("CEMA") was adequately pled, but declined to decide at that time whether plaintiff's claim under Washington State's Consumer Protection Act ("CPA") was adequately pled because defendants raised a new argument on the CPA claim in their reply brief to which plaintiff did not have an opportunity to respond.

Plaintiff amended his complaint and retained all his initial claims, Dkt. # 44, and defendants filed a motion to dismiss the TCPA and CPA claims, Dkt. #45.[1]

## I.   PLEADING STANDARD

When ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's factual allegations and draw all reasonable inferences in the plaintiff's favor.  *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012).  While detailed factual allegations are not required, the complaint must provide more than legal "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The allegations must give rise to something more than mere speculation that plaintiff has a right to relief.  *Id.*  The ultimate issue is whether the facts in the complaint, taken as true, state a "plausible" claim for relief.  *Id.* at 570.  If the Court dismisses the complaint or portions of it, the Court must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

---

[1] The Court finds that this matter can be decided on the papers submitted.  Plaintiff's request for oral argument is therefore DENIED.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -2-

## II.    TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. § 227

### A. The TCPA and the Definition of an ATDS

The TCPA makes it unlawful for any person "to make any call (other than a call made … with prior express consent of the called party) using any automatic telephone dialing system ["ATDS"] … to any telephone number assigned to a … cellular telephone service …" 47 U.S.C. § 227(b)(1).  For the purposes of this statute, the term "call" encompasses text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-52 (9th Cir. 2009).

The sufficiency of plaintiff's TCPA claim turns on whether he plausibly pleads that defendants used an ATDS.  An ATDS is "equipment" with "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" and the capacity "to dial such numbers."  47 U.S.C. § 227(a)(1).  The Federal Communications Commission ("FCC") slightly altered this definition when it determined that equipment that dials a list of numbers (such as a business's list of customers), rather than dials random or sequential numbers, is still an ATDS, because "the basic function of such dialing equipment" is the same—"the capacity to dial numbers without human intervention."  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 73 Fed.Reg. 6041, 6042 (Feb. 1, 2008) ("2008 FCC Clarification").

### B. The Court's Prior Order Dismissing Plaintiff's TCPA Claim

The Court previously dismissed plaintiff's TCPA claim, but granted leave to amend it.  Dkt. # 42.  Plaintiff's initial complaint contained the wholly conclusory allegation that "[d]efendants sent the unsolicited text message by means of an automated telephone dialing system."  Dkt. # 24, ¶ 10.  While hypothetically possible, the Court held this did not support a plausible inference that an ATDS generated the text message.  Dkt. # 42, at 4.  Instead, the Court held it was eminently reasonable to infer that the text message was generated through "human agency" and was a "customer-specific text" or a "personal and individual response to a

request for a taxi." *Id.*   However, the Court carefully noted that the mere existence of

personalized information in a text message does not necessarily mean an ATDS was not used.

*Id.* at 4 n.3.  The key inquiry is whether plaintiff's allegations create a plausible inference that

the text message was sent using "equipment" that generated or stored the cell phone number and

sent the text message, as the statutory definition of an ATDS requires.  47 U.S.C. § 227(a)(1).

**C. Analysis of the Sufficiency of Plaintiff's Amended TCPA Claim**

Contrary to plaintiff's arguments about the pleading standard for alleging the use of an

ATDS, a bare allegation that defendants used an ATDS is not enough.  Instead, well-pled

allegations of an ATDS "rely on indirect allegations, such as the content of the message, the

context in which it was received, and the existence of similar messages to raise an inference"

that an ATDS was used.  Dkt. # 42, at 5 n.3.[2]  Thus, the question is whether any indirect

allegation, such as the factors discussed in the Court's prior Order, supports a plausible

inference that defendants used an ATDS.

1.  *Prior Business Relationship and Plaintiff's Provision of His Phone Number to Defendants*

As in the first complaint, plaintiff still does not disavow a prior business relationship with

defendants.  Also, as in the first complaint, Dkt. # 24, ¶ 9, plaintiff still "carefully avoids stating

that he did not provide his wireless number to defendants," Dkt. # 42, at 4.  Instead, plaintiff

only states he did not provide his number "for marketing purposes," Dkt. # 44, ¶ 22.[3]

---

[2] As it relates to the proper standard for pleading an ATDS, defendants request that the Court take
judicial notice of the complaint in *Kristensen*.  Dkt. # 48, at 3 n.1.  The Court GRANTS defendants'
request for judicial notice because the complaint is a matter of public record.

[3] In plaintiff's response to defendants' motion to dismiss, plaintiff's attorney states in a declaration that
he heard the audio recording of plaintiff ordering a taxi, and that plaintiff did not provide his number to
defendants.  Dkt. # 46, at 11 n.2.  For the purposes of defendants' motion to dismiss, which evaluates
the sufficiency of the plaintiff's amended complaint, this material was not considered and defendants'
motion to strike the declaration is GRANTED.  *East of Cascades, Inc. v. FDIC*, 2011 WL 647704, *3
(W.D. Wash. Feb. 18, 2011).

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -4-

Plaintiff argues, however, that these are irrelevant facts because they relate to plaintiff's consent to receive a text message, not to defendants' use of an ATDS.  Dkt. # 46, at 16.  The Court disagrees insofar as these facts support the inference that the text message was a "personal and individual" response through "human agency."  Dkt. # 42, at 4.  Although they certainly do not prove that an ATDS was not used, the existence of a business relationship and plaintiff's provision of his phone number when requesting services raise an inference of personal, rather than automated, interactions.

2.   *Plaintiff's Allegations of the Volume of Similar Text Messages Defendants Sent*

Unlike in the first complaint, plaintiff's amended complaint substantiates with specific facts the volume of similar text messages defendants sent.  The Court in its prior Order suggested plaintiff could cure its deficient pleading by alleging "the number of texts defendants sent containing substantially the same message regarding Taxi Magic."  Dkt. # 42, at 4-5. Plaintiff accordingly pleads in his amended complaint that defendants used equipment that had the capability of sending millions of texts per month, Dkt. # 44, ¶ 16, and that defendants used this equipment to send at least tens of thousands of text messages to Washington consumers containing substantially the same marketing message that plaintiff received, *id.*  ¶¶ 14, 25.  The allegation that defendants sent at least tens of thousands of text messages containing substantially the same marketing message, taken as true, supports the inference that defendants used an ATDS because the large number of sent text messages is plausibly beyond what "human agency" could produce.

Defendants argue that these new allegations regarding text message volume are no less conclusory than the prior complaint's allegations.  The initial complaint alleged only that defendants' equipment sent "numerous" texts.  By contrast, the current allegation that defendants' equipment sent at least tens of thousands of similar text messages, and had the capacity to send millions, provides specific, quantitative values that give rise to a plausible

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -5-

inference of the use of an ATDS.  The previous vague allegation that defendants sent "numerous" text messages did not create an inference beyond a mere hypothetical possibility that an ATDS was used.

Defendants also argue that because plaintiff never pleads that defendants sent text messages with generic content (i.e., free from personalized information), the Court must necessarily reject an inference that defendants used an ATDS.  For this proposition, defendants rely on numerous district court opinions.  All of these opinions, however, held that generic message content may be *sufficient* to support an inference that an ATDS was used.  Contrary to defendants' misreading, none of these opinions held that generic message content is *necessary* to infer that an ATDS was used.[4]  That plaintiff did not allege that the text message had generic content is not necessarily fatal to his claim; such an allegation is merely one of many ways to sufficiently support an inference that an ATDS was used.

   3. *Plaintiff's Allegations of a Temporal Disconnection between Plaintiff's Use of the Taxi Service and Receipt of the Text Message*

In granting leave to amend its complaint, the Court suggested that an allegation of a temporal disconnect between when plaintiff used the cab services and when he received the text would support an inference that an ATDS was used.  Dkt. # 42, at 4-5.  The amended complaint alleges the text message, which states a taxi was dispatched at 5:20 p.m., was received on a Sunday night after 9:00 p.m., Dkt. # 44,  ¶ 23, and that plaintiff "had not booked a taxi cab for that day," *id.*  ¶ 24.  From this, plaintiff argues that there was "no temporal connection

---

[4] While these cases assuredly do not hold that generic message content is *necessary* to infer an ATDS, such a hypothetical holding could not be justified in any event.  Under the statutory definition of an ATDS, a personalized text message could be sent by an ATDS: the personalized message would merely need to be sent by equipment, having the capacity to produce or store numbers (by a list, randomly, or sequentially), and with the capacity to dial those numbers.  47 U.S.C. § 227(a)(1); 2008 FCC Clarification, 73 Fed.Reg. 6041, 6042 (Feb. 1, 2008).  For example, a merchant that used equipment to store its customers' names and phone numbers and that automatically sent those on the list a text message with their names appended to an advertisement would have used as an ATDS under the terms of § 227(a)(1), even though the message was personalized.

whatsoever" between plaintiff's use of the cab service and receiving the text message, and that a human would not have made the mistake of sending the message when a taxi was not in fact being dispatched. Defendants, by contrast, contend that the complaint is a tacit admission that a taxi was dispatched the prior day, and the text message was an individual response to the request for a taxi that was delayed from delivery to plaintiff's cell phone due to "any number of reasons," such as a poor cell phone signal. Dkt. # 45, at 10.

On this factor, the amended complaint supports an inference that an ATDS was used. Even assuming that plaintiff's complaint is a "tacit admission" that he used a taxi on the prior day at 5:20 p.m., a delay of more than 24 hours to send a text notification that was already outdated and obsolete supports an inference that human agency was not involved in sending the text message. While the alternative explanations that defendants posit, such as cell phone network congestion, are theoretically possible, the Court cannot draw these inferences against plaintiff on a motion to dismiss. The delay between plaintiff's use of the taxi service and receipt of the text message therefore supports the plausible inference that the defendants used an ATDS.

### 4. *Plaintiff's Allegation of the Web Link's Data Tracking Capabilities*

Plaintiff's amended complaint alleges that the web link in the text message he received would, if the link was used, allow defendants to track his app usage and to direct all future bookings through the app to one company. Plaintiff argues this supports an inference of an ATDS, but the Court rejects this argument because the use of the link and its tracking would have been a subsequent event to plaintiff receiving the text message. The link's tracking ability thus has nothing to do with whether there is a plausible inference that an ATDS was used to generate the text message plaintiff received.[5]

---

[5] Because plaintiff's argument on this point fails even without considering defendants' reply on this issue, the Court declines to strike defendant's reply on this issue.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -7-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.  *Summary of the Sufficiency of Plaintiff's TCPA Claim*

Three facts do not support a plausible inference that defendants used an ATDS.  Plaintiff still does not disavow a business relationship with defendants; plaintiff still carefully avoids stating he did not provide his phone number to defendants; and the data tracking capabilities of the web link in defendants' text message are irrelevant.  However, plaintiff plausibly supports an inference that defendants used an ATDS by alleging that defendants' equipment sent tens of thousands of substantially similar messages, and by alleging a temporal disconnection between using defendants' taxi services and receiving the text message.  Considering the totality of the amended complaint, the Court DENIES defendants' motion to dismiss plaintiff's TCPA claim.

## III.   WASHINGTON CONSUMER PROTECTION ACT ("CPA"), RCW 19.86.010 *et seq.*

### A.  The CPA

The CPA provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are … unlawful."  RCW 19.86.020.  A private right of action to enforce this provision is available to any person "who is injured in his or her business or property."  RCW 19.86.90.  Based on these two provisions and a third provision discussing the Legislature's purpose in enacting the CPA, RCW 19.86.920, the Washington State Supreme Court held a private plaintiff's CPA claim "must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Insur. Co.*, 105 Wn. 2d 778, 780 (1986).  The Legislature can, and has, enacted independent statutes that expressly provide that if they are violated, some or all of the five CPA elements are automatically satisfied.  *Id.* at 787.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -8-

**B. The Court's Prior Order Holding Plaintiff Adequately Pled His Commercial Electronic Mail Act ("CEMA") Claim and Reserving the Issue of the Sufficiency of His CPA Claim**

In its prior Order, the Court held that plaintiff sufficiently pled a violation of CEMA. This is relevant to plaintiff's CPA claim because CEMA provides:

> The legislature finds that the practices covered by [CEMA] are matters vitally affecting the public interest for the purpose of applying the [CPA]. A violation of [CEMA] … is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the [CPA].

RCW 19.190.060. Therefore, at least the first three elements of plaintiff's CPA claim are automatically well-pled. The Court reserved ruling on the sufficiency of plaintiff's CPA claim, however, because defendants raised a novel argument regarding injury in their reply brief. The current issue is whether plaintiff's amended complaint plausibly pleads the fourth and fifth CPA elements: injury and causation.

**C. Analysis of the Sufficiency of Plaintiff's CPA Claim**

   1. *CEMA's Statutory Damages as Satisfying the CPA's Injury and Causation Elements*

Plaintiff argues that a well-pled CEMA claim *per se* establishes a well-pled CPA claim for all five CPA elements, not just the first three. Plaintiff's theory is that CEMA's statutory damages provision, RCW 19.190.040(1), implicitly establishes CPA's fourth and fifth elements of injury and causation. The Court disagrees. "If the meaning of the statute is plain on its face, then the court must give effect to that plain meaning." *Manary v. Anderson*, 176 Wn. 2d 342, 352 (2013). If violated, CEMA unambiguously establishes only the first three *Hangman Ridge* elements:

> The legislature finds that the practices covered by [CEMA] are matters vitally affecting the public interest for the purpose of applying the [CPA]. A violation of [CEMA] … is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the [CPA].

RCW 19.190.060. The Legislature enacted CEMA in 1998, well after *Hangman Ridge* clearly held that a private CPA claim has five elements. Nevertheless, RCW 19.190.060 does not speak

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -9-

to "injury to plaintiff in his or her business or property," nor to causation.  Because the Legislature expressly defined the relationship between CEMA and CPA in this provision, it would contravene the plain language to infer that CEMA's statutory damages also impliedly satisfied CPA's fourth and fifth element.  *See Hangman Ridge*, 105 Wn. 2d at 787 ("Where the Legislature *specifically* defines the *exact* relationship between a statute and the CPA, this court will acknowledge that relationship.") (emphasis added).  The plain language thus dictates that a violation of CEMA establishes only the CPA's first three elements.[6]  If the Legislature had intended CEMA to per se establish all five elements, it could have done so expressly, as it has in other statutes.  *See* RCW 80.36.400(3) ("A violation of this section is a violation of chapter 19.86 RCW [i.e., the CPA]"); RCW 19.118.041(4) ("A violation of … this chapter is a per se violation of chapter 19.86 RCW."); RCW 19.130.060 ("Violation of this chapter constitutes a violation of chapter 19.86 RCW").  This context therefore reinforces the Court's conclusion that a violation of CEMA satisfies only the first three elements of the CPA.[7]

---

[6] Contrary to plaintiff's argument, this holding does not make CEMA's statutory damage provision, RCW 19.190.040(1), meaningless.  That provision retains its meaning because it provides statutory damages upon proof of a violation of CEMA.

[7] If a statute's language is unambiguous, the inquiry for Washington courts ends, without resorting to interpretive tools such as legislative history.  *State v. Velasquez*, 176 Wn. 2d 333, 336 (2013).  The Court accordingly does not consider the parties' arguments concerning CEMA's legislative history.  Because it did not consider them on its own accord, the Court will not strike defendants' legislative history arguments.

   Nor will the Court strike defendants' other contentions regarding whether a violation of CEMA per se satisfies all of CPA.  Defendants cannot be required to foresee all conceivable arguments in their motion to dismiss, especially arguments that are inconsistent with the plain language of the relevant statute, as here.

   Last, the Court rejects striking defendants' reliance on *Gordon v. BAC Home Loans Servicing*, 2011 WL 1565363 (E.D. Wash. Apr. 25, 2011), because plaintiffs' surreply on this point is an inappropriate fourth-round briefing merely disputing how defendants characterized the holding of *Gordon*.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -10-

2. *Plaintiff's Allegations of Causation and Injury Independent of His CEMA Claim*

The injury element of a CPA claim requires that the plaintiff be "injured in his or her business or property." RCW 19.86.90. The Washington Supreme Court explicated this element:

> Personal injuries, as opposed to injuries to "business or property," … do not satisfy the injury requirement. Thus, damages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA. However, the injury requirement is met upon proof the plaintiff's property or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.

*Panag v. Farmers Ins. Co. of Wash.*, 166 Wn. 2d 27, 57 (2009) (internal quotations and citations omitted). The causation element requires a casual connection between the unfair or deceptive act and the injury suffered by the plaintiff. *Hangman Ridge*, 105 Wn. 2d at 792-93.

Plaintiff's amended complaint alleges five injuries: (a) paying his cell phone service provider; (b) invasion of privacy; (c) aggravation and annoyance; (d) loss of use of the full capacities of his cell phone, such as storage space; and (e) impairments and burdens on the cell phone network. Dkt. # 44, ¶ 27. For the following reasons, all these alleged injuries fail to plausibly support a CPA claim.

(a) Payment for cell phone service

Because plaintiff does not allege he paid his cell phone service provider any additional money *because of* defendants' text message, the allegation does not plausibly establish causation under the CPA. Moreover, in any event, plaintiff waived this basis for supporting a claim by entirely failing to respond to defendants' argument regarding the insufficiency of this allegation.

(b) Invasion of privacy

Plaintiff alleged the receipt of defendants' text message was an "invasion of privacy." Dkt. # 44, ¶ 27(b). The two opinions plaintiff cites to establish that he has a right to privacy are

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -11-

far afield of the CPA and are plainly inapplicable.[8]  Plaintiff cites no Washington law that establishes that an invasion of privacy is a cognizable injury under the CPA, and the Court has not found any such authority.  Moreover, an invasion of privacy is a "personal" injury, rather than a "business or property" injury, *Panag*, 166 Wn. 2d at 57, because the concept of privacy by its very nature is inherently personal, not pecuniary.  This allegation thus fails to support a finding of injury for purposes of a CPA claim.

(c) Aggravation and annoyance

Plaintiff's alleged injury of "aggravation and annoyance" does not support a CPA claim. Those feelings are plainly personal injuries, not business or property injuries.  *Panag*, 166 Wn. 2d at 57 ("damages for mental distress [and] inconvenience are not recoverable under the CPA.").

(d) Loss of the full capacities of plaintiff's cell phone

Plaintiff alleges that defendants' text message caused his "loss of use of the full capacities and capabilities" of his cell phone, such as diminished electronic storage space.  Dkt. # 44, ¶ 27(b).  On two occasions, Washington courts have recognized that the temporary loss of use of property is a cognizable injury under the CPA: when a defendant unlawfully asserted of a possessory lien over a plaintiff's car, *Webb v. Ray*, 38 Wn. App.  675, 679-80 (1984), and when a lender, in violation of its agreement with a borrower, wrongfully acquired title to the borrower's real property, *Mason v. Mortgage America, Inc.*, 114 Wn. 2d 842, 845-55 (1990).[9] The loss of possession of a car and the loss of title to real estate, however, are a world apart from the infinitesimal, fleeting loss of electronic storage space that plaintiff alleges.  While the former

---

[8] One opinion involves citizens' legitimate privacy expectations from searches and seizures by state actors under the Washington Constitution and U.S. Constitution, *State v. Goucher*, 124 Wn. 2d 778 (1994), and the other opinion discusses privacy as an animating purpose of a criminal harassment statute, *State v. Lilyblad*, 163 Wn. 2d 1, 12-13 (2008).  These areas of law are irrelevant to plaintiff's civil CPA claim.

[9] The plaintiff agreed only to grant a deed of trust to secure a loan, but instead the lender acquired title to the plaintiff's real estate by a quitclaim deed.  *Id.* at 844-45.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -12-

are actual losses of property, either in fact or at law, the loss of storage space caused by receipt of one text message caused no pecuniary loss nor did it diminish the value of plaintiff's phone or other property.  This alleged injury can only reasonably be described as an uncompensable inconvenience.  The Court therefore holds that the loss of use of a cell phone's capacity due to receiving one text message is not an injury to "business or property" under the CPA.

(e) Burdens on the cell phone network

Inferring that defendants' text messages impacted the entire relevant cell phone network in such a way that plaintiff suffered a pecuniary loss is far beyond speculative, and therefore fails to plausibly allege an injury under the CPA.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3.  *Summary of the Sufficiency of Plaintiff's CPA Claim*

Plaintiff fails plausibly to state a claim for relief under the CPA.  Plaintiff's contention that his well-pled CEMA claim automatically establishes a CPA claim is incorrect under CEMA's plain language, and plaintiff's five alleged injuries also do not state a plausible claim for relief under the CPA's injury and causation elements.  Defendants' motion to dismiss the CPA claim is therefore GRANTED.  Because there is no indication that plaintiff can allege other facts consistent with his amended complaint that would cure the deficiencies of plaintiff's CPA claim, the Court DENIES leave to amend the complaint.

## IV.    CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss (Dkt. # 45) is DENIED with respect to plaintiff's TCPA claim and GRANTED with respect to plaintiff's CPA claim.  Defendants' request for taking judicial notice (Dkt. # 48, at 7 n.1) is GRANTED.  Defendants' motion to strike (Dkt. # 48, at 5-6) is GRANTED.  The Court declines to grant further leave to amend.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -13-

Dated this 26th day of April, 2013.

*MRT S Lasnik*

Robert S.  Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS  -14-