THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TORREY GRAGG, on his own behalf and
on behalf of other similarly situated persons,

                Plaintiff,

v.

ORANGE CAB COMPANY, INC., a
Washington corporation; and RIDECHARGE,
INC., a Delaware Corporation, doing business
as TAXI MAGIC,

                Defendants.

Case No. 2:12−cv−00576−RSL

DECLARATION OF RANDALL A.
SNYDER

I, Randall A. Snyder, hereby declare as follows:

1. My name is Randall A. Snyder. I am an adult over the age of 18 and a resident of the

state of Nevada. I have personal knowledge of each of the matters stated herein, and if

called to testify I could and would testify competently about them.

2. I am an independent telecommunications technology consultant and reside at 8113 Bay

Pines Avenue, Las Vegas, Nevada, 89128. I have been retained by the law firm Heyrich

Kalish McGuigan PLLC in the matter *Gragg v. Orange Cab Company, Inc. and

RideCharge, Inc.*, 2:12-CV-00576-RSL (W.D. Wash.), to provide my expert opinions. In

particular, I have been asked to provide my expert opinions relating to technology

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12−cv−00576−RSL - 1

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

described within the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") and whether defendants Orange Cab Company, Inc. ("Orange Cab" or "Defendant") and RideCharge, Inc. ("RideCharge" or "Defendant") maintain an Automatic Telephone Dialing System ("ATDS") as defined in the TCPA. In particular, I have been asked to determine whether the Defendants employed equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; whether the Defendants, in fact, used such equipment; whether the Defendants employed equipment which has the capacity to dial telephone numbers without human intervention; and whether the Defendants, in fact, dialed such numbers without human intervention. In addition, I have been asked to provide my expert opinions regarding the mobile marketing industry's standards and guidelines as well as the ability to ascertain whether a particular individual is a member of the proposed class based solely upon a cellular telephone number.

3.  I have personal knowledge of each of the matters stated herein, and if called to testify I could and would testify competently about them. My opinions in this declaration are based on my education, experience, training and my review of the following documents in this case: Plaintiff's Second Amended Complaint for Injunctive Relief and Damages; Defendant Orange Cab Company, Inc.'s Answer to Second Amended Complaint for Injunctive Relief; Defendant TaxiMagic's Answer to Second Amended Complaint for Injunctive Relief; Defendant RideCharge's Initial Disclosures; Supplemental Responses and Objections to Plaintiff's First Interrogatories and Requests for Production to Defendant Orange Cab; Supplemental Responses and Objections to Plaintiff's First Interrogatories and Requests for Production to Defendant TaxiMagic; Defendant Orange

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

1   Cab's Responses to Plaintiff's First Set of Requests for Admission; Defendant

2   TaxiMagic's Responses to Plaintiff's First Set of Requests for Admission; TaxiMagic's

3   Responses and Objections to Plaintiff's Second Interrogatories and Requests for

4   Production; Order Granting in Part Motion for Judgment on the Pleadings and Granting

5   Leave to Amend; Order Granting in Part and Denying in Part Defendant's Motion to

6   Dismiss, Granting Defendant's Motion to Strike, and Denying Leave to Amend;

7   Plaintiff's Motion for Class Certification; Declaration of Torrey Gragg in Support of

8   Motion for Class Certification; Declaration of Donald W. Heyrich in Support of

9   Plaintiff's Motion for Class Certification (including exhibits); Deposition of Thomas

10  DePasquale; Deposition of Tadesse Woldearegaye; Deposition of Ameer Badri;

11  MultiModem® iSMS User Guide for System Administrators (Bates Nos. TM005272 –

12  TM005367); equipment list for MultiModem® iSMS deployed products (Bates Nos.

13  TM005368); Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA")

14  and regulations promulgated thereunder; the FCC's Report and Order in the Matter of

15  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991

16  dated January 4th, 2008; Appeal from the United States District Court for the Northern

17  District of California, No. 07-16356, D.C. No. CV-06-02893-CW Opinion, filed June

18  19th, 2009; the FCC's Report and Order in the Matter of Rules and Regulations

19  Implementing the Telephone Consumer Protection Act of 1991 dated February 15th,

20  2012; and the FCC's Declaratory Ruling In the Matter of The Petition Filed by DISH

21  Network, LLC for Declaratory Ruling Concerning the Telephone Consumer Protection

22  Act (TCPA) Rules dated May 9th, 2013.

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

4. I have over 25 years of experience in telecommunications network and system architecture, engineering, design and technology. I consider myself to be an expert in the fields of both wireline and wireless telecommunications networking technology. A copy of my *curriculum vitae* is attached to this declaration. I have been retained as a testifying or consulting expert in 57 cases regarding telecommunications technology including 39 cases regarding Short Message Service (SMS) technology and 30 cases regarding the TCPA and associated regulations. In addition, I have been retained by both plaintiffs and defendants in cases regarding the TCPA.

5. I have taught many classes and seminars on both wireline and wireless telecommunication network technologies and have been a panelist and speaker at numerous conferences at the Institute of Electrical and Electronics Engineers (IEEE), the Personal Communication Society (PCS), and the Cellular Telecommunications and Internet Association (CTIA) as an expert in telecommunication networks. I spent seven years developing standards within the American National Standards Institute's subsidiary organization, the Telecommunications Industry Association (TIA), providing technical contributions and authoring and editing telecommunications proposed standards documents. Most notably, I authored and oversaw the standardization of Interim Standard 93, providing interconnection technology between wireline and wireless networks, which is a fully accredited national standard of the American National Standards Institute (ANSI). I am the co-author of the McGraw-Hill books "Mobile Telecommunications Networking with IS-41," and "Wireless Telecommunications Networking with ANSI-41, 2nd edition" published in 1997 and 2001, respectively. These books have sold several thousand copies and were required reading for wireless engineers at AT&T Wireless and

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12−cv−00576−RSL - 4

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

Motorola for several years. The latter book has also been relied upon and cited numerous times as a reference for various patents in the telecommunications industry. I have been issued 11 patents myself on telecommunications networking technology and currently have seven additional published patents pending. I have also authored several articles on telecommunications technology and have been quoted numerous times in industry trade publications. I have consulted for and been employed by many wireline and wireless telecommunications companies including McCaw Cellular, AirTouch, AT&T Wireless, AT&T Mobility, Lucent, Nokia, Ericsson, Nextwave, MCI, Sprint and other telecommunications technology vendors and service providers. I was also nominated in 2006 for a National Television Arts Emmy Award for Outstanding Achievement in Advanced Media Technology for unique wireless content distribution technology I designed while employed at Entriq, Inc. In addition, in 2002, I was co-founder of m-Qube, Inc., one of the first text message based mobile marketing companies in N. America. m-Qube founded and established the Mobile Marketing Association (http://www.mmaglobal.com), the global trade organization which subsequently established authoritative best practices, guidelines and codes of conduct for organizations using mobile technology to communicate with consumers. I have been issued four patents on Short Message Service ("SMS") technology and my books have been cited in four additional issued patents on SMS technology. Still more detail as well as details of publications that I have authored or co-authored within at least the past 10 years are provided in my *curriculum vitae* (attached as Exhibit A) along with a list of cases where I served as a testifying or consulting expert (attached as Exhibit B) and my standard rate

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

sheet (attached as Exhibit C). I am being compensated at the rate of $400 per hour for my study, analysis and testimony in this case.

**INTRODUCTION**

6.  The TCPA prohibits unsolicited voice and text calls to cellular telephone numbers using an "automatic telephone dialing system" ("ATDS"), which the statute defines as "equipment which has the capacity – (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers." Additionally, it is my understanding that the FCC has issued further regulations that also define an ATDS as including the capacity to automatically dial telephone numbers that are stored electronically.

7.  Based on my review of the relevant documents and the facts described above, it is my opinion is that Defendants employed technology that used an ATDS. My opinion is based on the fact that Defendants employed technology that uses an ATDS and used that technology, as defined in the TCPA and accompanying FCC regulations, with the intention of communicating with cellular telephone subscribers without obtaining those subscribers' explicit and express consent to do so. The text messages sent to the Plaintiff and the members of the proposed class were sent using equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or to be called from numbers that are electronically stored, and that the equipment had the capacity to dial such numbers without human intervention as defined by the TCPA. In other words, the equipment used to send the text messages at issue in this case constituted an ATDS.

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12−cv−00576−RSL - 6

HEYRICH KALISH McGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

8. Furthermore, it is my opinion that the Defendants violated the TCPA as the Plaintiff neither explicitly nor expressly "opted-in" to receive text messages from the mobile text message application program operated by the Defendants. The Plaintiff subsequently received unwanted mobile text messages from the Defendants' ATDS that he did not provide consent for and incurred charges for those mobile text messages. I base these opinions on my training, experience, expertise and on the evidence described below.

**BACKGROUND**

9. The use of Short Message Service ("SMS"), more commonly known as "text messaging" in the U.S., has become ever-present. According to the Cellular Telecommunications and Internet Association ("CTIA"), as of December, 2012 there were 326.4 million cellular telephone subscriptions in the U.S. and more than 171.3 billion text messages sent each month (see http://www.ctia.org/advocacy/research/index.cfm/aid/10323).

10. Short Message Service ("SMS"), more commonly known as "text messaging," is a communications system and method designed to enable an individual cellular telephone subscriber to send or originate a short text message communication (typically no more than 160 characters) from his or her cellular telephone to another individual subscriber's cellular telephone that is the intended destination of the message, i.e., the message recipient. SMS text messages are sent individually from one subscriber to another using a cellular telephone number as the destination address of the message. The message sender's cellular telephone number is preserved as part of the message at the destination cellular telephone where the message is received so that the message recipient knows the cellular telephone number of the message sender.

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

11. Over the past several years many companies have emerged that provide what is known as value-added text messaging services using SMS technology. These companies are technically referred to as Value Added Service Providers ("VASPs") and many of them are external entities to the cellular network operators. These VASPs provide a variety of text messaging services (i.e., SMS) that are not strictly peer-to-peer in the sense of subscriber-to-subscriber manual communications; rather, they are companies that use automated computer equipment to send and receive text messages using SMS to and from individual cellular telephone subscribers. Based on my review of the materials in this case, RideCharge is a VASP providing automated text message application programs using the product name "TaxiMagic."

12. VASPs are typically in the business of creating and operating text message-based applications on behalf of themselves, branded or marketing companies that desire to develop and maintain some personalized communication with cellular telephone subscribers for commercial purposes. The automated computer equipment that these VASPs employ is used for a variety of text messaging applications, marketing campaigns and dialogs to communicate with cellular subscribers. Common applications are voting (the most popular example being the text message voting used to vote for contestants on the American Idol television program) as well as receiving mobile coupons, sports scores, advertisements, news and informative alerts where short messages are sent to cellular subscribers.

13. Moreover, these VASPs employ equipment that has the ability to send any number of text messages *en masse* to cellular telephone subscribers as well as receive individual text messages from those subscribers. Messages sent from the branded company to a cellular

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

subscriber are termed "mobile-terminated" ("MT") and messages sent from a cellular
subscriber to a branded company are termed "mobile-originated" ("MO").

14. VASPs can connect to the cellular carrier networks to communicate with cellular
subscribers in two distinct ways: (i) using specialized computer equipment that acts as a
cellular telephone, known as a cellular modem; and (ii) using internet-based connections
and communications protocols.

15. VASPs can use cellular modems to connect to the wireless networks using standard
cellular radio frequencies and protocols. These cellular modems require a Subscriber
Identity Module ("SIM" card) to be inserted to activate an account on a wireless network
similar to most mobile phones today. A unique SIM card represents a unique subscription
to a wireless network operator, such as AT&T Mobility, and is uniquely identified by a
real 10-digit dialable cellular telephone number. Cellular modems perform in a manner
just like as a typical cellular subscriber, except that they are not truly "mobile" and are
designed to communicate with the wireless network on one side and computer equipment
on the other. In this way, the cellular modem is designed to automate, using computer
equipment, the cellular communications functions that might be performed by a typical
cellular subscriber.

16. Based on my review of the relevant documents, the MultiModem iSMS ("iSMS")
computer product is a cellular modem specially designed for SMS-based text message
communications. That is, it is computer equipment that enables a programmable
application (such as an automated dispatch system used by taxi cab companies) to send
automated standard SMS text messages to cellular subscribers and receive individual
SMS text messages from them. Since the iSMS cellular modem is a cellular

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12-cv-00576-RSL - 9

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

telecommunications device communicating with other cellular subscribers directly via the wireless networks, it has the ability to send text messages to any cellular subscriber regardless of which network serves those subscribers – just like a regular mobile phone. And, according to the MultiMode iSMS User Guide for System Administrators, the iSMS computerized cellular modem product "can be used to send a large number of SMS messages very quickly" *en masse* to large numbers of cellular telephone subscribers.

17. According to the MultiMode iSMS User Guide for System Administrators, the iSMS product employed by RideCharge can support a capacity of four megabytes (4 MB) worth of outgoing mobile text messages to be sent at a rate of 10 messages per minute. The iSMS equipment electronically stores cellular telephone numbers of subscribers for outgoing MT text messages. There are two ways in which cellular telephone numbers can be stored into the iSMS modem equipment. Cellular telephone numbers can be individually and manually entered into the iSMS modem for storage or large lists of cellular telephone numbers can be electronically imported into the iSMS modem for storage. The latter method is a much more expeditious and effective means for provisioning cellular telephone numbers to be called *en masse* using the computerized modem equipment.

18. VASPs can also connect to the wireless networks using internet-based connections and communications protocols. The primary protocol used is known as the Short Message Peer-to-Peer ("SMPP") protocol. SMPP is a standard internet-based communications protocol specifically designed for communications between a VASP and a cellular network's Short Message Service Center ("SMSC"). SMSCs are network entities that are maintained and controlled within the wireless carriers' networks and are the store and

forward repositories for text messages to be both delivered to and sent from mobile subscribers.

19. In many cases, VASPs do not connect directly to the wireless carrier networks (e.g., AT&T Mobility). Establishing and maintaining direct connections to individual wireless carrier networks is expensive, time consuming and technically difficult. Because of business and technical barriers, VASPs can connect indirectly to the wireless carrier networks through intermediary companies known as "SMS aggregators." These SMS aggregators are in the business of connecting to multiple wireless carrier networks and reselling that connectivity to VASPs.

20. Aggregation of multiple wireless carrier network connections into a single connection to a VASP is highly advantageous to the VASP. First, it enables a VASP to provide SMS-based applications to subscribers quickly and easily. And second, it enables the VASP to make applications available to all cellular subscribers in the U.S. at once, regardless of which wireless carrier serves them. And third, SMS aggregators may assist in the application approval process with the wireless carriers as well as ensuring that access to the VASPs SMS applications are provisioned on all the wireless carrier networks.

21. VASPs' connections to the SMS aggregators are Internet connections and typically use a special number as the address by which cellular text messages are sent and received in order to communicate with cellular subscribers. This number is known as a "short code." A short code is a special and unique 5- or 6-digit number that is obtained from an independent agency, Neustar, Inc., that manages and assigns these number resources in the United States on behalf of the cellular network operators.

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12–cv–00576–RSL - 11

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

22. Individual short code numbers are leased by the VASPs, or the SMS aggregators on behalf of the VASPs, for which a mobile text message application is to be run. The VASPs or SMS aggregators then subsequently request that these numbers be provisioned (i.e., programmatically stored) by the wireless network operators so that MO messages can be properly sent from cellular subscribers to the correct VASP platform applications. In this case, the wireless network operators always approve the service application that uses an individual short code before it is provisioned in their networks. The process requires that the VASP or SMS aggregator draft and submit a detailed written description of the text message service application that uses the short code. The detailed description always contains the actual text content of all messages that are to be sent to and received from cellular subscribers, the precise "opt-in" method to be used by cellular telephone subscribers, the number of cellular telephone subscribers expected to be involved in the application communication, when the application program will start and end, the method by which cellular subscribers can "opt-out" of the text message application along with many other details.

23. Over the past few years, many VASPs have appeared that provide cellular text messaging applications using "long codes" or "long numbers." A long code is an actual dialable cellular telephone number that cellular subscribers can use as the address for which to send MO text messages for a particular text messaging application or program. The long code used appears to a cellular telephone subscriber as just another cellular telephone number belonging to someone. In this way, a cellular telephone subscriber can engage in a text messaging application with the owner of the long code, e.g. a VASP, just as they would engage a friend using typical peer-to-peer text messaging. Conversely, MT text

messages can be sent from the VASP, or an individual, who owns the long code number to cellular subscribers, making the sender of the message appear to the recipient as just another cellular subscriber. SMS aggregators can provide long code numbers or a VASP or their clients can use any cellular telephone number that belongs to them as the long code.

24. Unfortunately, the SMS aggregators that enable use of a long code on behalf of a VASP wishing to create and operate a mobile text messaging application or program, can be exposed to abuse of their platform. These SMS aggregators typically provide a software-based application programming interface ("API") that can be used by their VASP clients to develop a software application and connect to their message delivery platform for that application. This enables the client VASPs to create their own text messaging applications, create the content in the body of the text messages and send the messages via the SMS aggregator's platform. These types of applications require no explicit approval nor any oversight from the wireless network operators before they are invoked and run. Furthermore, a software application using the API of the SMS aggregator can be created to send out cellular text messages *en masse* to a stored list of obtained cellular telephone numbers.

25. RideCharge, as a VASP, integrated the iSMS cellular modem product into their overall computerized solution to provide automated text message applications to their client customers. And, in fact, RideCharge deployed as many as 38 iSMS cellular modems in their data center to communicate directly with cellular telephone subscribers.

26. RideCharge, as a VASP, also integrated with the services of Twilio, Inc. ("Twilio") (see https://www.twilio.com/sms) as their SMS aggregator to maintain commercial

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12−cv−00576−RSL - 13

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

relationships with cellular subscribers regardless of which wireless carrier serves those subscribers.

27. Twilio enables RideCharge to send large numbers of text messages *en masse* to cellular subscribers using long code addresses as the originating address of the text messages. Conversely, Twilio enables individual subscribers to reply to received text messages using long code addresses as the destination address of the message for subsequent delivery to RideCharge's automated mobile text message application.

28. RideCharge integrates their system with automated taxi cab dispatch system applications enabling them to send SMS-based text messages *en masse* to cellular telephone subscribers. According to Mr. DePasquale, CEO of RideCharge, in his deposition, RideCharge originally sent automated text messages on behalf of their client customers to cellular subscribers via the MultiMode iSMS cellular modem product and currently sends automated text messages to cellular subscribers via Twilio as an SMS aggregator.

## OPT-IN AND CONSENT

29. "Opting-in" is a term that describes any method by which a cellular subscriber explicitly and expressly provides individual consent to inform the VASP that they are willing to receive mobile text messages for a specific text message application or program. Generally, consent is not broadly given for multiple text message applications nor is it given in some "open-ended" fashion (i.e., without limitation) such that a subscriber can "opt-in" to receive any and all text message traffic from a particular VASP.

30. There are many methods by which a cellular telephone subscriber can "opt-in." One common method is a text message response by the cellular subscriber to the VASP based upon some sort of "call to action." For a given application or text message program, this

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12-cv-00576-RSL - 14

HEYRICH KALISH McGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

"call to action" can be a commercial advertisement from a website, television, radio, newspaper, magazine, billboard, etc. For instance, the actual "call to action" is usually a read or heard message indicating that the cellular subscriber can send a text message to a particular numeric address (either a short code or a long code) along with a keyword or words that make up the body of the message. The cellular subscriber uses this MO text message that is sent to the VASP to "opt-in" to the desired application service (such as to receive informative text alerts).

31. Another common method to "opt-in" is by a cellular subscriber providing some indication of willingness to receive MT text messages from the VASP by filling in a web-based form on a desktop, mobile Internet website or via a mobile application. This is typically the case when the crux of a specific text message application or campaign is based on the VASP sending out an MT text message first, to initiate the application, campaign or dialog with the cellular subscriber.

32. There are two reasons why explicit and formal "opt-in" techniques are used for automated commercial text messaging applications and programs: (i) to enable cellular telephone subscribers to reliably provide explicit and express consent for a particular text message program; and (ii) to inform the VASP that they are willing to incur appropriate text messaging charges for that program.

**THE MOBILE MARKETING ASSOCIATION ("MMA")**

33. The MMA is the primary global trade organization that promulgates codes of conduct, best practices and guidelines for the mobile marketing industry. The mobile marketing industry includes branded companies, companies that provide mobile content, VASPs and wireless network operators. The MMA provides the only authoritative global

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12-cv-00576-RSL - 15

HEYRICH KALISH McGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

specifications for the proper practices and guidelines for organizations who wish to communicate with cellular subscribers via text messaging

34. The MMA publishes a well-know specification, U.S. Consumer Best Practices for Messaging (available at: http://www.mmaglobal.com/bestpractice), to guide companies that wish to market their products and services via cellular channels. This specification includes comprehensive guidelines prescribing all appropriate methods that companies need to follow to design, implement and deploy proper mobile text message applications and programs. These guidelines include the always required methods for cellular subscribers to unambiguously and unmistakably consent to receiving text messages by "opting-in" in a variety of ways as well as enabling these subscribers to always "opt-out" of receiving text messages at any time.

35. Mr. DePasquale admitted in his deposition that Mr. Jay McClary, vice president of marketing for RideCharge had raised an issue regarding the MMA and their guidelines for best practices. That issue regarded the fact that RideCharge sends initial dispatch notification text messages to cellular telephone subscribers (i.e. users) without a user "opting-in" to receive such messages, which is "not quite in line with MMA guidelines."

36. It is clearly apparent that RideCharge was aware of the MMA's best practices and guidelines specification requiring express "opt-in" consent by cellular subscribers before sending them unsolicited and unwanted text messages, yet they continued to send these text messages to unsuspecting cellular subscribers.

## DEFENDANTS MAINTAIN AN ATDS AS DEFINED WITHIN THE TCPA

37. RideCharge is a company that owns the "TaxiMagic" mobile application and provides mobile text messaging services to taxi users.

HEYRICH KALISH McGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

38. Based upon my experience, expertise, and the materials reviewed, RideCharge is a VASP that operates an automated computer system providing SMS-based applications enabling text message communications with customers of taxi cab companies who are cellular telephone subscribers. The computerized applications that RideCharge provides are used to form a commercial relationship with cellular subscribers and to use the cellular networks and text messaging technology to form that relationship. RideCharge sent mobile-terminated text messages to cellular telephone subscribers who called Orange Cab.

39. Furthermore, I can confidently and definitively state that RideCharge operates and maintains an Automatic Telephone dialing System ("ATDS") as defined in the TCPA and accompanying regulations. RideCharge is a VASP providing automated mobile text message application services using long code numeric addresses that are specially provisioned in the mobile operators' networks. RideCharge admits to sending an average of one thousand text messages per day to cellular subscribers who called Orange Cab. It is indisputable that automated computer equipment must be used to send and process such massive quantities of mobile text messages.

40. Moreover, for RideCharge to provide their automated mobile text message applications, they must obtain and store cellular telephone numbers in order to send text messages *en masse* to cellular telephone subscribers.

41. According to Mr. Tadesse Woldearegaye, Dispatch Manager for Orange Cab, in his deposition, when a customer makes a voice telephone call to Orange Cab to order a taxi, "…the dispatcher enters contact name, contact telephone number, everything of the

customer" into the dispatch system. The dispatcher can obtain the cellular telephone number of the taxi customer either verbally or via caller ID.

42. RideCharge uses the cellular telephone numbers obtained from Orange cab customers to send mobile-terminated ("MT") text messages containing marketing content. Therefore, RideCharge's equipment clearly has the capacity to store telephone numbers to be called. And, in fact, not only does it have this capacity, it actually performs this function. In addition, the FCC has held that prohibitions under the TCPA apply to stored lists of telephone numbers as well as random or sequentially generated numbers. In fact, it is my understanding that The United States Court for the Ninth Circuit quoted my name and expert report in the case of *Satterfield v. Simon & Schuster, Inc.* that "[t]he use of stored numbers, randomly generated numbers or sequentially generated numbers used to automatically originate calls is a technical difference without a perceived distinction..." (*Satterfield v. Simon & Schuster, Inc. No. 07-16356, D.C. No. CV-06-02893-CW Opinion,* June 19th, 2009, p. 7338). Moreover, the FCC has held that prohibitions under the TCPA apply to stored lists of telephone numbers as well as random or sequentially generated numbers (*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278,* January 4th, 2008).

43. Additionally, The United States Court for the Ninth Circuit held that in the *Satterfield* decision, "[t]he cellular phone numbers residing in the cellular phone number database for the specific application are applied in sequence, as they are stored in the database, to serve as the destination cellular phone number for each individual text message. Each text message is then put into a text message queue and egresses the platform sequentially..." Furthermore, The United States Court for the Ninth Circuit held that text message calls

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

are, in fact, calls as defined in the TCPA. The FCC has also held that prohibitions under the TCPA apply equally to both voice and SMS calls to cellular telephone numbers (*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278,* February 15th, 2012).

44. Finally, RideCharge does, in fact, dial (or call) those cellular telephone numbers from the stored list.

45. Therefore, RideCharge, as a VASP operates equipment which has the capacity (i) to store telephone numbers to be called, using a random or sequential number generator [or from a stored list of numbers]; and (ii) to dial such numbers. This fulfills the definition of an ATDS as defined in the TCPA, accompanying FCC regulations and judicial rulings.

46. RideCharge created, operated and executed a text messaging application program. The concept of this application program is to enable both Orange Cab and RideCharge to market RideCharge's TaxiMagic application service to cellular telephone subscribers. Taxi cab customers make a traditional telephone voice call to Orange Cab to order a taxi. Orange Cab then records the telephone numbers of these customers and RideCharge sends unsolicited text messages to their cellular telephones.

47. In addition, Mr. Woldearegaye admitted in his deposition that Orange Cab selectively turned off the sending of unsolicited text messages (i.e. dispatch notifications) to customers due to complaints, an example of which was that "…an account customer called us up and they received a text message. So they don't want to receive a text message. So we don't want to lose that large account so I think we turned off that." Furthermore, Mr. Woldearegaye admitted that a client customer of Orange Cab's, known

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12−cv−00576−RSL - 19

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

1

2

as Hopelink, complained about the unsolicited text messages being sent since "…the text messages were costing low income clients money each time they received one."

48. On Sunday, February 26th, 2012, at about 9:04 p.m. the Plaintiff received an unsolicited text message from the telephone number (571) 309-5286. The text message was an advertisement for RideCharge's TaxiMagic product. Although the Plaintiff made a voice call to order a taxi from Orange Cab the previous day, there is no evidence to suggest that he either "opted-in" or otherwise expressly consented to receive text messages from Orange Cab or RideCharge. Furthermore, the unsolicited text message received by the Plaintiff provided no means of "opting-out" of receiving additional unwanted text messages from RideCharge as clearly explained in the MMA's Consumer Best Practices specification.

49. Mr. DePasquale admitted in his deposition that dispatch notification text messages containing marketing content are sent to nonusers of the TaxiMagic application service. The marketing content included in the text messages typically contains a link to download the TaxiMagic mobile application. Mr. DePasquale also admitted that RideCharge's client customers can have a list of text messages sent to a list of cellular telephone numbers. And, in fact, the default configuration of RideCharge's system includes automatically rotating the marketing content of the messages to be sent *en masse* to cellular subscribers to maintain their attention. Mr. DePasquale estimated that Orange Cab sent "probably a thousand" dispatch notification text messages on an average day.

50. Based on my education, training and experience, it is clear that the MT text message sent to the Plaintiff was a text message that was automatically and programmatically sent by RideCharge. Although the text message content had some personalized information along

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

with a concatenated marketing advertisement, it is clearly designed as a pre-programmed text message that makes use of temporary parameters to populate the message content to be sent to cellular subscribers that call Orange Cab to order a taxi. The cellular telephone number of the Plaintiff was stored on RideCharge's automated computer equipment enabling them to send an unsolicited and unwanted text message to him.

51. In order to automatically and programmatically send these text messages to cellular telephone subscribers, the RideCharge application must store cellular telephone numbers obtained from Orange Cab customers as the destination addresses of the MT text messages. The cellular telephone numbers stored are used by the RideCharge application to communicate with cellular telephone subscribers *en masse*. RideCharge automatically, and without human intervention, sends MT text messages to cellular telephone subscribers who have not "opted-in" nor consented to receive such messages.

## ASCERTAINABILITY

52. Based on my experience and expertise, it is my expert opinion that the proposed members of the class in this case can be definitively and clearly ascertained based solely on their cellular telephone numbers. The Defendants obtain and store cellular telephone numbers via the mobile text message program process and to send text messages to cellular telephone subscribers as previously described. The process to ascertain and identify the class members solely from their cellular telephone numbers is a straightforward and highly effective administrative process.

53. It is my understanding that their may be tens or hundreds of thousands of cellular subscribers who were called by the Defendants either by directly connecting to the

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12−cv−00576−RSL - 21

HEYRICH KALISH McGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

wireless networks via the MultiMode iSMS product or indirectly connecting to the
wireless networks via Twilio as an SMS aggregator.

54. Mr. Woldearegaye admitted in his deposition that the dispatch system used by Orange
Cab maintains a database of telephone numbers for customers that have called for a taxi.
Mr. Woldearegaye also admitted that this database can be queried for unique telephone
numbers over a period of time.

55. Some portion of the Defendants' stored telephone numbers may be wireline numbers and
not cellular telephone numbers. Third-party service organizations exist, such as Contact
Center Compliance (see http://www.DNC.com), that provide a service to quickly analyze
any size list of telephone numbers and filter out those numbers that are cellular telephone
numbers. Results of such an analysis would immediately reveal which of the telephone
numbers produced by the Defendants are wireline telephone numbers and which are
cellular telephone numbers. In addition, the telecommunications carrier servicing a
particular telephone number can also be ascertained. Contact Center Compliance
maintains a daily updated and complete database of all telephone numbers and associated
carriers used in North America. This database is provided and regularly updated by
Neustar, Inc. Contact Center Compliance has maintained this database, including daily
updates since 2007.

56. The MultiMode iSMS product records detailed statistics and log records for all SMS text
messages sent to cellular telephone subscribers. According to the MultiMode iSMS User
Guide for System Administrators, administrators of the product have the ability, via a
simple website interface, to "…list the SMS text messages sent. The list includes the
receiver's number, the message sent, and a timestamp."

HEYRICH KALISH McGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

57. Twilio, as an SMS aggregator, records, maintains and stores detailed information about all of the text messages sent and received on behalf of a particular client, such as RideCharge. These records are known as message detail records ("MDRs") or call detail records ("CDRs"). The detailed record information includes all cellular telephone numbers to which text messages are sent as well as all cellular telephone numbers from which text messages are received. In addition, and for each text message sent and received, the SMS aggregators record the date and time each text message is sent or received as well as the textual content of each message sent or received.

58. All wireless telecommunications carriers record, maintain and store detailed information about all of their subscribers. This information includes similar CDRs and MDRs (albeit without the textual content of each message), bill copies, payment history, subscriber identities and the time period when each subscriber used a particular cellular telephone number.

59. All of this detailed and recorded text message information for each subscriber can be obtained and produced by Twilio via subpoena for each text message sent or received by RideCharge. The provided data will include the cellular telephone number of each subscriber in each and every message as the identifying piece of data for the class. Since the SMS aggregators maintain and store the textual content of each message sent and received, and MDRs can be obtained in a searchable and sortable format such as a text file or spreadsheet or text file, it is a straightforward administrative procedure to determine which cellular subscribers have been affected. Based upon the text file or spreadsheet, a brief filtering process and examination of the results can reveal those unique cellular telephone numbers who are members of the proposed class during the

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

class period. Moreover, for each unique cellular telephone number revealed, the text message content provided for each message can be searched and further filtered for a particular string of characters, such as the link to download the TaxiMagic application identified by "http://" as a portion of the message.

60. Furthermore, the wireless carriers can be subpoenaed to provide identifying subscriber information for the unique cellular telephone numbers obtained from Twilio and the MultiModem iSMS cellular modem product.

61. According to ComScore® in their 2012 Mobile Future in Focus industry report (see http://www.comscore.com/Insights/Presentations_and_Whitepapers/2012/2012_Mobile_Future_in_Focus), the top eight wireless carriers maintained approximately 97% subscriber market share.

62. All wireless carriers, and potentially others, can be subpoenaed to produce subscriber identifying information, such as name, address and other information, based solely on the provided cellular telephone number for a particular subscriber.

63. Furthermore, telephone number portability and wireless carrier churn rates are unlikely to effect the ability to ascertain and identify the proposed class members. "Churn rate" is the term used to measure the proportion of mobile subscribers that leave a particular wireless carrier. Wireless churn is identified as a monthly percentage of a wireless carrier's overall subscriber base. The entire wireless industry experiences an average of just under 2% churn per month. It is a straightforward process to determine the wireless carrier serving each cellular telephone number in a list. In fact, Orange Cab, RideCharge and/or Twilio must maintain this capability in order to send text messages to subscribers. Text messages must be sent to the appropriate wireless carrier network serving a particular cellular

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12−cv−00576−RSL - 24

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington 98101
(206) 838-2504

telephone number representing a cellular subscriber. If, under subpoena, it appears that a particular cellular telephone number sent to a wireless carrier today was not being served by that same carrier at the time a text message was received from RideCharge, that cellular telephone number can be provided to each of the other wireless carriers to determine which one was serving that number at the time a text message was received. One of those carriers must have serviced that number when it received a message and that particular carrier can provide any appropriate identifying information about the individual subscriber.

64. In addition, there exists commercially available third-party information service companies that collect and maintain subscriber data on behalf of the wireless carriers. These companies maintain comprehensive and extensive databases that identify subscribers based solely on their cellular telephone numbers. As an example, Neustar® Information Services provides such a service.

65. Class members can be effectively ascertained and identified based solely on their cellular telephone numbers. The wireless carriers can provide the appropriate subscriber identifying data under subpoena or a third-party provider such as Neustar Information Services can supply the appropriate subscriber data. In either case, these methods are straightforward administrative processes and are highly reliable.

## SUMMARY

66. In summary, it is my opinion that RideCharge utilized an automated text messaging application in its capacity as a Value Added Service Provider (VASP). According to the Telephone Consumer Protection Act, 47 U.S.C. § 227 – Restrictions on use of telephone equipment, the term "automatic telephone dialing system" means equipment which has

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12–cv–00576–RSL - 25

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

the capacity to: store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers. Moreover, RideCharge maintains and operates the TaxiMagic mobile text message application using equipment which has the capacity to store or produce telephone numbers to be called, from a list or database of numbers or using a random or sequential number generator and dials these numbers without human intervention. As such, RideCharge employed and operated an Automatic Telephone Dialing System (ATDS) as defined in the TCPA and accompanying FCC rules and regulations.

67. Furthermore, it is apparent that RideCharge was aware of the best practices and guidelines promulgated by the Mobile Marketing Association regarding the requirements to obtain express "opt-in" consent from cellular subscribers prior to sending them mobile-terminated text messages.

68. Moreover, the process to ascertain and identify the class members solely from their cellular telephone numbers is a straightforward administrative process that is highly effective and reliable.

69. My opinions in this declaration are based upon extensive experience in the telecommunications industry, a detailed understanding of telecommunications systems, a detailed understanding of Short Message Service ("SMS") technology and a detailed understanding of mobile marketing employing SMS technology. I hereby reserve the right to supplement or modify my opinions detailed in this report to the extent that new information is made available through discovery or other means.

70. I declare that the foregoing is true and correct subject to the laws of perjury of the United States.

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

Executed in Las Vegas, Nevada, on this 8th day of July, 2013.

1

2

3                                         _____

                                                Randall A. Snyder

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF RANDALL A. SNYDER
Case No. 2:12−cv−00576−RSL - 27

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

EXHIBIT A

## Randall A. Snyder
## Curriculum Vitae

## Professional Summary

Randall Snyder is a recognized expert in wireless and cellular telecommunications technology, executive manager and leader, designing, developing, marketing and managing mobile telecommunication system and software products. He has over 25 years of experience specializing in wireless telecommunications technology, network architecture, design, system engineering, marketing and product management. He is a reputable leader and strategic developer with a successful background building startups. He is skilled presenter, communicator, and educator with success impacting organizational performance, corporate reputation and increasing sales. Mr. Snyder is results-oriented, highly organized and creatively focused on adhering to organizational missions and philosophy while designing best-of-breed mobile technology solutions. He has extensive travel experience to Asia-Pac, Latin America and Europe supporting engineering, sales and marketing with familiarity with wireless network operators and manufacturers worldwide. Mr. Snyder has several years of wireless standards development with extensive travel throughout Asia-Pac, Latin America and Europe.

## Expertise

- Business Relations: Seminars, Sales Presentations and Sales Engineering

- Legal: Provisional and Patent Applications, Subject Matter Expert Consultant, Expert Witness and Testimony, Litigation Support, Sales and Vendor Contract Negotiations and Review, Qualified as an Expert in Federal District Court

- Management: Strategic/Tactical Planning, Product Management, Marketing Management, Operations Management, Competitive Analysis, Problem Resolution, Project Planning, Risk Management

- Organizational: P&L Management, Budget Planning, Expense Reduction and Cost Control

- Technology: Wireless Network Engineering, Design and Architecture, Multimedia Systems, Mobile Internet, Mobile Video, Mobile Marketing, mCommerce and Mobile Payments, Mobile Telecommunications Standards, 3G, UMTS, LTE, LBS, SMS, MMS, WAP, GSM, and ANSI-41 (CDMA) Networking, Signaling System No. 7 (SS7), Communications Protocols, Telephone Consumer Protection Act (TCPA), Automatic Telephone Dialing Systems (ATDS)

## Education

| Year | College or University | Degree |
|------|----------------------|--------|
| 1984 | Franklin and Marshall College | B.A., Mathematics (minor in Astronomy) |

## Professional Experience

<div style="border:1px solid black">

### Randall A. Snyder
### Curriculum Vitae

</div>

| | |
|---|---|
| From: | January 2007 |
| To: | Present |
| Organization: | Wireless Research Services, LLC; Las Vegas, NV |
| Title: | President and Founder |
| Summary: | Responsible for consulting business, and revenue as well as being the principal consultant. Areas of subject matter expertise include mobile and cellular networking, 3G, LTE, UMTS, GSM, ANSI-41, LBS, SMS, MMS, WAP, SS7, Diameter Signaling, Automatic Telephone Dialing Systems (ATDS) and mobile multimedia systems. With this expertise, primary consulting is in the area of system and product architecture, design, development, management and marketing as well as patent preparation and development, expert reports, expert testimony and litigation support. Expert witness and technology consultant for over 50 legal cases; authored over 40 expert reports for intellectual property cases, Telephone Consumer Protection Act (TCPA) cases and wireless technology litigation cases. |

Notable Case:

- Personally cited by <u>United States Court of Appeals for the Ninth Circuit</u>. Satterfield v. Simon & Schuster, Inc. No. 07-16356, D.C. No. CV-06-02893-CW Opinion. Appeal from the United States District Court for the Northern District of California. Opinion by N.R. Smith, Circuit Judge. Filed June 19, 2009.

  Result of expert opinion greatly expanded the TCPA and was followed by formal FCC Declaratory Rulings that text messages are calls as defined by the TCPA and a stored electronic list of telephone numbers falls within the definition of an Automatic Telephone Dialing System (ATDS).

| | |
|---|---|
| From: | September 2007 |
| To: | August 2010 |
| Organization: | Finsphere Corporation; Bellevue, WA |
| Title: | Vice President Product Management & Wireless Engineering |
| Summary: | Was among the first handful of employees at Finsphere prior to Series A funding. As vice president of product management and wireless engineering and a member of the executive management team, was responsible for product management activities and wireless technology solutions for Finsphere's products. These products encompassed mobile location based software-as-a-service (SaaS) products offered primarily to financial institutions and banks. Responsibilities included product requirements and system functionality, strategic planning, R&D of new technologies, wireless network interconnectivity as well as wireless technology for Finsphere's products. Was also responsible for market strategies, white papers and development and management of intellectual property and patent applications. |

| | |
|---|---|
| From: | May 2004 |

| | |
|---|---|
| **Randall A. Snyder** | |
| **Curriculum Vitae** | |

To:             April 2007
Organization:   Entriq, Inc.; Carlsbad, CA
Title:          Vice President Product Management
Summary:        Was responsible for the entire product management team and system architecture for
                Entriq's products and services. Products encompassed mobile and broadband pay
                media applications (specializing in video), digital rights management (DRM) and
                security solutions, e-commerce and m-commerce systems as well as ad management
                and delivery solutions for both broadband and mobile media services. Responsibilities
                also included network and protocol analysis, market analysis, evaluation of third-party
                software and services, all vendor contract negotiations, RFP responses and overall
                administrative responsibility for the entire product line. Was responsible for directing
                and managing the technical writing department producing all user documentation
                associated with the products. Was nominated for a National Television Arts and
                Sciences Emmy Award for Outstanding Achievement in Advanced Media Technology
                for unique mobile technology designed, developed and commercially deployed as part
                of Entriq's solution.


From:           February 2002
To:             November 2003
Organization:   m-Qube, Inc. (acquired by Verisign); Boston, MA
Title:          Vice President Product Management and Carrier Marketing
Summary:        Was responsible for the entire product management and carrier marketing teams,
                member of the executive management team and one of the founders. Was responsible
                for all product management, system engineering and product strategy for all business
                conducted with the wireless industry and carriers. Was in charge of the market strategy
                and wireless network architecture for m-Qube's mobile marketing service, a value-
                added service offering mobile marketing solutions to wireless carriers using short
                message services (SMS) for GSM and CDMA networks. The service architecture
                enabled branded companies to deploy promotional marketing and messaging campaign
                dialogs with mobile subscribers via SMS. The network architecture required definition
                and design of all aspects of the overall network including SMS technology,
                interconnectivity to the wireless carriers, signaling, traffic management, market
                requirements for features and services, network equipment specifications and OA&M.


From:           April 2001
To:             February 2002
Organization:   Bitfone Corporation; Mountain View, CA
Title:          Vice President Product Management and Marketing
Summary:        Was responsible for the entire product management team and all of the company's
                product definitions, strategies and positioning. Had direct responsibility for market
                and product requirements, market research, competitive analysis, product strategy and
                sales strategy. Bitfone's products included the iBroker, a mobile Internet technology
                infrastructure platform to enhance WAP, MMS, mobile e-mail and wireless
                messaging. Was also responsible for the mProve product (obtained via merger with
                Digital Transit, Inc.) providing over-the-air firmware and software update technology

> **Randall A. Snyder**
> **Curriculum Vitae**

to mobile devices.

| | |
|---|---|
| From: | November 2000 |
| To: | April 2001 |
| Organization: | Openwave Systems (via merger of Phone.com and Software.com); Redwood City, CA |
| Title: | Executive Director Emerging Technologies |
| Summary: | Was responsible for new 3G technologies and providing market and product plans for those technologies for the entire product line. Primary responsibility for the 3GPP Multimedia Messaging Service (MMS), collecting market requirements from customers, developing corporate strategy for MMS and preparing the organization for additional development of the product. In addition, taught wireless technology classes to the different departments at Openwave and educated them on wireless service provider strategies and network technologies. |

| | |
|---|---|
| From: | March 2000 |
| To: | November 2000 |
| Organization: | @Mobile and Software.com (via acquisition); Santa Barbara, CA |
| Title: | Director Wireless Product Management |
| Summary: | Was responsible for the product managers and for all of the wireless internet infrastructure products. Responsibilities included the overall market and product strategy for Software.com's wireless e-mail, short message service, instant messaging and unified messaging products. Was responsible for the overall revenues generated from these products based on detailed product plans and internal organizational planning. Much of his time was spent working with the executive management team and the sales directors on corporate market strategy. |

| | |
|---|---|
| From: | December 1999 |
| To: | March 2000 |
| Organization: | FreeSpace Communications, Inc.; Palo Alto, CA |
| Title: | Consulting Network Systems Engineer |
| Summary: | Was responsible for the complete design of the backbone network architecture for a new broadband fixed wireless data network. This new architecture incorporated DSL as the backbone network technology. The network architecture required definition and design of all aspects of the overall network plan including DSL technology, IP technology, ATM technology, interconnectivity to the PSTN, operations signaling, traffic engineering, market requirements for network features and services, network equipment specifications and OA&M. |

| | |
|---|---|
| From: | 1992 |
| To: | 1999 |
| Organization: | Synacom Technology, Inc.; San Jose, CA |
| Title: | Executive Director Product Marketing and Management |
| Summary: | |

> ### Randall A. Snyder
> ### Curriculum Vitae

---

1998 – 1999    Executive Director Product Marketing and Management

- Responsible for managing the entire product management and marketing department of Synacom Technology, including market research and planning, product management and market communications. Lead the entire design, definition and product direction of all aspects of Synacom's products.

1997 – 1998    Director Systems Engineering

- Responsible for coordinating and managing the overall functional and requirements specifications for all Synacom's products as well as the detailed test plans used for alpha system testing of those products. Also responsible for directing and managing the technical writing department producing all of the user documentation associated with all of the products. Provided the primary sales engineering support for sales and marketing and was involved in nearly every aspect of the product lifecycle.

1996 – 1997    Director Consulting Services and Principal Engineer

- Responsible for obtaining, coordinating and managing all technical consulting projects performed by the company. These projects included wireless network architecture and design for both IS-41 and GSM networks for dozens of client companies (carriers and equipment manufacturers). In this role, continued as a member of both the ANSI/TIA TR45.2 Subcommittee for cellular radio intersystem operations standards and the ANSI/TIA TR46 Committee for 1900 MHz GSM PCS standards. Major contributor to TR46 in the area of GSM-to-IS-41 network interworking. Also authored, edited and published TIA standard specification IS-93 for cellular network interconnections to the PSTN and ISDN.

1992 – 1996    Principal Engineer

- Consulted for McCaw Cellular, AT&T Wireless, AirTouch Cellular, AirTouch Satellite Services, Globalstar, Nokia, MCI, Sprint PCS, XYPoint, NextWave, NewNet American Personal Communications, CTIA and several other national and international wireless telecommunications companies.

- Wrote wireless network design and analysis papers including HLR specifications, Authentication Center specifications, PCS network design, short message service (SMS) design, intelligent network applications of wireless technology and in-house expert in signaling protocols. Extensive experience with Signaling System No. 7, including both protocol implementation and design. Authored the Standard Requirements Document for the SS7-based A-interface between the base station and MSC used throughout the TIA. Also involved in the design of the Bellcore WACS/PACS technology, digital cellular network service and feature descriptions, SCPs and HLRs. Extensive experience developing the architecture and design of distributed intelligent networks including, SS7, cellular, PCS, AIN and WIN networks. Key member of the original Cellular Digital Packet Data (CDPD) architecture and design team. Designed the CDPD air interface protocol emulator developed and marketed by AirLink Communications, Inc.

---

> ### Randall A. Snyder
> ### Curriculum Vitae

From:          December 1990
To:            April 1992
Organization:  AT&T Bell Laboratories; Whippany, NJ
Title:         Consulting Member of the Technical Staff
Summary:       Evaluated wireless technology services for the Wireless Systems Architecture group.
               Also participated as a system engineer on the design of the Global System for Mobile
               (GSM) communication architecture and a software engineer developing the base
               station controller (BSC) for GSM. Also responsible for planning, coordinating,
               designing and testing the SS7 protocol software for the GSM A-interface between the
               BSC, MSC and operations and maintenance center (OMC). High-level and detailed
               design specifications were developed to coordinate the protocol testing between two
               remote laboratories. Provided the traffic analysis and traffic engineering of call traffic
               for the BSC. Specifically designed and developed the dynamic traffic overload control
               subsystem for the BSC. Presentations were given to technical staffs at multiple Bell
               Laboratories facilities supporting this work.

From:          May 1987
To:            December 1990
Organization:  DGM&S, Inc.; Mt. Laurel, NJ
Title:         Senior Staff Consultant
Summary:       Responsible for the design, development and test coordination of an advanced
               intelligent network applications platform for a service control point (SCP). Also spent
               several years as a consulting software engineer for Siemens AG, developing and
               testing SS7 and call control software for the EWSD digital switching system for
               international as well as U.S. national network implementations. This work involved
               extensive travel to both Frankfurt and Munich, Germany for software system design
               and testing. Also involved in the concept, design and technical marketing of
               proprietary enabling technology software products for SS7 and ISDN.

From:          May 1986
To:            May 1987
Organization:  ADP, Inc.; Mt. Laurel, NJ
Title:         Senior Software Engineer and Analyst
Summary:       Responsible for the design and development of data communications and real time
               database application software for a host data center that provided real time financial
               information to large brokerage houses. Data communication protocol expertise in
               HDLC, RS-232 and IBM BiSync.

From:          June 1984
To:            May 1986
Organization:  C3, Inc.; Cape May, NJ

| Randall A. Snyder |
| Curriculum Vitae |

Title:       Consulting Systems Analyst and Software Engineer
Summary:     As a civilian consulting systems analyst and engineer to the U.S. Coast Guard
             Electronics Engineering Center (EECEN) for C3, Inc., developed sophisticated
             database software for shipboard use including inventory and law enforcement
             applications. The work included the follow-through of the entire project lifecycle
             including writing of requirements, functional, design and program specifications,
             coding, debugging, alpha and beta testing, release, shipboard installation and
             continuing technical support of the product. Received a personal commendation from
             Admiral W.F. Merlin, Chief, Office of Command, Control and Communications, for
             successful efforts on these projects.

## Professional Affiliations, Achievements & Awards

- Member, Mobile Multimedia Institute
- Nominated, Technology and Engineering Emmy Award for Outstanding Achievement in Advanced Media Technology in 2006

## Patents & Publications

### Issued Patents

| Patent | Date | Description |
|---|---|---|
| US 8,374,634 | 02/12/2013 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 8,280,348 | 10/02/2012 | System and Method for Identity Protection Using Mobile Device Signaling Network Derived Location Pattern Recognition |
| US 8,155,677 | 04/10/2012 | Mobile Messaging Short Code Translation and Routing System and Method |
| New Zealand 580499 | 08/31/2012 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 8,131,262 | 03/06/2010 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,116,731 | 02/14/2012 | System and Method for Mobile Identity Protection of a User of Multiple Computer Applications, Networks or Devices |
| Australia 2008/115299 | 02/09/2012 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| S. Africa 2009/06947 | 01/26/2011 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 7,792,518 | 09/07/2010 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 7,403,788 | 07/22/2008 | System and Method to Initiate a Mobile Data Communication |

|  |  | Utilizing a Trigger System |
| US 6,128,389 | 10/03/2000 | Authentication Key Management System and Method |
| US 5,970,144 | 10/19/1999 | Secure Authentication-Key Management System and Method for Mobile Communications |
| US 5,850,445 | 12/15/1998 | Authentication Key Management System and Method |
| US 5,799,084 | 08/25/1998 | System and Method for Authenticating Cellular Telephonic Communication |

## Published Patents Pending

| Patent Application | Date | Description |
| 20110202407 | 08/18/2011 | System and Method for Improving Internet Search Results Using Telecommunications Data |
| 20110154447 | 06/23/2011 | Systems and Methods for Authenticating a User of a Computer Application, Network or Device Using a Wireless Device |
| 20100041380 | 02/18/2010 | System and Method for Determining and Delivering Appropriate Multimedia Content to Data Communication Devices |
| 20090204815 | 08/13/2009 | System and Method for Wireless Device Based User Authentication |
| 20080119210 | 05/22/2008 | Wireless Messaging Address System and Method |
| 20080114884 | 05/15/2008 | Centralized Mobile and Wireless Messaging Opt-Out Registry System and Method |
| 20060224943 | 10/05/2006 | Method and System to Automatically Publish Media Assets |

## Publications

1. What Workers Want from Wireless by Randall A. Snyder; April 15, 2004. America's Network, Advanstar Communications, Santa Ana, California USA.

2. Snyder, Randall A. and Gallagher, Michael D. Wireless Telecommunications Networking with ANSI-41 Second Edition; McGraw-Hill, New York, NY USA; © Copyright 2001 Randall A. Snyder and Michael D. Gallagher.

3. Forecasting SS7 Traffic by Randall A. Snyder; November 1, 2000. Wireless Review, Volume 17, Number 21, Intertec Publishing, Overland Park, KS USA.

4. Gallagher, Michael D. and Snyder, Randall A. Mobile Telecommunications Networking with IS-41; McGraw-Hill, New York, NY USA; © Copyright 1997 Michael D. Gallagher and Randall A. Snyder.

5. IS-41/GSM Interoperability by Randy Snyder; December, 1995, Cellular Networking Perspectives, Cellular Networking Perspectives, LTD, Calgary, Alberta, Canada.

## Citations

1. Method and Apparatus for Routing Short Messages, US Patent #6308075, Issued October 23, 2001.

2. Mediation Software for Delivery of Interactive Mobile Messaging and Personalized Content to Mobile Devices. Patent Application # 20020120779, August 29, 2002.

3. Automatic In-Line Messaging System, US Patent #6718178, Issued April 6, 2004.

Randall A. Snyder
Curriculum Vitae

4.  <u>Method and System for Wireless Instant Messaging</u>, US Patent #7058036, Issued June 6, 2006.

5.  <u>United States Court of Appeals for the Ninth Circuit</u>. Satterfield v. Simon & Schuster, Inc. No. 07-16356, D.C. No. CV-06-02893-CW Opinion. Appeal from the United States District Court for the Northern District of California. Opinion by N.R. Smith, Circuit Judge. Filed June 19, 2009.

EXHIBIT B

┌─────────────────────────────────────┐
│          **Randall A. Snyder**       │
│          **Curriculum Vitae**        │
└─────────────────────────────────────┘

## Litigation Support Experience

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Washington Consumer Protection Act, RCW 19.86 and RCW 80.36.400 related to unfair business practices and unlawful cellular telephone calls |
| Law Firm: | Williamson and Williams Law |
| Case Name: | Kids Northwest v. First Data Corporation |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Heyrich Kalish McGuigan, PLLC |
| Case Name: | Gragg v. Orange Cab Company, Inc., et al. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Wooten, Kimbrough & Normand, PA |
| Case Name: | Murphy v. DCI Biologicals, LLC |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | McGuire Law, P.C. |
| Case Name: | Murray v. Bill Me Later, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Kazerouni Law Group, APC |
| Case Name: | Sherman v. Yahoo! Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Ongoing |

**Randall A. Snyder**
**Curriculum Vitae**

Date:                    2013

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to short message service (SMS) technology
Law Firm:                George Rikos Law
Case Name:               Van Patten v. Vertical Fitness
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Ongoing
Date:                    2013

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and California
                         Business and Professions Code § 17200 class action related to short message
                         service (SMS) technology
Law Firm:                Milberg LLP
Case Name:               D'Agostino v. Jesta Digital, LLC (dba Jamster)
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Ongoing
Date:                    2013

*Expert Engagement:*
Type of Matter:          Misleading advertising provisions of the Competition Act regarding premium
                         rate content via SMS technology
Law Firm:                Canadian Department of Justice – Competition Bureau
Case Name:               Commissioner of Competition v. Rogers Communications Inc., Bell Canada,
                         Telus Corporation, and the Canadian Wireless Telecommunications Association
Services Provided:       Testifying expert for plaintiff
Disposition:             Ongoing
Date:                    2013

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and Restrictions
                         on Telemarketing, Telephone Solicitation, and Facsimile Advertising 47 C.F.R.
                         § 64.1200(d)(3) class action related to unlawful cellular telephone calls
Law Firm:                Burke Law Offices, LLC
Case Name:               Benzion v. Vivint, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Ongoing
Date:                    2013

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful cellular telephone calls
Law Firm:                Lemberg & Associates LLC
Case Name:               Rutigliano v. Convergent Outsourcing, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff

> **Randall A. Snyder**
> **Curriculum Vitae**

Disposition:          Ongoing
Date:                 2013

*Expert Engagement:*
Type of Matter:       Intellectual property (patents) related to short message service (SMS) technology
                      and mobile banking
Law Firm:             Panovia Group LLP
Case Name:            N5 Technologies, LLC v. Capital One, N.A., et al.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Ongoing
Date:                 2013

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and California's
                      Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class action related to
                      short message service (SMS) technology
Law Firm:             Hartmann and Kananen
Case Name:            Baird v. Sabre, Inc.
Services Provided:    Testifying expert for plaintiff
Disposition:          Ongoing
Date:                 2013

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to short message service (SMS) technology
Law Firm:             Kazerouni Law Group, APC
Case Name:            Emanuel v. The Los Angeles Lakers, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Dismissed
Date:                 2013

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to short message service (SMS) technology
Law Firm:             Kazerouni Law Group, APC
Case Name:            Barani v. Wells Fargo Bank, N.A.
Services Provided:    Testifying expert for plaintiff
Disposition:          Ongoing
Date:                 2013

*Expert Engagement:*
Type of Matter:       Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                      related to short message service (SMS) technology
Law Firm:             McGuire Law, P.C.
Case Name:            Smith v. Microsoft Corporation
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:          Ongoing

| | |
|---|---|
| **Randall A. Snyder** |
| **Curriculum Vitae** |

Date:                    2013

*Expert Engagement:*
Type of Matter:          Intellectual property (patents) related to wireless calling party identification
                         technology
Law Firm:                K&L Gates LLP
Case Name:               Cequint Inc. v. Apple Inc.
Services Provided:       Consulting expert for plaintiff
Disposition:             Settled
Date:                    2013

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to short message service (SMS) technology
Law Firm:                Keogh Law, Ltd.
Case Name:               Wanca v. LA Fitness International, LLC
Services Provided:       Testifying expert, expert reports, depositions for plaintiff
Disposition:             Ongoing
Date:                    2013

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful telephone calls
Law Firm:                Donald A. Yarbrough, Esq.
Case Name:               Mais v. Gulf Coast Collection Bureau, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Settled
Date:                    2013

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to unlawful calls
Law Firm:                Donald A. Yarbrough, Esq.
Case Name:               Manno v. Healthcare Revenue Recovery Group, LLC
Services Provided:       Testifying expert, expert reports, depositions for plaintiff
Disposition:             Settled
Date:                    2013

*Expert Engagement:*
Type of Matter:          Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action
                         related to short message service (SMS) technology and unlawful charging of
                         cellular telephone customers
Law Firm:                Law Office of Scott D. Owens, Esq.
Case Name:               Wojcik v. Buffalo Bills, Inc.
Services Provided:       Testifying expert, expert reports for plaintiff
Disposition:             Ongoing
Date:                    2012 – 2013

┌─────────────────────────────────┐
│        **Randall A. Snyder**        │
│        **Curriculum Vitae**         │
└─────────────────────────────────┘

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | Law Office of Scott D. Owens, Esq. |
| Case Name: | Keim v. ADF Midatlantic, LLC (Pizza Hut) |
| Services Provided: | Testifying expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2012 – 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP |
| Case Name: | Connelly v. Hilton Grand Vacations Company, LLC |
| Services Provided: | Consulting expert for defendant |
| Disposition: | Ongoing |
| Date: | 2012 – 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Intellectual property (patents) related to short message service (SMS) technology and multimedia message service (MMS) technology |
| Law Firm: | Baker Botts LLP |
| Case Name: | Intellectual Ventures LLC v. AT&T Mobility LLC, et al. |
| Services Provided: | Consulting expert for defendant |
| Disposition: | Ongoing |
| Date: | 2012 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | Edelson McGuire, LLP |
| Case Name: | Lee v. Stonebridge Life Insurance Company |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2012 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Kirby Law Group |
| Case Name: | Agne v. Papa John's International, Inc., et al. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2012 |

> **Randall A. Snyder**
> **Curriculum Vitae**

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action and NY GBL 399-P class action related to unlawful calls |
| Law Firm: | Bellin and Associates LLC |
| Case Name: | Tipoo v. Enhanced Recovery Company, LLC |
| Services Provided: | Testifying expert, consulting expert, discovery motions for plaintiff |
| Disposition: | Ongoing |
| Date: | 2012 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful calls |
| Law Firm: | Burke Law Offices, LLC |
| Case Name: | Bailey v. Household Finance Corporation, et al. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2011 – 2012 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Burke Law Offices, LLC |
| Case Name: | Annoni v. FYISMS.com, LLC |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2011 – 2012 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Schrock v. Wenner Media LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2011 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | Summit Law Group |
| Case Name: | Kramer v. Autobytel, Inc. and B2Mobile, LLC |
| Services Provided: | Consulting expert for defendant |
| Disposition: | Settled |
| Date: | 2011 |

## Randall A. Snyder
## Curriculum Vitae

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Intellectual property (patents) related to wireless location based services (LBS) |
| Law Firm: | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo PC |
| Case Name: | Emsat Geolocation Technology, LLC v. CellCo Limited Partnership (dba Verizon Wireless), et al. |
| Services Provided: | Consulting expert, USPTO affidavits for patent reexamination for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2010 – 2011 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful calls |
| Law Firm: | Keogh Law, Ltd. |
| Case Name: | Griffith v. Consumer Portfolio Services, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2010 – 2011 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful calls |
| Law Firm: | Keogh Law, Ltd. |
| Case Name: | Dobbin v. Wells Fargo Auto Finance, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Dismissed |
| Date: | 2010 – 2011 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Intellectual property (patents) related to short message service (SMS) technology |
| Law Firm: | Nelson Bumgardner Casto PC |
| Case Name: | Celltrace LLC v. AT&T Inc., et al. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2010 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | VanDyke v. Media Breakaway, LLC |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2009 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action |

<table>
<tr><td colspan="2"><strong>Randall A. Snyder<br>Curriculum Vitae</strong></td></tr>
</table>

|  |  |
|---|---|
|  | related to unlawful calls |
| Law Firm: | Gordon & Rees LLP |
| Case Name: | Allen v. Rickenbacker Collection Services |
| Services Provided: | Consulting expert for defendant |
| Disposition: | Undisclosed |
| Date: | 2009 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Intellectual property (trademarks) related to short message service (SMS) technology |
| Law Firm: | Fish & Richardson P.C. |
| Case Name: | Cricket Communications, Inc. v. HipCricket, Inc. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2008 – 2009 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Albrecht v. mBlox, Inc., et al. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2008 – 2009 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Walker v. Motricity, Inc. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Rynearson v. Motricity, Inc. |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Reed v. Sprint Nextel Corporation |

<div style="border:1px solid black; text-align:center;">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

Services Provided:      Testifying expert, expert reports for plaintiff
Disposition:            Settled
Date:                   2008

*Expert Engagement:*
Type of Matter:         Class action related to short message service (SMS) technology and unlawful
                        charging of cellular telephone customers
Law Firm:               KamberEdelson, LLC
Case Name:              Paluzzi v. CellCo Limited Partnership (dba Verizon Wireless) and mBlox. Inc.
Services Provided:      Consulting expert for plaintiff
Disposition:            Settled
Date:                   2008

*Expert Engagement:*
Type of Matter:         Class action related to short message service (SMS) technology and unlawful
                        charging of cellular telephone customers
Law Firm:               KamberEdelson, LLC
Case Name:              Nava v. Predicto Mobile, LLC
Services Provided:      Consulting expert for plaintiff
Disposition:            Settled
Date:                   2008

*Expert Engagement:*
Type of Matter:         Class action related to short message service (SMS) technology and unlawful
                        charging of cellular telephone customers
Law Firm:               KamberEdelson, LLC
Case Name:              McFerren v. AT&T Mobility, LLC
Services Provided:      Consulting expert for plaintiff, settlement agreement
Disposition:            Settled
Date:                   2008

*Expert Engagement:*
Type of Matter:         California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class
                        action related to short message service (SMS) technology and unlawful charging
                        of cellular telephone customers
Law Firm:               KamberEdelson, LLC
Case Name:              Guerrero v. MobileFunster, Inc.
Services Provided:      Consulting expert for plaintiff
Disposition:            Settled
Date:                   2008

*Expert Engagement:*
Type of Matter:         Computer Fraud and Abuse Act, 18 U.S.C. Article § 1030, class action related to
                        short message service (SMS) technology and unlawful charging of cellular
                        telephone customers
Law Firm:               KamberEdelson, LLC
Case Name:              Gray v. Mobile Messenger Americas, Inc.

<div style="border:1px solid black; text-align:center;">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

Services Provided:    Consulting expert for plaintiff
Disposition:    Settled
Date:    2008

*Expert Engagement:*
Type of Matter:    Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm:    KamberEdelson, LLC
Case Name:    Goddard v. Google, Inc.
Services Provided:    Consulting expert for plaintiff
Disposition:    Settled
Date:    2008

*Expert Engagement:*
Type of Matter:    Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm:    KamberEdelson, LLC
Case Name:    Duffy v. Nevis Mobile, LLC
Services Provided:    Consulting expert for plaintiff
Disposition:    Settled
Date:    2008

*Expert Engagement:*
Type of Matter:    Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm:    KamberEdelson, LLC
Case Name:    Criswell v. MySpace, Inc.
Services Provided:    Testifying expert, expert reports for plaintiff
Disposition:    Settled
Date:    2008

*Expert Engagement:*
Type of Matter:    Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 and 28 U.S.C. § 1367(a) class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm:    KamberEdelson, LLC
Case Name:    Bradberry v. mBlox, Inc.
Services Provided:    Consulting expert, damage estimates for plaintiff
Disposition:    Settled
Date:    2008

*Expert Engagement:*
Type of Matter:    California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm:    KamberEdelson, LLC
Case Name:    Ayers v. Media Breakaway, LLC
Services Provided:    Testifying expert, expert reports for plaintiff

<div align="center">

**Randall A. Snyder**
**Curriculum Vitae**

</div>

| | |
|---|---|
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Intellectual property (patents) related to wireless location based services (LBS) |
| Law Firm: | Hahn Loeser & Parks, LLC |
| Case Name: | Emsat Geolocation Technology, LLC v. CellCo Limited Partnership (dba Verizon Wireless), et al. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Undisclosed |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | Blim & Edelson, LLC |
| Case Name: | Valdez v. Sprint Nextel Corporation |
| Services Provided: | Consulting expert, damages estimate for plaintiff |
| Disposition: | Settled |
| Date: | 2007 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 201 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | Blim & Edelson, LLC |
| Case Name: | Bradberry v. T-Mobile USA, Inc. |
| Services Provided: | Testifying expert, expert reports, numerosity for class certification for plaintiff |
| Disposition: | Settled |
| Date: | 2007 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | California Computer Crime Law, Cal. Pen. Code § 502 and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class action related to short message service (SMS) technology |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Abrams v. Facebook, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |
| Disposition: | Settled |
| Date: | 2007 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Blim & Edelson, LLC |
| Case Name: | Satterfield v. Simon & Schuster, Inc. |
| Services Provided: | Testifying expert, expert reports for plaintiff |

**Randall A. Snyder**
**Curriculum Vitae**

Disposition:          Settled
Date:                 2007 – 2009

*Expert Engagement:*
Type of Matter:       Intellectual property (patents) related to short message service (SMS) technology
Law Firm:             Paul Hastings LLP
Case Name:            TeleCommunication Systems, Inc. v. Mobile365, Inc.
Services Provided:    Testifying expert, expert reports, depositions, in-court testimony for defendant
Disposition:          Settled
Date:                 2007

EXHIBIT C

*Wireless*
  *Research*
*Services*

Wireless Research Services, LLC
Rate Sheet January 1, 2013

# Wireless Research Services, LLC

## 2012 Rate Sheet

| ITEM | FEE |
|---|---|
| Expert Witness Consulting, Expert Reports | $400 per hour |
| Depositions, In-court Testimony | $450 per hour |
| Required Travel, Lodging, Board and Administrative Expenses | Billed at Actual Cost<br>No Charge for Idle Travel Time |
| Non-refundable Retainer at Time of Engagement | $2,500 |