THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TORREY GRAGG, on his own behalf and on behalf of other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ORANGE CAB COMPANY, INC., a Washington corporation; and RIDECHARGE, INC., a Delaware Corporation, doing business as TAXI MAGIC,<br><br>Defendants. | Case No. 2:12−cv−00576−RSL<br><br>**PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION**<br><br>NOTED ON MOTION CALENDAR FOR OCTOBER 18, 2013<br><br><u>ORAL ARGUMENT REQUESTED</u> |

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

**TABLE OF CONTENTS**

A. Undisputed Evidence Establishes that Ridecharge Used an ATDS under the TCPA...... 1

    1. Defendants Ignore Precedents which Establish that Ridecharge Used an ATDS ........ 2

    2. The Court Should Follow the Precedents Ignored by Defendants ............................... 3

    3. Ridecharge's Use of an ATDS is Not Excused by Orange Cab's Data Entry.............. 5

B. Unopposed Expert Opinions Confirm that Ridecharge's Modem System is an ATDS .. 7

C. Orange Cab is Vicariously Liable for the Text Message Sent by Ridecharge ................. 9

D. Defendants Failed to Obtain Mr. Gragg's Express Consent Required by the TCPA .... 10

E. If the Court Hears Defendants' Motion for Summary Judgment, then Justice Requires Hearing Mr. Gragg's Cross Motion for Partial Summary Judgment............................. 11

F. There is no Reason to Delay Mr. Gragg's Cross Motion for Summary Adjudication... 12

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page i

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

In a Motion for Summary Judgment, Defendants ask the Court to rule that Ridecharge did not use an automated telephone dialing system ("ATDS") to send Mr. Gragg a text message even though their dialing system has the proven capacity to send pre-programmed text messages to millions of telephone numbers without human intervention. In so doing, Defendants ask the Court to overrule or else ignore well over a decade of contrary FCC and Ninth Circuit precedent. However, Defendants' own witnesses and documents establish beyond any genuine dispute that Defendants violated the TCPA. Defendants sent automated messages to promote Ridecharge's Taxi Magic app and services to numerous consumers who called Orange Cab just to order a taxi—not to receive advertisements about the Taxi Magic. Such automated telemarketing is exactly what the TCPA was enacted to prevent. Therefore, rather than grant Defendants' Motion for Summary Judgment, Mr. Gragg respectfully requests that the Court grant his Cross Motion for Partial Summary Judgment or, alternatively, Summary Adjudication against Defendants.

**A.   Undisputed Evidence Establishes that Ridecharge Used an ATDS under the TCPA**

Defendants do not dispute that Ridecharge used "a modem system" to send Mr. Gragg the text message at issue. *See* Dkt. No. 84, Ex. 84, p. TM5104; Dkt. No. 86-2, pp. 188:4 – 189:15. Defendants also do not dispute that this modem system consisted of thirty-eight (38) Model SF-100G MultiTech Systems cellular modems. *See* Dkt. No. 84, Exs. 71-72. Thus, when determining if this modem system is an ATDS as defined by the TCPA, the Court can review Ridecharge's own manual for these modems to understand their capacities. *See id*, Ex. 72.

Ridecharge's manual makes clear that its modem system has the capacity to store long lists of telephone numbers and then programmatically transmit text messages to any or all of the stored telephone numbers. *E.g.*, *see* Dkt. No. 84, Ex. 72 at TM5308 ("What is SMS? Short Messages through SMS (Short Message Service) can be sent to [m]obile numbers[,] [a]ny person(s) from the address book[,] [and] [a]ny group(s) of persons created from the address book or individual entries."); *c.f. id.*, Ex. 72 at TM5319 (Users of the modem can "[s]et up broadcast triggers (codes or words) that will send broadcast messages[…] [and] [c]ompose and save pre-configured messages."); *also see id.*, Ex. 72 at TM5275-5277, TM5285, TM5293-5294,

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 1

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

TM5310, TM5315-5320, TM5325, TM5344-5349; *and see* Dkt. No. 84, Ex. 58 at TM2080 (Ridecharge discussing transfer of telephone numbers to a MultiTech modem).

Defendants readily admit that Ridecharge utilized this programmatic capacity to create and send dispatch notifications text messages with a rotating medley of advertisements. *See* Dkt. No. 86-2, pp. 90:24 – 91:15, 92:13-17, 106:25 – 108:13, 201:8-9; Dkt. No. 61, Ex. 42 at TM1003; Dkt. No. 84, Ex. 83 at TM1476; Dkt. No. 86-1, pp. 59:22 – 60:5. Ridecharge referred to this programmatic element of their modem system as "SMS 'code'". *E.g.*, *see* Dkt. No. 61, Ex. 47 at TM1217. Therefore, there is no genuine dispute that Ridecharge's code—not a human being—created the text message which Mr. Gragg received and made sure it included one of nine advertisements prepared for Orange Cab's customers who called Orange Cab to order taxis. *See* Dkt. No. 61, Ex. 48 at TM4931; *c.f.* Dkt. No. 60 ¶ 5; *and c.f.* Dkt. No. 14, ¶ 6.

Ultimately, Defendants themselves acknowledge that Ridecharge's modem system automated the transmission of millions of dispatch notification text messages like the one sent to Mr. Gragg. *See* Dkt. No. 86-2, pp. 70:6-11, 102:12:15; Dkt. No. 61, Ex. 3 at OC84 ("Dispatch Notification Allow Fleets to Automatically Notify Riders"), Ex. 4 at OC439 ("we're powering millions of Dispatch Notifications for our fleets"), Ex. 6 at OC438 ("this feature is an automated system"), Ex. 43 at TM5126 (modems "send about 100k messages/month" for just one taxi fleet); Dkt. No. 84, Ex. 64 ("[W]e've realized that 2500 messages/day is about the right number for a single modem. At more than 3000 messages/day, the modem falls behind in peak times yielding a less-than-optimal customer experience."), Ex. 72 at TM5285 (noting a "Max Outgoing Queue" of "4 MB" per modem). Defendants cannot and do not dispute any of the foregoing evidence because they provided it by Rule 30(b)(6) deposition testimony and documents they produced. Accordingly, Defendants' own evidence establishes that Ridecharge used an ATDS to send dispatch notification text messages to Mr. Gragg and Orange Cab customers like him.

    1.    <u>Defendants Ignore Precedents which Establish that Ridecharge Used an ATDS</u>

Notwithstanding the undisputed evidence which Defendants themselves provided, Defendants argue that Ridecharge's automated modem system might not be an ATDS under the

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 2

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

TCPA since it sends automated messages to lists of telephone numbers rather than to numbers it creates out of thin air. The FCC has long disagreed with Defendants' argument:

> The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." **The statutory definition contemplates autodialing equipment that either stores or produces numbers. It also provides that, in order to be considered an "automatic telephone dialing system," the equipment need only have the "*capacity* to store or produce telephone numbers** (emphasis added)...." It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies. In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily. As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. **The basic function of such equipment, however, has not changed–the *capacity* <u>to dial numbers</u> without human intervention.** We fully expect automated dialing technology to continue to develop.

18 FCC Rcd. 14014, 14091-92 ¶ 132 (July 3, 2003) (italics in original; bold and underlines added). Defendants also fail to acknowledge that the Ninth Circuit relied upon this FCC ruling when it held that a predictive dialer was an ATDS under the TCPA because it could store lists of telephone numbers and had "the *capacity* to dial numbers without human intervention." *See Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (emphasis added) *cert. denied,* 133 S. Ct. 2361 (U.S. 2013), *quoting* 18 FCC Rcd. at 14092 ¶ 132.

Accordingly, controlling FCC and Ninth Circuit precedents affirm that Ridecharge's automated modem system is an ATDS because (1) it can store telephone numbers, and (2) it has the capacity to dial those telephone numbers in an automated manner. *See* 27 FCC Rcd. 15391, 15392 ¶ 2 n. 5 (Nov. 29, 2012) (an ATDS is "hardware that, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers"), *citing* 18 FCC Rcd. at 14091-93 ¶¶ 131, 133; *see also Meyer*, 707 F.3d at 1043; *and see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.").

2. <u>The Court Should Follow the Precedents Ignored by Defendants</u>

Ninth Circuit opinions like *Meyer* and *Satterfield* that adhere to FCC guidance on ATDSs are, of course, binding precedent which should be followed. *See Hart v. Massanari*, 266 F.3d

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 3

KIRBY LAW GROUP
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

1155, 1170 (9th Cir. 2001) ("Binding authority must be followed unless and until overruled by a body competent to do so."). Moreover, the FCC opinions themselves are due deference because "Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA." *Satterfield*, 569 F.3d at 953. For example, "[i]t is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies." 18 FCC Rcd. at 14091-92 ¶ 132; *also see Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129 (W.D. Wash. 2012) ("automated dialing technology [expected] to continue to develop."), *quoting* 23 FCC Rcd. 559, 566 (2008). Therefore, the FCC's descriptions of ATDSs are entitled to deference unless they are "arbitrary, capricious, or manifestly contrary to the statute." *See Satterfield*, 569 F.3d at 954, *quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

Rather than being arbitrary, capricious, or manifestly contrary to the TCPA, the FCC's ATDS descriptions soundly comport to the remedial purpose of the statute. Congress enacted the TCPA to limit the use of ATDSs because "telephone subscribers considered automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy[.]" 27 FCC Rcd. 1830, 1839 ¶ 24 (Feb. 15, 2012), *citing* 137 Cong. Rec. H11307 (Daily Ed. Nov. 26, 1991). And "[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, --- F.3d ----, 12-2823, 2013 WL 4463305, *5 (3d Cir. Aug. 22, 2013); *see also Hason v. Med. Bd. of California*, 279 F.3d 1167, 1172 (9th Cir. 2002) (affirming the "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes"), *quoting Tcherepnin v. Knight,* 389 U.S. 332, 336 (1967). To a consumer, an automated message received is still an automated message regardless of whether their telephone number was dialed from a stored database or created out of thin air. Thus, the FCC's description of ATDS to include modern and evolving automated dialing systems comports fully with the letter and purpose of the TCPA.

In sum, Defendants ask the Court to be the first federal tribunal in the country to rule that the FCC erred with its practical description of an ATDS. Thus, Defendants want this Court to be

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 4

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

the first to hold that a device which has the capacity to send text messages in an automated manner to lists of thousands or even millions of telephone numbers is not an ATDS under the TCPA. However, in so doing, Defendants wrongly ignore controlling Ninth Circuit and FCC precedent. The TCPA protects consumers from any automated telephone dialing system, even if the system only has the capacity to make automated calls using lists of stored telephone numbers. *See* 27 FCC Rcd. at 15392 n. 5; *Meyer*, 707 F.3d at 1043; *and* 18 FCC Rcd. at 14091-92 ¶ 132. Therefore, Mr. Gragg respectfully asks the Court to rule that the undisputed facts establish that Ridecharge's modem system, which was used to call Mr. Gragg, is an ATDS under the TCPA.

       3.    <u>Ridecharge's Use of an ATDS is Not Excused by Orange Cab's Data Entry</u>

Defendants further argue that their automated modem system might not be an ATDS as defined by the TCPA because three humans were involved in providing some of the information which Ridecharge's automated modem system used to generate and send text messages to Mr. Gragg and other Orange Cab customers. Defendants contend that their automated modem system could not send a text message unless (1) Mr. Gragg called Orange Cab to order a cab, (2) Orange Cab's dispatcher entered Mr. Gragg's telephone number and location into Orange Cab's dispatch system, and (3) an Orange Cab taxi driver pressed a button in his taxi to accept the ride. *See* Dkt. No. 86-2, pp. 198:22 – 201:9, 210:13 – 211:19. However, Defendants admit that none of these people created the text messages sent to Mr. Gragg <u>and</u> that none of these people actually "dialed" Mr. Gragg's telephone number to send him the text message. *See id.*; *also see* Dkt. No. 86-1, pp. 94:24 – 95:3, 145:21 – 146:8. Thus, Defendants' real argument is that Ridecharge's automated modem system might not be an ATDS because they programmed it to send a text message after an Orange Cab taxi driver pressed a button to accept the ride order. Defendants err.

As a threshold matter, Ridecharge's modem system has the undisputed *capacity* to store lists of telephone numbers and to broadcast text messages automatically to such stored lists of telephone numbers. *See supra*, § A. This capacity, even if unused, is sufficient as a matter of law to establish that Ridecharge employed an ATDS to transmit their text message to Mr. Gragg. *See Satterfield*, 569 F.3d at 951 ("[A] system need not actually store, produce, or call randomly or

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (Case No. 2:12−cv−00576−RSL)
Page 5

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

sequentially generated telephone numbers, it need only have the capacity to do it."). Therefore, Defendants cannot avoid TCPA liability by claiming that they did not take advantage of the full capacity of their automated equipment to transmit their text message to Mr. Gragg. *See id*. Nevertheless, the manner in which Ridecharge actually used its modem system proves that the modem system was an ATDS as defined by the TCPA.

Ridecharge's modem system has the capacity to broadcast text messages to lists of telephone numbers, even a list of just one telephone number, upon receipt of a programmatic trigger. *See* Dkt. No. 84, Ex. 72. As described by Ridecharge's own evidence, a taxi driver's acceptance of a ride order is programmed to be a triggering event which causes Ridecharge's modem system to receive a telephone number to which it automatically sends a text message;

> When we have a technical integration to a fleet, we receive point-in-time "events" from the dispatch system. The dispatch system pushes us the information that taxi 123 just accepted order 789. We then deliver a DN to the phone number on order 789 - we have the phone number from when the order was put into the system, or we query the dispatch system to get it. We send the phone number to Twilio or to the SMS modem, depending on the fleet.

Dkt. No. 84, Ex. 66 at TM876; Dkt. No. 61, Ex. 29 at OC147 (a Ridecharge diagram which shows Orange Cab's dispatch system pushing data that is used to create and send text messages by Ridecharge's modem system). Defendants also concede that no human created or transmitted the specific text message sent to Mr. Gragg or anyone else. *C.f.* Dkt. No. 86-1, pp. 94:24 – 95:3, 145:21 – 146:8; *and* Dkt. No. 86-2, pp. 198:22 – 201:9, 210:13 – 211:19.

In the end, the underlying legal question presented by Defendants actually is whether an automated modem system can be an ATDS under the TCPA even when it is programmed to use human-originated data or triggering events. However, Defendants fail to provide an example of *any* possible automated system that could operate without at least some human intervention to provide for its configuration, to input necessary databases or other parameters, to turn it on, etc. Despite science fiction horror stories that suggest otherwise, machines have not yet found a way to operate without at least some assistance from humans. Machines cannot plug themselves in, turn themselves on, and then tell themselves what to do. Therefore, in defining an ATDS, the TCPA focuses only on the capacity of hardware and software to engage in automatic telephone

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 6

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

**dialing**—not automatic data entry or triggering events. *E.g.*, *see Meyer*, 707 F.3d at 1043 (ATDSs have "the *capacity* to dial numbers without human intervention.") (citation omitted); *also see* 27 FCC Rcd. at 15392 ¶ 2 n. 5 (an ATDS is "hardware that, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers") (citation omitted).[1] Thus, the TCPA protects consumers from receiving an endless cacophony of automated messages on their cellular telephones without telemarketers first obtaining consumers' express consent.

Under the TCPA, it is immaterial that Ridecharge's automated modem system utilizes data and relies on triggers that might originate with humans. Because Ridecharge's modem system had the capacity, which it used, to transmit text messages by automatically "dialing" the telephone numbers of Mr. Gragg and numerous other Orange Cab customers, there can be no genuine dispute that Ridecharge's modem system is an ATDS as contemplated by the TCPA.

**B.    Unopposed Expert Opinions Confirm that Ridecharge's Modem System is an ATDS**

Despite having months to consider the declaration of Randall Snyder (*see* Dkt. No. 80), Defendants have failed to respond to this cross motion with any expert opinion on whether Ridecharge's modem system is an ATDS. Defendants instead attempt to attack Mr. Snyder's opinions by suggesting that he lacked foundation to opine on the capabilities of Ridecharge's modem system because he did not inspect it physically. However, Defendants ignore that in rendering his opinions on how Ridecharge used an ATDS to send Mr. Gragg a text message, Mr. Snyder relied on the same deposition transcripts, the same declarations, the same exhibits, and even the same operations manual that have been filed with the Court on this issue. *See* Dkt. No. 80 ¶ 3. Accordingly, Defendants are wrong to move to strike Mr. Snyder's declaration.

Ninth Circuit precedent stands against Defendant's motion to strike. In *Satterfield*, 569 F.3d at 951, the Ninth Circuit relied on Mr. Snyder's declaration that the system at issue "stored telephone numbers to be called and subsequently dialed those numbers automatically and

---

[1] That no machine can be fully autonomous is the reason why the TCPA prohibits humans from using ATDSs instead of prohibiting ATDSs from using themselves. *See* 47 U.S.C. § 227(b)(1)(A).

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 7

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

without human intervention [and that] the use of stored numbers, randomly generated numbers or sequentially generated numbers used to automatically originate calls is a technical difference without a perceived distinction...." As reflected in the declaration cited by the Ninth Circuit, Mr. Snyder came to these opinions without having physically inspected the system at issue. *See Supplemental Declaration of Albert Kirby* ("*Supp. Dec. Kirby*"), ¶ 2, Ex. 1 ¶ 1. Like in the case here, Mr. Snyder based his opinions upon deposition testimony and documentary evidence. *See id*. Importantly, the Ninth Circuit overruled the district court's disregard of Mr. Snyder's opinions, considered his opinions as material evidence, and used his opinions to reverse the district court's ruling on whether the defendant used an ATDS. *See Satterfield*, 569 F.3d at 951. Because Mr. Snyder's opinions had sufficient foundation for the Ninth Circuit in *Satterfield*, Mr. Gragg respectfully submits that Mr. Snyder's opinions have sufficient foundation here.

Mr. Gragg also respectfully asks the Court to disregard Defendants' attempts to impugn the credibility of Mr. Snyder's opinions without themselves providing factual or legal foundation. Most notably, Defendants critique Mr. Snyder's opinions because he testified that an iPhone could, under certain circumstances, be an ATDS. However, Defendants fail to acknowledge that the iPhone and similar smart phones are powerful computers with processing capabilities superior to that of most computers which were available when Congress enacted the TCPA in 1991 over 22 years ago.[2] Reinforcing this reality, Judge Pechman of this District last year held that it was plausible for a cell phone, when paired with certain software, to be an ATDS. *See Hickey*, 887 F.Supp.2d at 1129-1130. Thus, by testifying how an iPhone can be made into an ATDS, Mr. Snyder actually substantiates the fact that he is an expert in the subject matter. Accordingly, Defendants' attacks on the credibility of Mr. Snyder's opinions are shown to be toothless, having no foundation in technological reality or the law.

Of course, Mr. Snyder's declaration might be superfluous for the present cross motion given the undisputed evidence provided by Defendants. *See supra*, § A. Nevertheless, the

---

[2] Mr. Gragg also respectfully asks the Court to take judicial notice that cell phones like the iPhone are computers which are considerably more sophisticated and computationally powerful than the computers which assisted Americans to travel safely to and from the moon in the 1960s.

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (Case No. 2:12−cv−00576−RSL) Page 8

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

declaration remains useful in that it is a cogent explanation which provides additional proof that Ridecharge used an ATDS to send many millions of text messages to Mr. Gragg and consumers like him. *E.g.*, *see* Dkt. No. 80, ¶¶ 11-17, 50-51, 66. Moreover, a more complete copy of the transcript of Mr. Snyder's deposition, offered pursuant to Fed. R. Evid. 106, confirms that his opinions are well-founded. *E.g.*, *see Supp. Dec. Kirby*, ¶ 3, Ex. 2 at 22:25 – 24:13, 26:19 – 31:9, 33:13 – 42:20, 49:14-19, 51:20 – 52:25, 54:2 – 62:16, 65:22 – 81:24, 87:12 – 88:11, 89:6-24.

The Ninth Circuit found a declaration by Mr. Snyder sufficient justification to make precedent in defining an ATDS under the TCPA. Here, Mr. Gragg requests that the Court consider Mr. Snyder's declaration not to make precedent—but to follow it. The expert opinion testimony of Mr. Snyder confirms that Ridecharge's modem system is an ATDS.

**C.     Orange Cab is Vicariously Liable for the Text Message Sent by Ridecharge**

Defendants do not dispute that Ridecharge made a call under the TCPA when its modem system transmitted a text message to Mr. Gragg. Rather, Defendants argue that Orange Cab cannot be vicariously liable for Ridecharge's "call" to Mr. Gragg. However, in making this argument, Defendants wholly ignore the undisputed fact that Ridecharge was only able to send the text message to Mr. Gragg because Orange Cab provided Mr. Gragg's telephone number and taxi order information to Ridecharge's modem system through a connection with Orange Cab's DDS dispatch system servers. *See* Dkt. No. 85-1, pp. 22:9 – 23:18, 22:23 – 23:5, 58:6-11, 85:4 – 87:12, 144:14-23; *cf.* Dkt. No. 84, Exs. 76, 80-81; *also see* Dkt. No. 85-2, pp. 204:11 – 206:19. Orange Cab provided this information to Ridecharge's modem system through its DDS servers for the express purpose of enabling Ridecharge to send automated dispatch notification text messages to Orange Cab customers like Mr. Gragg. *See* Dkt. No. 85-1, pp. 44:8 – 45:5; Dkt. No. 61, Ex. 12. Thus, there is no genuine dispute that Orange Cab had actual, ultimate, *and* ostensible control over whether Ridecharge obtained the information necessary to "call" Mr. Gragg.

Moreover, Defendants wholly ignore the recent FCC ruling which substantiates that Orange Cab's conduct is sufficient to require Orange Cab to share Ridecharge's liability under the TCPA for the text message transmission to Mr. Gragg. *See* 28 FCC Rcd. 6574 (May 9, 2013).

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 9

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

This recent ruling "establish[es] the operative legal standard for vicarious liability under the TCPA[.]" *Mey v. Honeywell Int'l, Inc.*, CIV.A. 2:12-1721, 2013 WL 5150445, *1 n. 2 (S.D.W.Va. Sept. 13, 2013). Because Orange Cab's provision of Mr. Gragg's telephone number to Ridecharge was a necessary predicate to the text message being sent, the FCC makes clear that Orange Cab shares Ridecharge's TCPA liability for transmitting the text message to Mr. Gragg. *E.g.*, *see id.*, at 6592 ¶ 46 ("[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to […] the seller's customer information.").

D.      **Defendants Failed to Obtain Mr. Gragg's Express Consent Required by the TCPA**

Defendants do not dispute that "express consent" is an affirmative defense. *See Grant v. Capital Mgmt. Services, L.P.*, 449 F. App'x 598, 600 n. 1 (9th Cir. 2011). Yet Defendants only provide evidence that Mr. Gragg provided his telephone number to an Orange Cab dispatcher the previous year when asked what "a good phone number or e-mail for me to contact you" would be if Orange Cab found a passport which Mr. Gragg had lost. *See* Dkt. No. 94, Ex. 1 at 1. This was not express consent for Ridecharge to send Mr. Gragg its telemarketing text message.

"Express consent is 'consent that is clearly and unmistakably stated.'" *Satterfield*, 569 F.3d at 955 (emphasis added; citation omitted). Thus, express consent for one party to call is not express consent for a third party call. *See id*. Moreover, the FCC has explained repeatedly that express consent for one type of call does not include consent to receive other types of calls. *See* 27 FCC Rcd. at 1840 ¶ 25 ("Consumers who provide a wireless phone number for a limited purpose—for service calls only—do not necessarily expect to receive telemarketing calls that go beyond the limited purpose for which oral consent regarding service calls may have been granted."); 27 FCC Rcd. 15391, 15397 ¶ 11 (Nov. 29, 2012) (ruling that "a consumer's express consent to receive [opt-out] confirmation texts is limited to texts that […] merely confirm the consumer's opt-out request and do not include any marketing or promotional information"); 23 FCC Rcd. at 564-65 ¶ 10 (ruling that a creditor can call a debtor about a debt "only if the wireless number was provided by the consumer to the creditor, and that such number was

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 10

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

provided during the transaction that resulted in the debt owed") (emphasis added). All of these precedents illustrate how express consent is limited to consent which unambiguously <u>stated</u>.

Ultimately, Defendants fail to provide any evidence that Mr. Gragg provided any <u>stated</u> consent to receive any text message from Ridecharge. Accordingly, the call made by Ridecharge to Mr. Gragg's cellular telephone number occurred without his prior express consent

### E. If the Court Hears Defendants' Motion for Summary Judgment, then Justice Requires Hearing Mr. Gragg's Cross Motion for Partial Summary Judgment

Defendants filed a Motion for Summary Judgment against Mr. Gragg's TCPA claim. *See* Dkt. No. 69. Mr. Gragg's present cross motion and reply brief together provide strong arguments of law and fact which explain why Defendant's Motion for Summary Judgment should be denied. *E.g.*, Defendant's cannot sustain their motion if it is possible for Mr. Gragg to prevail on his cross motion concerning the same subject matter. Nevertheless, Defendants attempt to invoke the "one-way intervention" rule to silence Mr. Gragg's full opposition to Defendants' dispositive motion. But in addition to defying fundamental fairness, Defendants' request misapprehends how the one-way intervention rule applies to the present case.

> As a general rule, the question of whether a class will be certified should be resolved before the merits of an action are decided. […] This procedural preference exists to protect defendants from the potential for "one-way intervention," whereby absent class members may choose to remain in the class if the decision on the merits is favorable to them, but may elect to opt out of the class if the decision on the merits is unfavorable. […] **However, defendants may waive this procedural order, and may opt to have the merits of an action decided first.**

*Vander Luitgaren v. Sun Life Assur. Co. of Canada*, CIV.A. 09-11410-FDS, 2012 WL 5875526, *1 n. 1 (D. Mass. Nov. 19, 2012) (emphasis added). Thus, when both defendants and plaintiffs have filed pre-certification cross motions for summary judgment, most courts to consider the issue have concluded "that resolution of the class certification issue can await the disposition of the parties' cross motions for summary judgment." *See Ahne v. Allis-Chalmers Corp.*, 102 F.R.D. 147, 151 (E.D. Wis. 1984) (a detailed analysis of one-way intervention as applied to dispositive cross motions); *White v. Bank of Am., N.A.*, CIV. CCB-10-1183, 2012 WL 1067657, *4 (D. Md. Mar. 27, 2012) ("[I]n cases where the defendant has filed the potentially dispositive motion, the defendant has waived the procedural safeguards of Rule 23, limiting the possible impropriety of

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (Case No. 2:12−cv−00576−RSL) Page 11

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

an early decision on the merits, at least as far as the defendant's protections are concerned.").

Though the Ninth Circuit has not taken a clear position on this issue, Defendants cannot dispute that the Ninth Circuit approved of the legal rationale for the D.C. Circuit opinion which affirms a pre-certification summary judgment sought and obtained by a plaintiff in a situation analogous to present circumstances. *See Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995); *c.f. Postow v. OBA Federal Sav. and Loan Ass'n*, 627 F.2d 1370, 1381-1384 (D.C. Cir. 1980). Moreover, as this Court recently stated, "the Court clearly has discretion to determine the course of these proceedings[…]." *Tavenner v. The Talon Group*, C09-1370RSL, Dkt. No. 130 at 3 (W.D. Wash. Sep. 27, 2012) (*see* Dkt. No. 85-1). Indeed, the Ninth Circuit holds that district courts have discretion to resolve merits issues prior to class certification "because the timing provision of Rule 23 is not absolute." *Wright v. Schock*, 742 F.2d 541, 543 (9th Cir. 1984). But while the Court can choose to decide dispositive motions before or after class certification, fundamental fairness occurs only if the Court hears Defendants' motion for summary judgment on the TCPA claim together with Mr. Gragg's dispositive cross motion on the same claim.

### F.   There is no Reason to Delay Mr. Gragg's Cross Motion for Summary Adjudication

The rationale of the one-way intervention rule rests upon a desire to avoid creating collateral estoppel in an unfair manner. *See Schwarzschild*, 69 F.3d at 295 (Noting "that one-way intervention had the effect of giving collateral estoppel to the judgment of liability in a case where the estoppel was not mutual.") (citation omitted). This rationale—and therefore rule—does not apply to interlocutory orders such as the summary adjudication also sought by Mr. Gragg. *See Chaidez v. Progressive Choice Ins. Co.*, CV 12-03753 RSWL, 2013 WL 1935362, *2 (C.D. Cal. May 9, 2013) ("Absent a specific statute authorizing otherwise, a partial summary judgment under Rule 56(g) is not a final judgment but rather an interlocutory summary adjudication or a pre-trial order[.]"); *c.f. Weule v. Nordstrom* (*In re Nordstrom*), 8 Fed. Appx. 823, 828 (9th Cir. 2001) ("[W]e cannot give collateral estoppel effect to this interlocutory order because there was no final judgment on the merits[…]."). Accordingly, there is no reason to delay hearing Mr. Gragg's alternative Cross Motion for Summary Adjudication.

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (Case No. 2:12−cv−00576−RSL) Page 12

KIRBY LAW GROUP
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

1  RESPECTFULLY SUBMITTED:  October 18, 2013

2  */s/ Albert H. Kirby*
   Albert H. Kirby, WSBA #40187               Donald W. Heyrich, WSBA #23091
3  **KIRBY LAW GROUP**                        **HEYRICH KALISH MCGUIGAN PLLC**
   93 S. Jackson St. #63230                   1325 Fourth Avenue, Suite 540
4  Seattle, WA 98104-2818                     Seattle, WA  98101
   Tel: (206) 414-9950                        Tel: (206) 838-2504
5  Fax: (866) 845-6302                        Fax: (206) 838-2505
   Email: ahkirby@kirby-legal.com             Email: dheyrich@hkm.com
6
                        Attorneys for Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 13

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950

## DECLARATION OF SERVICE

I, the undersigned, certify that, on this date, a true copy of the foregoing document will be or has been served on the persons listed below in the manner shown:

| | |
|---|---|
| Kenneth E. Payson, WSBA #26369<br>kenpayson@dwt.com<br>Ryan C. Gist, WSBA #41816<br>ryangist@dwt.com<br>DAVIS WRIGHT TREMAINE LLP<br>1201 Third Avenue, Suite 2200<br>Seattle, WA 98101-3045<br>Telephone: 206-622-3150<br>Fax: 206-757-7700 | ___ Legal Messenger<br>___ Facsimile<br>___ United States Mail, First Class<br>___ Direct Email<br>_x_ CM/ECF Notification |

Dated: October 18, 2013

/s/ Albert H. Kirby
Albert H. Kirby, WSBA #40187

PLAINTIFF'S REPLY TO RESPONSE TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
(Case No. 2:12−cv−00576−RSL)
Page 14

**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
(206) 414-9950