UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TORREY GRAGG, on his own behalf and on behalf of similarly situated persons,

Plaintiff,

v.

ORANGE CAB COMPANY, INC., a Washington corporation; and RIDECHARGE, INC., a Delaware corporation d/b/a TAXI MAGIC,

Defendants.

Case No. C12-0576RSL

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on "Defendants' Motion for Summary Judgment" (Dkt. #69) pursuant to Fed. R. Civ. P 56. Plaintiff, who represents himself and similarly situated persons, received a text message from defendants which he alleges violates the Telephone Consumer Protection Act (TCPA), 47 U.S.C § 227, and the Washington Commercial Electronic Mail Act (CEMA).[1] RCW § 19.190.010-110. Defendants assert that summary judgment is appropriate as they did not utilize an "automatic telephone dialing system" (ATDS) when

---

[1] In spite of defendants' assertion that plaintiff's TCPA claim is his "sole surviving cause of action," Motion (Dkt. #69) at 5, this Court previously found that "plaintiff sufficiently pled a violation of CEMA." Gragg v. Orange Cab Co., 942 F.Supp.2d 1111, 1117 (W.D. Wash. 2013). As defendants' motion for summary judgment does not address plaintiff's CEMA claim, this order only concerns plaintiff's TCPA cause of action.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

sending the text message—one of the required elements of a TCPA claim. See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012).

The Court has reviewed the parties' submissions. For the reasons discussed below, the Court GRANTS defendants' motion for partial summary judgment on plaintiff's TCPA claim.

## II. Discussion

### A. Background

Defendant Orange Cab Company, Inc. (Orange Cab) utilizes TaxiMagic, a Ridecharge, Inc. product, as a means of remaining competitive in a technologically advancing industry. Motion (Dkt. #69) at 7. TaxiMagic is a computer program that links together Orange Cab's dispatch terminals, the cab drivers' Mobile Data Terminals, and an SMS modem in order to send text message dispatch notifications to Orange Cab customers. DePasquale Declaration (Dkt. #71) at 2. Following dispatch, TaxiMagic transmits a text message notification to the customer which states the cab number and time the dispatcher's request was accepted by the driver. Motion (Dkt. #69) at 7. The notification may also include the driver's name, the distance from the cab dispatch location to the customer, and an invitation to download the TaxiMagic smartphone "app."[2] Id.

Orange Cab uses the TaxiMagic program on a computer system that generates a text message incorporating customer-specific data and then transmits a notification to the provided or procured telephone number. Id. at 11. The Orange Cab dispatcher who answers the phone obtains the customer's name and telephone number, along with the requested pickup and drop-off locations. Id. at 10. The customer's number may also be captured using Caller ID. Heyrich Declaration (Dkt. #84) Ex. E 134:10-13. The dispatcher then manually inputs this information into the dispatch terminal. Motion (Dkt. #69) at 10. When the dispatcher presses "enter," the

---

[2]Ridecharge, Inc. offers a smartphone "app" as part of a family of products to assist customers in requesting taxis. Gist Declaration (Dkt. #70) Ex. A 6:22-23.

1  information is relayed both to the TaxiMagic program and the driver closest to the customer's
2  requested pickup location. Id. By pressing "accept" on his or her Mobile Data Terminal, the
3  driver communicates his or her acceptance to TaxiMagic. Id. at 11. The program then composes
4  the notification and transmits the message to the customer's telephone number. Id. The system is
5  capable of generating and sending dispatch notifications only in response to a driver's
6  acceptance of an individual customer's request. Id.

7  Plaintiff called Orange Cab and requested a taxi at 5:17 PM on February 25, 2012. Gist
8  Declaration (Dkt. # 70) Ex. I. Plaintiff did not provide his telephone number which was instead
9  captured using Caller ID. Response (Dkt. #83) at 4. The dispatcher created plaintiff's cab request
10 by manually inputting his information, and then pressed "enter" to transmit the data to
11 TaxiMagic and the nearest available driver. Gist Declaration (Dkt. #70) Ex. H. A driver
12 transmitted his acceptance of plaintiff's request by pressing "accept" on his Mobile Data
13 Terminal at 5:20 PM. Id. Ex. J. TaxiMagic then sent plaintiff the offending message which read
14 "Taxi #850 dispatched @ 05:20. Smart phone? Book our cabs with Taxi Magic - #1 FREE taxi
15 booking app http://cabs.io/29e1b7d."[3] Id. at 12.

16 **B. Summary Judgment**

17 Summary judgment is appropriate if, viewing the evidence in the light most favorable to
18 the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact
19 and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see L.A.
20 Printex Indus., Inc. v. Aeropostale, Inc. 676 F.3d 841, 846 (9th Cir. 2012). The moving party

---

22 [3]Plaintiff received the text dispatch notification at 9:04 PM on February 26, 2012, more than
23 twenty-four hours after he had requested a taxi from Orange Cab. Second Amended Complaint (Dkt. #44) at 4. However, defendants' records show that the text dispatch notification was transmitted when
24 the driver hit "accept" at 5:20 PM on February 25, 2012. Gist Declaration (Dkt. #70) Ex. J. Although the parties have been unable to discover why plaintiff did not receive the message until the following day,
25 the evidence shows that the message was sent at 5:20 PM on February 25, 2012 and was delayed for an unknown reason. Plaintiff's contention that the text message was sent, rather than received, late the
26 following night is unsupported conjecture. See Response (Dkt. #83) at 5.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT    -3-

"bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Fed. R. Civ. P. 56 by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325. "An issue is 'genuine' only is there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

**C. The Telephone Consumer Protection Act**

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number;[4] (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer, 707 F.3d at 1043. Equipment is an ATDS if it either has "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers," 47 U.S.C. § 227(a)(1), or is a predictive dialer with the capacity to dial telephone numbers from a list without human intervention. In the Matter of Rules & Regulations Implementing the TCPA of 1991, 23 F.C.C.R. 559, 566 ¶14 (Jan. 4, 2008) ("2008 FCC Ruling").

**1. Defendants' System Lacked "the Capacity to Store or Produce Telephone Numbers to be Called, Using a Random or Sequential Number Generator"**

"When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" Satterfield, 569 F.3d at 951. As such, "a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." Id.

---

[4] A text message is a "call" under the TCPA. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009).

Plaintiff urges the Court to rule that the modem utilized by defendants to operate the TaxiMagic program is the "system" as envisioned by Satterfield. Response (Dkt. #83) at 9. Under this interpretation, as the modem has the ability to both store multiple telephone numbers in an address book and transmit a mass text message to those numbers, it would be an ATDS under the TCPA. Id.; see Heyrich Declaration (Dkt. #84) Ex. 72 at TM005308, TM005344.

The Court declines to adopt an interpretation of "system" that would lead to an absurd result. See Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 584 (1982) (noting that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available"). Adopting plaintiff's broad interpretation that any technology with the **potential** capacity to store or produce and call telephone numbers using a random number generator constitutes an ATDS would capture many of contemporary society's most common technological devices within the statutory definition. See Hunt v. 21st Mortg. Corp., No. 2:12-CV-2697-WMA, 2013 WL 5230061, at *4 (N.D. Ala. Sept. 17, 2013) (noting that, as, "in today's world, the possibilities of modification and alteration are virtually limitless," this reasoning would subject all iPhone owners to 47 U.S.C. § 227 as software potentially could be developed to allow their device to automatically transmit messages to groups of stored telephone numbers). The Court will therefore determine the TaxiMagic program's status under the TCPA based on the system's **present**, not **potential**, capacity to store, produce, or call randomly or sequentially generated telephone numbers.

In order for defendants' system to constitute as ATDS, it must have the capacity to "store, produce, or call randomly or sequentially generated telephone numbers." Satterfield, 569 F.3d at 951. While plaintiff has gone to great lengths to demonstrate the technological limits of defendants' system, he has failed to provide the Court with any evidence that either TaxiMagic or the modem has the capacity to **randomly or sequentially generate** telephone numbers to be

stored, produced, or called.[5] "'Random number generation' means random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111-1111, (111) 111-1112, and so on." Griffith v. Consumer Portfolio Serv., Inc., 838 F.Supp.2d 723, 725 (N.D. Ill. 2011). TaxiMagic is programmed to send dispatch notifications in response to an individual customer's request for a cab. Motion (Dkt. #69) at 11. The telephone numbers utilized by the system are those provided directly by customers or captured using Caller ID and inputted by the dispatcher. Id. at 10; Heyrich Declaration (Dkt. #84) Ex. E p. 134: 10-13. Plaintiff has submitted no evidence that the TaxiMagic program can autonomously randomly or sequentially generate numbers to be dialed as required to fulfill the statutory definition of an ATDS. Additionally, the Court can find no evidence in the modem's manual, Heyrich Declaration (Dkt. #84) Ex. 72, that the device can be programmed to generate telephone numbers in this fashion. The Court therefore finds that defendants' TaxiMagic program does not constitute an ATDS.

**2. Defendant's System is not a Predictive Dialer**

Acknowledging that the teleservices industry had evolved, the FCC ruled that predictive dialers are subject to the TCPA's restriction on autodialers. "2008 FCC Ruling" at 566 ¶14. The "basic function of such equipment ... [is] the capacity to dial [lists of] numbers without human intervention." Id.; see also Soppet v. Enhanced Recovery Co., 679 F.3d 637, 638-39 (7th Cir. 2012) ("The machine, called a predictive dialer, works autonomously").

TaxiMagic does not function in the manner prohibited by the FCC. In order for a text dispatch notification to be sent to a customer, the customer must have first provided some amount of information to the dispatcher, the dispatcher must have pressed "enter" to transmit that information to both the TaxiMagic program and the nearest available driver, and the driver

---

[5] Alternatively, the TaxiMagic program could be an ATDS if plaintiff can demonstrate that it operates as a predictive dialer. As noted above, a predictive dialer must have the capacity to dial telephone numbers from a list without human intervention. "2008 FCC Ruling," at 566 ¶14. This contention will be addressed in the following section.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT      -6-

1  must have pressed "accept" on his or her Mobile Data Terminal. Motion (Dkt. #69) at 10-11.
2  Following the Ninth Circuit's "'common sense' approach to TCPA claims," Friedman v.
3  Massage Envy Franchising, LLC, No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, at *4 (S.D.
4  Cal. June 13, 2013) (quoting Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 918 (9th Cir.
5  2012)), the level of human agency involved in transmitting the text dispatch notifications is
6  sufficient to qualify as "human intervention." The system is able to dial and transmit the dispatch
7  notification only after the driver has physically pressed "accept": human intervention is
8  essential. See Motion (Dkt. #69) at 11. The Court therefore finds that the TaxiMagic program is
9  not a predictive dialer.

## III. Conclusion

The Court finds that plaintiff has not raised a genuine issue of material fact regarding their assertion that the TaxiMagic program is an ATDS. The evidence demonstrates that defendants' integrated system is not an ATDS but is in fact a limited setup which relies on human intervention to transmit dispatch notifications to customers.

For all the foregoing reasons, the Court GRANTS defendants' motion for partial summary judgment on plaintiff's TCPA claim.

Dated this 7th day of February, 2014.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge