THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TORREY GRAGG, on his own behalf and on behalf of other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ORANGE CAB COMPANY, INC., a Washington corporation; and RIDECHARGE, INC., a Delaware Corporation, doing business as TAXI MAGIC,<br><br>Defendants. | Case No. 2:12−cv−00576−RSL<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>NOTE ON MOTION CALENDAR:<br>FEBRUARY 21, 2014<br><br>ORAL ARGUMENT REQUESTED |

## I. INTRODUCTION

Plaintiff Torrey Gragg requests reconsideration pursuant to W.D. Wash. Local Rule 7(h). Plaintiff respectfully asks the Court to reconsider its Order Granting Defendants' Motion for Partial Summary Judgment (Dkt. # 113) (hereinafter "Order") for two reasons.

First, the Court relied upon the legal reasoning set forth in *Hunt v. 21st Mortg. Corp.*, No 2:12-CV-2697-WMA, 2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) to interpret "automatic telephone dialing system" ("ATDS"). *See* Order at 5:9-17. On February 4, 2014, the court in *Hunt* clarified its prior ruling and denied a motion for summary judgment nearly identical to the Motion for Partial Summary Judgment submitted by defendants in this case. *Hunt v. 21st*

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 1

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

*Mortgage Corp.*, 2:12-CV-2697-WMA, 2014 WL 426275 (N.D. Ala. Feb. 4, 2014). The Court held that it is an issue of fact and for the jury to decide whether "if, at the time the calls at issue were made, the system had the capacity, without substantial modification, to store or produce numbers using a random or sequential number generator." *Id.* at *5. Other recent court opinions agree with this analysis. Moreover, the *Hunt* court noted that there are credibility issues for the jury where, as here, the moving party's computer systems are described in a self-serving declaration from a company employee. *Id.*

Second, Plaintiff respectfully requests that the Court permit discovery regarding the computer systems and transmission equipment used by defendants to send their text message advertisements. This case is in the class certification stage and the deadline for merits discovery has not expired. Plaintiff respectfully requests opportunity to inspect and further scrutinize defendants' computer systems and transmission equipment, before the Court weighs the absence of any material facts on this issue. This is particularly appropriate where, as here, the Court has adopted a new standard on which to determine the presence of an ATDS.

## II. ARGUMENT

**A. New Legal Authority Demonstrates that a System's "Present Capacity" and Its Potential Capabilities "Without Substantial Modification" Are Issues of Fact**

The Court's Order states the following when interpreting "ATDS under the TCPA:

> Adopting plaintiff's broad interpretation that any technology with the potential capacity to store or produce and call telephone numbers using a random number generator constitutes an ATDS would capture many of contemporary society's most common technological devices within the statutory definition. See Hunt v. 21st Mortg. Corp., No. 2:12-CV-2697-WMA, 2013 WL 5230061, at *4 (N.D. Ala. Sept. 17, 2013) (noting that, as, "in today's world, the possibilities of modification and alteration are virtually limitless," this reasoning would subject all iPhone owners to 47 U.S.C. § 227 as software potentially could be developed to allow their device to automatically transmit messages to groups of stored telephone numbers). The Court will therefore determine the TaxiMagic program's status under the TCPA based on the system's present, not potential,

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 2

HEYRICH KALISH MCGUIGAN PLLC
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

capacity to store, produce, or call randomly or sequentially generated telephone numbers.

Order at 5:9:19.

After briefing was closed on Defendants' Motion for Partial Summary Judgment, the *Hunt* court clarified and applied its prior ruling to a motion for summary judgment. The Court stated:

> In its Opinion and Order of September 17, 2013 (Doc. 31), this court joined the Ninth Circuit and a slew of district courts in holding that the liability question under the statute is whether telephone equipment used to place a call **could possibly be used** to store or produce numbers to be called using a random or sequential number generator, **not** whether the equipment was **actually** used in such a way to place the call or calls at issue. *See id*. at 6–10 (citing, *e.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir.2009)). However, the court pointed out that this definition logically must have some outer limit. Virtually every telephone in existence, given a team of sophisticated engineers working doggedly to modify it, could possibly store or produce numbers using a random or sequential number generator. Furthermore, given the vast proliferation in recent years of smartphones with computer operating systems, many personal, non-commercial telephones could in all likelihood achieve automatic dialing capability by simply downloading an "app." The TCPA surely does not mean to define **every** telephone as an automatic dialing system, and does not subject every call made to a cell phone to liability by the caller. With this in mind, the court held that a telephone system is only covered by the statute if, **at the time the calls at issue were made**, the system had the capacity, **without substantial modification**, to store or produce numbers using a random or sequential number generator. *See id.* at 9–10. But what constitutes "substantial modification"? Is this a fact question or a legal question?

*Hunt v. 21st Mortgage Corp.*, 2:12-CV-2697-WMA, 2014 WL 426275 (N.D. Ala. Feb. 4, 2014).

The Court then concluded that the issue presented a question of fact, explaining as follows:

> The court . . . concludes that the proper application of the statute can only be made by deciding questions of credibility and making reasonable deductions from the totality of circumstances. The dispositive question, then, is whether defendant's employees are to be believed when they say that the Nortel system, while up and running at the time defendant made calls to plaintiff's cell phone, did not contain and could not be modified to contain automatic dialing software, or whether there will emerge legitimate doubt about defendant's defense after its witnesses are tested by cross-examination and by the surrounding circumstantial evidence . . . .
>
> The making of credibility determinations is, of course, the exclusive domain of

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 3

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

the jury, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."), and for that reason both parties' summary judgment motions will be denied as to the TCPA claim.

*Id.* at *6.

Another recent case, also decided after briefing was closed on defendants' motion, concluded that the present capacity of dialing equipment and its ability to be programmed without substantial modification presented issues of fact. In *Sherman v. YahooZ Inc.*, --- F.Supp.2d ----, 13-CV-0041-GPC-WVG, 2014 WL 369384, *7 (S.D. Cal. Feb. 3, 2014), the court stated as follows:

> Plaintiff points to the testimony of Yahoo's representative who testified that it could, if it wanted to, dial all of the telephone numbers in its database with a notification text message by writing new software code instructing the system to do so, thereby demonstrating the capacity to dial telephone numbers sequentially from a list of telephone numbers. (Choudhary Depo. at 61:9–62:17; 63:6–22.14.) As stated by the Ninth Circuit, the focus of the inquiry in evaluating whether a technology is considered an ATDS is whether the equipment has the capacity to store and dial phone numbers. *See Satterfield,* 569 F.3d at 951. The parties dispute whether Yahoo!'s "PC to SMS Service" technology explained above has the requisite capacity to ***both*** store numbers and dial random or sequential numbers. The Court concludes there is a genuine issue of material fact as to whether the equipment Yahoo! utilizes for the PC to SMS Service constitutes an ATDS within the meaning of the statute. As such, the Court DENIES Defendant's motion for summary judgment.

*Id.* at *7.

In the present case, defendants' have submitted only self-serving declarations from company employees to describe their computerized machinery and transmission equipment, the capacity of that equipment, and the abilities that could be obtained "without substantial modification." This alone raises material credibility issues, *see Hunt*, 2014 WL 369384 *5-6, but the record also contains ample other evidence of defendants' ATDS.

For example, the record demonstrates the proven capacity of Ridecharge's modem equipment to store lists of numerous telephone numbers and then programmatically to transmit text messages to any or all of the stored telephone numbers using manual ***or automated*** triggers. *E.g.*, *see* Dkt. No. 84, Ex. 72 at TM5308 ("What is SMS? Short Messages through SMS (Short

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 4

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

Message Service) can be sent to [m]obile numbers[,] [a]ny person(s) from the address book[,] [and] [a]ny group(s) of persons created from the address book or individual entries."); *c.f. id.*, Ex. 72 at TM5319 (Users of the modem can "[s]et up broadcast triggers (codes or words) that will send broadcast messages[…] [and] [c]ompose and save pre-configured messages."); *also see id.*, Ex. 72 at TM5275-5277, TM5285, TM5293-5294, TM5310, TM5315-5320, TM5325, TM5344-5349; *and see* Dkt. No. 84, Ex. 58 at TM2080 (Ridecharge discussing transfer of telephone numbers to a MultiTech modem).

Furthermore, Ridecharge's modem system actually automated the transmission of millions of dispatch notification text messages like the one sent to Mr. Gragg. *See* Dkt. No. 86-2, pp. 70:6-11, 102:12:15; Dkt. No. 61, Ex. 3 at OC84 ("Dispatch Notification Allow Fleets to Automatically Notify Riders"), Ex. 4 at OC439 ("we're powering millions of Dispatch Notifications for our fleets"), Ex. 6 at OC438 ("this feature is an automated system"), Ex. 43 at TM5126 (modems "send about 100k messages/month" for just one taxi fleet); Dkt. No. 84, Ex. 64 ("[W]e've realized that 2500 messages/day is about the right number for a single modem. At more than 3000 messages/day, the modem falls behind in peak times yielding a less-than-optimal customer experience."), Ex. 72 at TM5285 (noting a "Max Outgoing Queue" of "4 MB" per modem). It is such evidence of the automated storage and dialing functionality of Ridecharge's modem system which serves as the only factually-supported explanation as to why Mr. Gragg did not receive Defendants' text message until about 28 hours after Orange Cab's taxi driver accepted his fare. *See* Dkt. No. 86-2, pp. 196:16 – 197:5 ("There could have been an issue where somewhere it was stuck in [Ridecharge's] system."); *c.f. id.*, p. 228:3-20; Dkt. No. 60 ¶ 5.

The only evidence of alleged "human intervention" were aspects of Orange Cab's pre-existing taxi dispatch program, which was separate from the system that sent RideCharge's advertisements by text message. Orange Cab's DDS servers stored information about every taxi dispatch order. *See* Dkt. No. 86-1, pp. 22:23 – 23:5. Orange Cab gave Ridecharge a connection to Orange Cab's DDS servers through which Ridecharge's software ***automatically*** obtained data about callers who order taxis. *See id.*, pp. 22:9 – 23:18, 58:6-11, 85:4 – 87:12, 144:14-23; *cf.*

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 5

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

Dkt. No. 84, Exs. 76, 80-81; *also see* Dkt. No. 86-2, pp. 204:11 – 206:19. The expressed purpose of this connection was to help "automate" dispatch notifications to Orange Cab's customers. *See* Dkt. No. 86-1, pp. 44:8 – 45:5; Dkt. No. 61, Ex. 12. However, despite this connectivity, Orange Cab's witness testimony and other evidence in the record confirm how Ridecharge's automated dispatch notification system was distinct and separate from Orange Cab's DDS dispatch system. *See* Dkt. No. 86-1, pp. 88:20 – 89:9; *also see* Dkt. No. 61, Ex. 29, p. OC147. Thus, Orange Cab testified that it did not send any dispatch notification text messages to its customers. *See* Dkt. No. 86-1, pp. 94:24 – 95:3. Accordingly, no human at Orange Cab was involved in the actual transmission of text messages to Orange Cab's customers. *See id*., pp. 145:21 – 146:8; *also see* Dkt. No. 61, Ex. 29, p. OC147.

Finally, the expert opinions of Randall Snyder confirms how the evidence in the record shows the existence of an ATDS to send a text message to Mr. Gragg and persons like him. *See*, *e.g.*, Dkt. No. 80 ¶¶ 2-3, 11-17. The Ninth Circuit cited to Mr. Snyder's expert opinions when it reversed a district court's ruling on whether a defendant used an ATDS to send text messages. *See id.* ¶ 42; *c.f. Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). Moreover, the facts of *Satterfield* are similar to those in the present case. As explained by the trial court:

> The process for sending the promotional text was as follows: MIA provided Defendant ipsh! with electronic plain text or Excel files containing the list of 100,000 mobile numbers of Nextones subscribers; the list came in a series of emails, broken up by the age of the intended recipients. The emails were forwarded to a programmer who then imported the list into a database, which was set up specifically for the Stephen King campaign and which was located on Defendant ipsh!'s server. Defendant ipsh!'s employees entered the relevant information for the promotional messages, including the text of the messages and the time they were to be sent, and packed the messages in "XML" format; the XML messages were stored on Defendant ipsh!'s server until they were programmed to be sent to the intended recipients.

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 6

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

*Satterfield v. Simon & Schuster*, C 06-2893 CW, 2007 WL 1839807, *2 (N.D. Cal. June 26, 2007) *rev'd and remanded sub nom. Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

As in the present case, the trial court granted summary judgment to defendants, stating as follows:

> The Court concludes that the plain language of the statute does not allow the Court to divorce "to store" from the "random or sequential number generator," as Plaintiff suggests. Rather, the phrase "random or sequential number generator" modifies "store," "produce" and "called." Because it is undisputed that the equipment here does not store, produce or call randomly or sequentially generated telephone numbers, the Court grants summary judgment in Defendants' favor: the equipment at issue is not an automatic telephone dialing system under the TCPA.

*Id.* *6 .

The Ninth Circuit expressly rejected this reasoning, stating as follows:

> Reviewing the record, we find that there is a genuine issue of material fact with regard to whether this equipment has the requisite capacity. Satterfield's expert, Randall A. Snyder, opined that this telephone system "stored telephone numbers to be called and subsequently dialed those numbers automatically and without human intervention ... [t]he use of stored numbers, randomly generated numbers or sequentially generated numbers used to automatically originate calls is a technical difference without a perceived distinction...." He later opined that "[t]his is the primary automated function within the platform that constructs text messages and individually enters them into a message queue for subsequent delivery to the cellular networks.... The cellular phone numbers residing in the cellular phone number database for the specific application are applied in sequence, as they are stored in the database, to serve as the destination cellular phone number for each individual text message." However, Snyder never specifically declared that this equipment had the requisite capacity. On the other hand, Jay Emmet, President of mBlox (company responsible for the actual transmission of the text messages and a nonparty in this case), testified that the system used was not capable of sending messages to telephone numbers not fed to the system by mBlox, nor was it capable of generating random or sequential telephone numbers.
>
> Therefore, this limited record demonstrates that there is a genuine issue of material fact whether this telephone system has the requisite capacity to be considered an ATDS under the TCPA. Given the conflicting testimony and this limited record, we hold that summary judgment on this issue was inappropriate.

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 7

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

> We therefore remand to the district court to determine whether the equipment
> used by Simon & Schuster had the requisite capacity.

*Satterfield*, 569 F.3d at 951.

Plaintiff submitted a Cross-Motion for Partial Summary Judgment (Dkt. #85), in which plaintiff contended that the record is sufficient to grant summary judgment to plaintiff. Plaintiff respectfully submits that the record evidence is, at the very least, sufficient to show that there are issues of material fact – as in *Hunt*, *Sherman*, and *Satterfield*.

**B.     In the Alternative, the Court Should Permit Discovery on the Capacity of Defendants' Text Message Computers and Transmission Equipment, and on the Abilities That Could Be Achieved Without Substantial Modification**

Plaintiff respectfully requests discovery on defendants' computer systems and transmission equipment prior to summary judgment. The case is at the class certification stage. Within the spirit of Rule 1 and its support for the just, speedy, and inexpensive determination of every action, plaintiff endeavored to reduce litigation costs by focusing discovery on class certification.

Plaintiff discovered evidence to show common issues and to otherwise satisfy the certification requirements of Rule 23. There was no established deadline for all discovery on the merits of plaintiff's TCPA claim. Consequently, plaintiff had not discovered all of the detailed evidence that could be material to an ultimate decision regarding the capacity of defendants' systems, and on the abilities that could be achieved without substantial modification.

Moreover, plaintiff's class certification discovery proceeded under what heretofore had been a settled definitional interpretation of ATDS under the legal standards set forth in *Satterfield*. Plaintiff presented substantial evidence on the array of modems that defendants deployed to send text messages. Plaintiff's expert provided evidence regarding the capacity of these modems and of defendants' system. This expert testimony was similar to the evidence that

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 8

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

created issues of material fact according to the Ninth Circuit in *Satterfield*. Plaintiff also submitted modem manuals described the equipment's capacity as an ATDS.

The Court's Order presents new, heretofore unwritten, limits on what an ATDS is under the TCPA. The Court's analysis of a potential ATDS requires an examination of a "system's **present**, not **potential**, capacity to store, produce, or call randomly or sequentially generated telephone numbers." *Id.* at 5:18 (emphasis in original). The Court concluded that "defendants' Taxi Magic program does not constitute an ATDS," stating as follows:

> Plaintiff has submitted no evidence that the TaxiMagic program can autonomously randomly or sequentially generate numbers to be dialed as required to fulfill the statutory definition of an ATDS. Additionally, the Court can find no evidence in the modem's manual, Heyrich Declaration (Dkt. #84) Ex. 72, that the device can be programmed to generate telephone numbers in this fashion. The Court therefore finds that defendants' TaxiMagic program does not constitute an ATDS.

*Id.* at 6:7-12. The Court did not address the separate issue, addressed in the recent cases discussed above, of whether such capacity could be created "without substantial modification."

The Court's ruling represents a significant shift in the law interpreting the TCPA. Plaintiff would have conducted more detailed discovery on defendants' systems if those limits had been known prior to the Court's Order. Plaintiff also would have conducted such discovery more rapidly if plaintiff had known that these limits would be applied in the absence of a deadline for merits discovery.

For these reasons, plaintiff respectfully submits that he should be permitted to conduct limited and targeted discovery of defendants' computer systems and transmission equipment in light of the Courts' interpretation of ATDS. With the articulation of a new standard to evaluate the relevant evidence, the issue should be decided with the benefit of a complete factual record. Plaintiff respectfully requests an opportunity to inspect and further scrutinize the present capacity

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 9

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

of defendants' system and transmission equipment, and the capacity that could be achieved without "substantial" modification,

Such discovery is appropriate before the Court determines if there is an *absence* of any issue of material fact. This is particularly true where, as here, defendants' evidence is presented through self-serving declarations from company employees.

As stated succinctly by the Ninth Circuit in connection with a similar request for discovery,

> [T]he Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see also Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1414 (D.C. Cir.1995) (describing "the usual generous approach toward granting Rule 56(f) motions"); *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 n. 4 (5th Cir.1992) (Rule 56(f)-based "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence" (internal quotation marks and citation omitted)); *Sames v. Gable,* 732 F.2d 49, 52 (3d Cir.1984) (same).

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003) (holding that summary judgment motions "can impede informed resolution of fact-specific disputes" "[e]specially where, as here, documentation or witness testimony may exist that is dispositive of a pivotal question"). It has long been the rule in the Ninth Circuit that "[s]ummary judgment is disfavored where relevant evidence remains to be discovered" and only when the requested discovery would be "fruitless" with respect to the proof of a viable claim" should such a request be denied. *See generally, Burnett v. Frayne*, C 09-04693 SBA PR, 2011 WL 5830339 (N.D. Cal. Nov. 18, 2011); *Am. Guarantee & Liab. Ins. Co. v. Westchester Surplus Lines Ins. Co*, 334 F. App'x 839, 840 (9th Cir. 2009) (holding that the district Court abused its discretion to deny a rule 56(f) request where there were still months left

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 10

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

in discovery, and the moving party identified specific outstanding discovery requests that would be relevant to the motion); *In re Hawaiian Telcom Commc'ns, Inc.,* 08-02005, 2012 WL 1110065 (Bankr. D. Haw. Apr. 2, 2012) (after entry of summary judgment, the Court granted Defendant's request for reconsideration in order to conduct discovery specific to the Court's order on summary judgment and potentially dispositive to the action).

Discovery regarding the capacity of defendants systems will ensure that this Court and the Court of Appeals have the benefit of a full record on this key component of the case. Accordingly, prior to summary judgment, plaintiff respectfully requests discovery on defendants' computer systems and transmission equipment.

### III. CONCLUSION

For the foregoing reasons, the Court should grant reconsideration and deny Defendants' Motion for Partial Summary Judgment. In the alternative the Court should allow discovery of defendants' text messaging system and transmission equipment, for examination of whether the systems constitute an ATDS.

RESPECTFULLY SUBMITTED: February 21, 2014

| | |
|---|---|
| */s/ Donald W. Heyrich* <br> Donald W. Heyrich, WSBA #23091 <br> **HEYRICH KALISH MCGUIGAN PLLC** <br> 1325 Fourth Avenue, Suite 540 <br> Seattle, WA 98101 <br> Tel: (206) 838-2504 <br> Fax: (206) 260-3055 <br> Email: dheyrich@hkm.com | Albert H. Kirby, WSBA #40187 <br> **SOUND JUSTICE LAW GROUP** <br> 93 S. Jackson St. #63230 <br> Seattle, WA 98104-2818 <br> Tel: (206) 489-3210 <br> Fax: (866) 845-6302 <br> Email: ahkirby@soundjustice.com |

Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 11

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504

## **DECLARATION OF SERVICE**

I, the undersigned, certify that, on this date, a true copy of the foregoing document will be or has been served on the persons listed below in the manner shown:

| | |
|---|---|
| Kenneth E. Payson, WSBA #26369<br>kenpayson@dwt.com<br>Ryan C. Gist, WSBA #41816<br>ryangist@dwt.com<br>DAVIS WRIGHT TREMAINE LLP<br>1201 Third Avenue, Suite 2200<br>Seattle, WA 98101-3045<br>Telephone: 206-622-3150<br>Fax: 206-757-7700 | ___ Legal Messenger<br>___ Facsimile<br>___ United States Mail, First Class<br>___ Direct Email<br>_x_ CM/ECF Notification |

Dated: February 21, 2014.

*/s/ Donald W. Heyrich*
Donald W. Heyrich, WSBA #23091

PLAINTIFF'S MOTION FOR RECONSIDERATION

(Case No. 2:12−cv−00576−RSL)
Page 12

**HEYRICH KALISH MCGUIGAN PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
(206) 838-2504