UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
TORREY GRAGG,                                     )        No. C12-0576RSL
                        Plaintiff,     )
      v.                                                       )        ORDER GRANTING IN PART
                                )        PLAINTIFF'S MOTION FOR
ORANGE CAB COMPANY, INC., *et al.*,  )        SUMMARY JUDGMENT
                      Defendant.   )
_____)

This matter comes before the Court on "Plaintiff's Motion for Summary Judgment and Summary Adjudication or, Alternatively, Certification of Legal Questions to the Washington Supreme Court." Dkt. # 151. Plaintiff alleges that he received an unsolicited text message from defendants, acting in concert, offering a free smart phone application ("app") from defendant RideCharge, Inc., that would allow plaintiff to book defendant Orange Cab Company's taxi cabs in the future. Plaintiff seeks a summary determination that the text message was a "commercial electronic text message" as that term is defined in the Commercial Electronic Mail Act ("CEMA"), that he and the other members of the class have a private right of action under CEMA, and that he is entitled to at least statutory damages of $500 per violation. Plaintiff also seeks reconsideration of the Court's order dismissing the Consumer Protection Act ("CPA") claim. Alternatively, if the Court finds that questions of Washington law preclude judgment in his favor, he requests that the questions be certified to the Washington Supreme Court for

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

answers.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

## BACKGROUND

The facts of this case are largely undisputed. Plaintiff called Orange Cab to order a taxi on February 25, 2012. A short time later, the cab arrived, and plaintiff completed his journey. On February 26, 2012, plaintiff received a text message stating:

> Taxi #850 dispatched @ 05:20.  Smart phone?  Book our cabs with Taxi Magic - #1 FREE taxi booking app http://cabs.io/29e1b7d

Dkt. # 34 at ¶ 6. The text message was intended to perform two functions: to notify the customer that the requested cab has been dispatched (a customer service function) and to promote the use of the Taxi Magic app to make future bookings (a marketing function). The customer service part of the text was in no way dependent on the inclusion of the marketing features. The download and use of the app would redound to the commercial benefit of defendants.

## DISCUSSION

**A. VIOLATION OF CEMA**

CEMA precludes "the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service . . . ." RCW 19.190.060. "Commercial," in this context, means "sent to promote real property, goods, or services for sale or lease." RCW 19.190.010(5). For all of the reasons stated in the "Order Granting in Part Motion for Judgment on the Pleadings and Granting Leave to Amend" (Dkt. # 42), the Court finds that, considering the text message "with a measure of common sense," one would understand it to be "intended to offer property, goods, or services for sale either during the [communication], or in the future." Chesbro v. Best Buy Stores, L.P., 697 F.3d 1230, 1234 (9th Cir. 2012); FCC Report and Order, 18 F.C.C.R. at 14098. Messages that serve both customer service and marketing purposes (such as calls from mortgage brokers notifying

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT              -2-

customers that interest rates had fallen) are "sent to promote real property, goods, or services for sale or lease."

> [S]uch messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement.

FCC Report and Order, 18 F.C.C.R. 14014, 14098 (July 3, 2003). "Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them." Chesbro, 697 F.3d at 1234-35.

Aderhold v. Car2go, N.A., 2014 WL 794802 (W.D. Wash. Feb. 27, 2014), does not compel a different result. In that case, plaintiff had completed an on-line registration form for membership in car2go, at which point he received an email and a text message that would enable him to complete the registration process. The text stated, "Please enter your car2go activation code 145858 into the emailed link. We look forward to welcoming you to car2go." The communication was designed to enable him to utilize a service he had just requested: no other property, goods, or services were in play and, applying a measure of common sense, it was clear that there was no marketing function. The Aderhold court wisely determined that the text could not be considered telemarketing. The same analysis applies to the customer service portion of the text message plaintiff received. Although he had not yet paid for the cab, the dispatch notification was a customer service related solely to the consumer transaction he had just initiated. It did not offer or encourage the purchase of any other goods or services. Customers have an interest in being apprised of the status of their orders or known defects in the products purchased: the Court will not impede consumer access to this type of information. FCC Report and Order, 27 F.C.C.R. 1830, 1838 at ¶ 21 (Feb. 15, 2012) ("[W]e conclude that requiring prior express written consent for all such calls would unnecessarily restrict consumer access to

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -3-

information communicated through purely informational calls. For instance, bank account balance, credit card fraud alert, package delivery, and school closing information are types of information calls that we do not want to unnecessarily impede."). If the dispatch notification were unencumbered by the marketing message for Taxi Magic, it would not have been a "commercial electronic text message" under CEMA.

Defendants argue that, even if the text message plaintiff received was a "commercial electronic text message" that violated CEMA, plaintiff has not proven that he was in Washington when he received the text message, precluding any state law claim under the dormant Commerce Clause. See Hartman v. United Bank Card, Inc., 291 F.R.D. 591, 598-600 (W.D. Wash. 2013). The argument that plaintiff's claim fails because the state law upon which he or she relies is unconstitutional is generally considered an affirmative defense that must be pled in response to the complaint. See 5 Charles A. Wright & Arthur R. Miller, Fed. Prac. and Proc. § 1271 at 586-87 (3d ed. 2004); Fed. R. Civ. P. 12(b); Kewanee Oil & Gas Co. v. Mosshamer, 58 F.2d 711, 712 (10th Cir. 1932); Volvo Trademark Holding Aktiebolaget v. AIS Const. Equip. Corp., 416 F. Supp.2d 404, 412 (W.D.N.C. 2006). Requiring that a constitutional challenge be pled in response to the complaint makes even more sense where, as here, the challenge involves the way in which the statute is applied in a specific factual context: absent a timely assertion of the defense, the opposing party would have no reason to develop facts through discovery that would support application of the statute. The Court finds that the defense is waived.[1]

---

[1] In the alternative, the Court finds that defendants, as the parties challenging the constitutionality of the state statute as applied, have the burden of establishing facts from which one could reasonably conclude that the dormant Commerce Clause precludes plaintiff's claim. See Rocky Mountain Farmers Union v. Corey, 730 F.3d 1070, 1097 (9th Cir. 2013) (the party challenging a state law bears the burden of establishing any facts regarding purpose and effect that are necessary to support a Commerce Clause challenge); Branson v. O.F. Mossberg & Sons, Inc., 221 F.3d 1064, 1064 n.4 (8th Cir. 2000) ("[S]tate statutes are presumed constitutional, and the [challenging party] has the burden to show otherwise."); Democratic Party of Hawaii v. Nago, 982 F. Supp.2d 1166, 1180-84 (D. Hawaii 2013) (party failed to produce evidence that its associational rights were burdened by the state's open primary system, resulting in dismissal of the constitutional challenge). Defendants have not provided

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -4-

The Court finds that the text message plaintiff received on February 26, 2012, violates the prohibition set forth in RCW 19.190.060(1).

**B. PRIVATE RIGHT OF ACTION UNDER CEMA**

The question then becomes, how does a recipient of an unlawful text message enforce the CEMA prohibitions? Plaintiff argues that he has a direct cause of action under both CEMA and the CPA. Defendants maintain that CEMA provides only a limited right to injunctive relief in this case and that, while a violation of CEMA gives rise to a potential claim under the CPA, the Court has already determined that plaintiff has not suffered an injury to business or property and is, therefore, unable to establish the elements of a CPA claim. In resolving this dispute, the Court applies the basic rules of statutory construction applied by the courts of Washington. The objective "is to execute the intent of the Legislature, which must be primarily determined from the language of the statute itself. When words in a statute are plain and unambiguous, this Court is required to assume the Legislature meant what it said and apply the statute as written." State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n, 140 Wn.2d 615, 630-31 (2000). The Court will not, however, apply a literal reading of a statute if it would result in "unlikely, absurd, or strained consequences . . . The first role of a court is to examine the language of a statute while adhering to the Legislature's intent and purpose in enacting it." Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wn.2d 224, 239-40 (2002). In seeking the legislature's intent, the Court considers "the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole," giving effect to all of the language wherever possible. State v. LG Elecs., Inc., 185 Wn. App. 123, 132 (2014).

The Court starts with the language and legislative purpose of CEMA to determine

---

evidence from which one could reasonably conclude that their violative conduct occurred entirely outside the State of Washington or that plaintiff received the unlawful text message while he was outside the state.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT        -5-

whether it affords a private right of action for the violation of RCW 19.190.060(1) that occurred in this case. CEMA was originally drafted to deal with unwanted commercial email messages and was later amended to address consumer concerns regarding commercial text messages and phishing activities.[2] When CEMA was first passed in 1998, it did not contain any language authorizing a civil action directly under the statute. Rather, the legislature declared that sending certain commercial electronic mail messages violated the CPA. RCW 19.190.030(1). The legislature followed that declaration with specific findings establishing the first three elements of a CPA claim (unfair or deceptive act in trade or commerce that affects the public interest) and a determination that a person who received an unlawful text message suffers "damages" of "five hundred dollars, or actual damages, whichever is greater." RCW 19.190.030(3) and RCW 19.190.040(1). While it is unclear why the legislature separated its discussion of the last two elements of a CPA claim (damages and causation) from the first three, both the text of the original statute and its legislative history show that the legislature equated sending an unlawful email with a violation of the CPA. RCW 19.190.030(1); Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (Apr. 6, 1998) ("[A] violation of the Consumer Protection Act occurs when a sender" sends an unlawful email message). The recipient was authorized to pursue the remedies afforded by the CPA, namely to "bring a civil action against the sender for the greater of $500 or actual damages" and to "recover the costs of bringing the action, including attorney's fees. The court may also treble a plaintiff's damages award up to a maximum of $10,000." Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (Apr. 6, 1998).[3] Thus, in the absence of any language creating a private right of action under CEMA and in light of the statutory and legislative declarations that

---

[2] "Phishing," for purposes of CEMA, is an attempt to acquire personally identifying information by using an internet-based communication method while masquerading as another person or entity.

[3] CEMA was amended in 1999. The legislative history related to that amendment states, "It is a violation of the Consumer Protection Act to send a commercial electronic message" that violates CEMA. Wash. Final Bill Rep., 1999 Reg. Sess. H.B. 1037 (June 24, 1999).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT        -6-

a violation of CEMA is a violation of the CPA, the original enactment cannot reasonably be construed as giving rise to a cause of action under CEMA.

When the commercial text message provisions were enacted in 2003, they followed a similar, but not identical pattern. As was the case in 1998, the legislature did not make any provision for a direct cause of action under CEMA, choosing instead to address each of the five elements of a CPA claim in exactly the same manner that it had in 1998. Unlike the 1998 provisions, however, the 2003 enactment did not include an explicit declaration that sending an electronic commercial text message constitutes a violation of the CPA: the language contained in RCW 19.190.030(1) is missing from the text message provisions of the statute. The import of this omission is unclear, however. In summarizing the new legislation, the Final Bill Report states that violation of the text message provisions is a violation of the CPA.

> A recipient of a commercial electronic text message . . . may bring a civil action against a sender who violates the laws related to commercial electronic text messages. In the case of a suit brought by the recipient, the penalty is the greater of $500 or actual damages incurred. . . . A violation of laws relating to commercial e-mail messages is *also* a violation of the Consumer Protection Act and may be enforced by the Attorney General. A violation of the Consumer Protection Act may result in a civil fine, treble damages, court costs, and attorney's fees.

Wash. Final Bill Rep., 2003 Reg. Sess. H.B. 2007 (June 27, 2003) (emphasis added).

One could argue that, as of 2003, the legislature believed that the recipient of an unlawful email or text message had a cause of action against the sender under both CEMA and the CPA: the use of the word "also" in the above-quoted legislative history may indicate that the CPA claim is one of two avenues of relief available to the recipient. In the alternative, it may simply indicate that forms of recovery other than the liquidated damages specified in RCW 19.190.040(1) are available because the violation is a violation of the CPA. As discussed above, the original enactment provided only a CPA claim. The Court declines to retroactively read a new cause of action into the statute based on nothing more than an ambiguous word in the "Background" section of a subsequent amendment.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -7-

In 2005, the legislature added a prohibition against phishing. For the first time, the legislature included an explicit right of action under CEMA, but the scope of the available relief is limited: "A person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations, and to seek up to five hundred dollars per violation, or actual damages, whichever is greater. A person who seeks damages under this subsection may only bring an action against a person or entity that directly violates RCW 19.190.080 [the phishing prohibition]." RCW 19.190.090(1). The legislature again made findings regarding the first three elements of a CPA claim. RCW 19.190.100. The legislative history declares that "[a] violation of these provisions is defined as an unfair or deceptive act for purposes of applying the Consumer Protection Act." Wash. Final Bill Rep., 2005 Reg. Sess. H.B. 1888 (2005).

Applying the normal rules of statutory construction, the Court finds that plaintiff may bring a claim for injunctive relief under CEMA, but he may not recover damages under that statute. The 2005 amendments created the only direct cause of action under the statute, and the damage remedy is expressly limited to phishing violations. The legislature obviously knew how to create a private right of action under CEMA and chose to limit that action to injunctive relief when the wrongful conduct involved commercial emails and texts. The Court is not free to second guess or modify the legislature's choices in this matter.

**C. PRIVATE RIGHT OF ACTION UNDER CPA**

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." RCW 19.86.020. The citizen suit provision entitles "[a]ny person who is injured in his or her business or property" by a violation of the act to bring a civil suit for injunctive relief, damages, attorney's fees, and treble damages. RCW 19.86.090. The state Supreme Court has held that, in order to bring a successful claim under the CPA, a private plaintiff "must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." Hangman Ridge Training

Stables, Inc. v. Safeco Title Insur. Co., 105 Wn.2d 778, 780 (1986). The Court has already found that plaintiff failed to allege a cognizable injury to business or property (Dkt. # 54 at 11-13) and sees no reason to reconsider that issue. The Court also found that CEMA's liquidated damages provision, RCW 19.190.040(1), does not establish the CPA's fourth and fifth elements as a matter of law, relying in part on an assumption that plaintiff had a private right of action under CEMA through which he could pursue liquidated damages in the amount of $500 per violation. Defendants subsequently showed that there is no private right of action for damages under CEMA. The Court will therefore reconsider the issue of whether RCW 19.190.040(1) establishes the necessary "injury to plaintiff in his . . . business or property."

Where the legislature has specified the exact relationship between an independent statute and the CPA, the courts will defer to that determination. Hangman Ridge, 105 Wn.2d at 787. With regards to commercial electronic text messages, the legislature found that they "are matters vitally affecting the public interest for the purpose of applying the [CPA]. A violation of this section is not reasonable in relation to the development and preservation of business and is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the [CPA]." RCW 19.190.060(2). The legislature also determined that "[d]amages to the recipient of a . . . commercial electronic text message sent in violation of this chapter are five hundred dollars, or actual damages, whichever is greater." RCW 19.190.040(1). Defendants do not dispute that the CEMA violation at issue here establishes the first three elements of a CPA claim. The parties do not agree, however, on whether the liquidated damages provision establishes the elements of injury and causation or whether the recipient must first prove a cognizable injury before he or she can recover the amount specified in the statute.

There is no clear answer in the language of the statute. Whereas the legislature clearly stated that the sending of an email message prohibited by CEMA is a violation of the Consumer Protection Act (RCW 19.190.030(1)), there is no comparable statement regarding text messages. However, there is also no indication that the legislature intended to regulate the two forms of

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT        -9-

communication differently: the legislature used identical language to declare an unfair or deceptive act in trade or commerce that affects the public interest and inserted "or a commercial electronic text message" into the liquidated damages provision that previously applied only to "commercial electronic mail messages." The legislative history states that the recipient of both commercial email messages and commercial text messages "may bring a civil action against the sender for the greater of $500 or actual damages." Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (Apr. 6, 1998); Wash. Final Bill Rep., 2003 Reg. Sess. H.B. 2007 (June 27, 2003). Having now determined that there is no private right of action under CEMA, the only way to give effect to the legislature's stated intent is to construe the liquidated damages provision as establishing the injury and causation elements of a CPA claim.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 151) is GRANTED in part and DENIED in part. The text message plaintiff received on February 26, 2012, violates the prohibition set forth in RCW 19.190.060(1) insofar as it promotes the use of Ridecharge's Taxi Magic app. The dispatch notification elements of the text message do not violate CEMA, however, and defendant is entitled to judgment on that part of plaintiff's claim. The violation of RCW 19.190.060(1) can be enforced through an action for injunctive relief under RCW 19.190.090(1) and through an action under the CPA. Plaintiff's alternative request for certification to the Washington Supreme Court is DENIED.

The named plaintiff in this action, having established a violation of RCW 19.190.060(1) and the elements of a CPA claim, is entitled to recover the damages set forth in CEMA (RCW 19.190.040(1)) and to seek the other remedies available under the CPA.

Dated this 9th day of November, 2015.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge