THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TORREY GRAGG, on his own behalf and on behalf of other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ORANGE CAB COMPANY, INC., a Washington corporation; and RIDECHARGE, INC., a Delaware Corporation, doing business as TAXI MAGIC,<br><br>Defendants. | Case No. 2:12−cv−00576−RSL<br><br>PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br><u>NOTE ON MOTION CALENDAR</u>:<br>January 31, 2017 |

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

# **Table of Contents**

I. INTRODUCTION .................................................................................................................. 1

II. PROCEDURAL AND FACTUAL BACKGROUND ........................................................ 1

   A.   Plaintiffs' Allegations and Defendants' Response ......................................................... 1

   B.   The Settlement was the Result of Four Years of Vigorous Litigation, Extensive Motion Practice, Significant Court Rulings, and Arms-Length Negotiations ............................ 3

      1.   The Parties Engaged in Vigorous Motion Practice Over the Pleadings ..................... 3

      2.   The Parties Engaged in Extensive and Hard Fought Discovery Practice ................... 3

      3.   The Class Was Certified On February 27, 2104 After Extensive Briefing ................. 4

      4.   Each Cause of Action was Contested Vigorously by Multiple Motions for Summary Judgment ................................................................................................................... 5

      5.   The Parties Reached a Settlement After a Full Day of Mediation, and Months of Follow up Negotiations .............................................................................................. 6

   C.   The Terms of the Settlement Agreement ..................................................................... 7

      1.   Class Definition ......................................................................................................... 7

      2.   Settlement Benefits to Class Members ...................................................................... 7

      3.   Claim Form ................................................................................................................ 8

      4.   Class Representative and Class Counsel; Attorneys' Fees and Incentive Award ....... 8

      5.   Defendants Financial Condition and Timing of Payments ......................................... 9

      6.   Notice ........................................................................................................................ 9

      7.   Opt-Out Rights ........................................................................................................ 10

      8.   Deadlines Contemplated By Settlement Agreement ............................................... 10

III. AUTHORITY AND ARGUMENT ................................................................................. 11

   A.   The Proposed Settlement Should be Preliminarily Approved .................................... 11

      1.   The Proposed Settlement is Fair Because it was the Product of Arm's Length Non-Collusive Negotiations ............................................................................................ 12

      2.   The Proposed Settlement is Reasonable and Adequate ........................................... 14

      3.   The Class Notice is Adequate .................................................................................. 17

   B.   Provisional Certification of the Settlement Class Is Appropriate. ............................. 17

      1.   The Rule 23(a) Factors Are Satisfied. ..................................................................... 18

      2.   Commonality. .......................................................................................................... 18

      3.   Typicality. ............................................................................................................... 18

      4.   Adequacy. ................................................................................................................ 18

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

ii

5.    The Rule 23(b)(3) Criteria Are Met. ........................................................ 19

C.    Scheduling a Final Approval Hearing Is Appropriate. .................................................. 19

IV. CONCLUSION ................................................................................................ 20

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

iii

## I. INTRODUCTION

Plaintiff Torrey Gragg, individually and on behalf of a proposed Settlement Class, (hereinafter "Plaintiffs"), hereby moves the Court for an order granting this Unopposed Motion for Preliminary Approval of Class Action Settlement.  This motion is not opposed by Defendants RideCharge, Inc. ("RideCharge") and Defendant Orange Cab Company, Inc, ("Orange Cab") (collectively "Defendants"). A full and executed copy of the parties' Settlement Agreement and Release of Claims is submitted herewith as Exhibit 1 to the Declaration of Donald W. Heyrich in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (*"Heyrich Decl"*).

Plaintiffs make this Motion for Preliminary Approval on the grounds that the settlement is fair, adequate, and reasonable and otherwise satisfies the requirements for preliminary approval. Plaintiffs base this motion upon the accompanying Declaration of Donald W. Heyrich, the Settlement Agreement and exhibits, all pleadings and records on file herein, and such other documentary evidence or arguments as may be presented to the Court on the motion.

The parties respectfully request that the Court approve the form, content, and method of delivering notice to the Class as set out in the Settlement Agreement; and schedule a final approval hearing in accordance with the deadlines proposed in the Settlement Agreement.  A proposed Order, in the form approved by the Parties, is included as Exhibit A to the Settlement Agreement and is submitted herewith for the Court's consideration.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A.  Plaintiffs' Allegations and Defendants' Response

Plaintiff, Torrey Gragg, brought this class action initially on March 5, 2012, in the Washington State courts, in King County Superior Court. *See* Dkt. No. 1. After the case was removed to this Court, Plaintiffs filed their Second Amended Complaint on February 7, 2013. *See* Dkt. No. 44. Plaintiffs' complaint alleges violations of the Telephone Consumer Protection

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 1
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

Act, 47 U.S.C. § 227, ("TCPA"), the Washington Consumer Electronic Mail Act, RCW 19.190 *et. seq.* ("CEMA"), and the Washington Consumer Protection Act ("WCPA"), RCW 19.86.10, *et seq.  See id.*  Plaintiffs allege that Defendants caused transmissions of unlawful commercial text messages and commercial solicitations to Mr. Gragg and other class members without their express consent.  *See id.* ¶¶ 9-32. Plaintiffs further contend that the text messages were sent with the use of automatic telephonic dialing system ("ATDS") in express violation of the TCPA. *Id.* ¶¶ 45-50.  Moreover, Plaintiffs allege that under RCW 19.190.060 any text messages sent without consent to a consumer for a commercial purpose constituted a *per se* violation of the WCPA with additional compulsory statutory damages.  *Id.* ¶¶ 51-60.

From the beginning of the litigation, Defendants have contested almost every aspect of Plaintiffs' claims.  Defendants collectively challenged whether Plaintiff could establish the use of an ATDS under the TCPA; whether the act of giving a telephone number when ordering a taxi cab conferred sufficient consent under the TCPA and Washington statutes; whether the text messages in question qualified as a commercial message under Washington law; whether Washington's Commercial Electronic Mail Act (CEMA) conferred a private cause of action for Plaintiff to pursue damages; and whether damages were available under the WCPA for the acts alleged in the Amended Complaint.  *See e.g.,* Dkt. No. 29 *Defendants' Motion for Judgment on the Pleadings;* Dkt. No. 45, *Defendants' Motion to Dismiss Plaintiffs Second Amended Complaint;* Dkt. Nos. No. 57, 56, *Defendants' Answers to Plaintiff's Second Amended Complaint;*  Dkt. No. 69, *Defendants' Motion for Summary Judgment;* and Dkt. No. 163, *Defendants Motion for Reconsideration.*

Prior to entering a proposed settlement, both parties had requested appellate review by both the Ninth Circuit and the Washington State Supreme Court regarding issued related to the TCPA claim and whether damages are permitted under RCW 19.190.060 *et seq.  See* Dkt. Nos. 165, 186.  Absent settlement, the litigation path ahead was guaranteed to be long, costly, and with significant risk to all parties.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 2
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

**B.  The Settlement was the Result of Four Years of Vigorous Litigation, Extensive Motion Practice, Significant Court Rulings, and Arms-Length Negotiations**

  1.    The Parties Engaged in Vigorous Motion Practice Over the Pleadings

On April 5, 2012, Defendants removed the case to the United States District Court for the Western District of Washington under the Class Action Fairness Act.  Dkt. No. 1.  The parties proceeded to engage in extensive motion practice over the pleadings.  This included the filing of three separate complaints and two motions to dismiss.  *See* Dkt. Nos. 24, 29, 33, 38, 39, 42, 44, 45, 46, 48, 51, and 54.  Due to sharply contested motion practice, it was over a year from when the case was removed until Defendants lodged their answer to Plaintiff's Second Amended Complaint.  *See* Dkt. No. 58. Defendants continued at that point to contest all of Plaintiffs' causes of action, Plaintiffs' ability to certify the case, and plaintiffs' or right to proceed legally in any way.  It was clear that each step of this litigation was going to be contested.

  2.    The Parties Engaged in Extensive and Hard Fought Discovery Practice

The adversarial nature of these proceedings did not rest solely with the pleading practice and also carried over to discovery.  Shortly after the filing of the initial complaint the parties began vigorous discovery practice.  This included motion practice in the Northern District of California to compel records against a third party, Twilio; Defendants' Motion for a Protective Order (Dkt. No. 31); Plaintiffs Opposition (Dkt. No. 33); Plaintiffs' Motion to Compel (Dkt. No. 90); Defendants' Opposition (Dkt. No. 95); Plaintiffs' Second Motion to Compel (Dkt. No. 169); and Defendants' Cross Motion for a Protective Order (Dkt. No.  172); as well as extensive exhibits, declarations, reply briefs, and surreplies.

The Court issued multiple orders on discovery including an order requiring extensive electronic discovery.  *See e.g.,* Dkt. Nos. 40, and 118.  Following these rulings, thousands of documents were exchanged.  *Heyrich Decl.* ¶ 8.  In addition, Defendants produced electronic data in native form which required Plaintiffs to hire SQL data experts to run, cross-reference, and analyze data consisting of millions of separate records.  *Id.* This effort and the review of other

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 3
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

documents produced by defendants took months of continuous work and required Plaintiffs' counsel to hire additional staff.  The result was a searching, extensive, and costly discovery process that was necessary to build a class list to ultimately gain certification by this Court and establish a plan for notice to the certified class.  *Id.*  In addition, the parties took multiple depositions including of Mr. Gragg, a 30(b)(6) deposition of RideCharge's former CEO, Thomas DePasquale, a 30(b)(6) deposition of Orange Cab Manager, Tadesse Woldearegaye, and Twilio representative Ameer Badri in San Francisco, California.  *Id.*

Finally, three separate sets of Requests for Production, Interrogatories, and two sets of Requests for Admissions were served, contested, and exchanged. *Id.* The nearly two hundred docket entries reflect how aggressively this case has been litigated for over four years.

3.     The Class Was Certified On February 27, 2104 After Extensive Briefing

On June 14, 2013, Mr. Gragg filed his motion for the Court to certify a class of Washington consumers.  *See* Dkt. No. 59.  Like all other aspects of this case the parties again vigorously contested the motion, filing opposition papers (Dkt. Nos. 73, 247), reply briefs (Dkt. Nos. 78), supplemental briefing, (Dkt. Nos. 82), and supplemental authorities (Dkt. Nos. 104, 105, 108, 110, 111, 112).  On February 27, 2014, the Court issued an order certifying a class as follows:

> All persons in the State of Washington who received a "Dispatch Notification" containing a commercial text message from RideCharge on their cellular telephones after contacting Orange Cab through a means other than a RideCharge product

Dkt. No. 119.  Defendants soon filed an extensive motion to reconsider on February 28, 2014, which was denied by the Court. (Dkt. Nos. 122, 123, 127, 130).  Defendants then requested an interlocutory appeal on the issue of certification, which was denied by the Ninth Circuit Court of Appeals on July 8, 2014, ending a year-long contest over certification. Dkt. No.134.  Defendants have indicated that absent this settlement they would appeal the issue of certification.  After extensive negotiations by the parties and work on the class list, Class Notice was issued on November 14, 2014. Dkt. No. 149.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 4
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

4.    Each Cause of Action was Contested Vigorously by Multiple Motions for Summary Judgment

Like the pleadings, discovery, and certification, the parties engaged in substantial motion practice around both Plaintiffs' TCPA claim as well as the WCPA/CEMA claim.  On July 18, 2013, Defendants filed their Motion for Summary Judgment against Plaintiffs' TCPA claim. Dkt. No. 69.  Plaintiffs not only filed an opposition but also submitted a Cross-Motion for Summary Judgment on September 9, 2013.  Dkt. Nos. 83, 85.  The parties again briefed the motion with reply briefs and supplemental briefing.  Dkt. Nos. 92, 98, 100.  The Court then ruled on February 28, 2014 that Plaintiffs' TCPA claim was dismissed as a matter of law because Plaintiffs could not establish that the system used to send the dispatch notifications at issue qualified as an automatic telephone dialing system (ATDS) under the statute, stating as follows:

> The Court will . . . determine the TaxiMagic program's status under the TCPA based on the system's present, not potential, capacity to store, produce, or call randomly or sequentially generated telephone numbers.

*Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014).  Plaintiffs timely moved for reconsideration which was denied.  Dkt. Nos. 116, 120.

Plaintiffs immediately requested an appeal to the Ninth Circuit and the Court certified the issue on April 15, 2014 recognizing the "substantial ground for difference of opinion" on the issue and its substantive impact on the law. *Id.*  The FCC took up a substantially similar issue shortly thereafter.  Counsel for Plaintiffs submitted comments to the FCC because the outcome of the ruling could have a direct impact and benefit for the class.  *Heyrich Decl.* ¶ 9. On July 10, 2015 the FCC issued a ruling holding that "Congress intended a broad definition of autodialer, and that the [FCC]has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so." Dkt. No. 168.  Plaintiffs requested the Court to reconsider its

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 5
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

previous ruling in light of the change/clarification of law.  *Id.*  This motion was pending when the parties reached this agreement, as well as Defendants filed opposition.  Dkt. No. 183. Absent this settlement the Court would ultimately rule on the matter once again, changing the risk for the parties going forward.

Finally, Mr. Gragg filed his own Motion for Summary Judgment on March 12, 2015, under CEMA or alternatively under WCPA, which do not require an ATDS to establish liability.  Dkt. No. 151.  Defendants responded with a robust opposition.  Dkt. No. 155.  On November 9, 2015, the Court granted in part Plaintiffs' motion finding a cause of action for damages under the WCPA.  Dkt. No. 162.  Defendants timely moved for reconsideration, which was ultimately denied.  Dkts. Nos. 163, 164. Defendants then requested an appeal on December 23, 2015.  On April 22, 2016, the Court certified the issue to the Washington State Supreme Court.  Dkt. No. 186.  Thus, like the ATDS issue related to the TCPA, there continued to be risk for both parties at the time that the proposed settlement was reached.

> 5.   The Parties Reached a Settlement After a Full Day of Mediation, and Months of Follow up Negotiations

Settlement negotiations in this matter were as hard fought as the litigation.  With a certified class and risk on several significant legal issues pending, the parties agreed to mediate this matter on June 9, 2016.  Dkt. No. 192.  The parties engaged the Honorable Edward A. Infante (Ret.), an experienced mediator and former Chief Magistrate Judge of the United States District Court for the Northern District of California, who has developed a national reputation as an expert on TCPA cases. *Heyrich Decl.* ¶ 10.  Due to the significance of the case, as well as the difficulty in finding a resolution, the parties agreed to the expense and time necessary to conduct a full day mediation out-of-state.  The parties exchanged detailed mediation statements and exchanged hundreds of pages of documents, outlining their arguments in light of the discovery record.  *Id.*  Even after a full day of mediation, the case did not resolve.  The parties

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 6
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

continued settlement discussions with the aid of Judge Infante, and for the next four months the parties worked on putting together this settlement agreement that would balance the Defendants' financial condition against the risks and potential financial exposures. *Id.* A settlement in principle was reached in early September of this year with this fully-signed settlement agreement occurring on January 19, 2017. The Parties now present those terms for the Court's preliminary approval.

**C. The Terms of the Settlement Agreement**

    1. <u>Class Definition</u>

For the purposes of settlement the parties submit a class definition that encompasses both the CEMA/WCPA and TCPA claims to not only ensure full and complete relief for the class, but a settlement of all disputed claims for Defendants. Therefore, the class receiving the benefits and scope of this settlement is proposed as follows:

> All persons or entities who received at least one Orange Cab dispatch notification text message on their cellular telephone from RideCharge.

The Class is believed to include up to 69,194 individuals, of which Plaintiff's data experts have identified mailing addresses for 53,808. *Heyrich Decl.* ¶ 11.

    2. <u>Settlement Benefits to Class Members</u>

Under the terms of the Settlement Agreement, members of the Class who are among the 53,808 that have identified addresses will automatically receive a Taxi Voucher worth $12, which may be redeemed towards a taxi ride by Orange Cab. This will be considered "claims-paid" and is issued with the notice automatically to all identified class members. Of the remaining class members for whom there is not an identified address in Defendants' records, they will be able to claim a Taxi Voucher with the submission of a valid claims form in response to the published notice procedures described herein. In other words, all 69,194 class members have a potential to avail themselves of the $12 voucher, and 53,808 class members will receive the voucher directly with the mailed class notice. These vouchers are fully transferable and are good for 90 days after receipt. The collective value of these vouchers to the Class is approximately $830,328.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 7
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

Additionally, any Class member who submits a valid and timely claim will receive a $48 payment from Defendants, and the aggregate value of these cash payments is $3,321,312.

Defendants have also agreed to pay all claims administration costs (estimated at about $60,000), Plaintiffs' attorney fees and costs ($1,121,392), and a service award (totaling $7,500) to the Class Representative for bringing this action on behalf of the class. Altogether, the Defendants have agreed to the creation of a $5,340,532 common fund, of which $4,151,640 will comprise of Class members taxi vouchers and cash payments.

3.   <u>Claim Form</u>

To receive the $48 settlement payment, Class members will be required to submit a short claim form certifying that they are members of the Class, and had received the text message from Orange Cab and/or RideCharge without their consent. These Claim Forms will be cross-checked against attempted text transmission records in this case. Claim Forms will be considered timely if they are submitted electronically or postmarked within 60 days from the date the claims administrator effectuated the mailing.  No action will be needed to receive the Taxi Voucher certificates.

4.   <u>Class Representative and Class Counsel; Attorneys' Fees and Incentive Award</u>

The Settlement Agreement provides that for purposes of settlement, Defendants will not oppose an application submitted by Plaintiff or Settlement Class Counsel for attorney's fees and costs of $1,121,392, which is about 21% of the settlement fund, and for an individual incentive award for Mr. Gragg of up to $7,500.  However, as described below, due to the Defendants' financial condition, the cash portion of the settlement relief to eligible Settlement Class Member claimants, as well as fees, costs, and the incentive award, will be paid out of amounts that Defendant RideCharge is entitled to receive as part of the consideration for its sale of certain assets (the "Earn-Out").  *Heyrich Decl., Exh.* 1.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 8
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

5.     <u>Defendants Financial Condition and Timing of Payments.</u>

The taxi industry, with the rise of Uber, Lyft, and other ridesharing applications, has struggled financially in recent years.  A cornerstone of this resolution, and focus during negotiations, was Defendants' offering of proof that both Orange Cab and RideCharge simply do not have the ability to satisfy the range of potential judgments that both the TCPA and CEMA claims present. *Heyrich Decl.* ¶ 12.  Plaintiffs have worked with Defendants to understand these financial factors and are satisfied that the only viable means of securing any relief from the class is to secure payments from the Earn-Out.  *Id.; see also Exh. 1.*  Therefore, although the Taxi Vouchers will be paid with the mailing of class notice, both the cash payments to eligible Class Member claimants under this settlement, and Plaintiff's costs, attorney fees, and incentive award will be funded from a portion of RideCharge's Earn-Out.

6.     <u>Notice</u>

Written notice of the proposed settlement will be provided to the Settlement Class by first-class mail, sent no later than 30 days from the Court's entry of an order granting preliminary approval of the settlement. The Class Notice will inform Class Members about the basis of the claims, identify who is included in the class, identify who is eligible to receive a payment and the potential for recovery, describe how Class Members may exclude themselves from the settlement, notify Class Members of their right to object to the Settlement, and include the contact information for the Settlement Administrator and the settlement website address, which will contain additional information including a long-form notice and claim form.  In addition, Class Notice will be published twice in the *Seattle Times* with similar information as the mailed notice.  Class Members will have 60 days from the date of the issuance of notice to submit their claim.  The proposed Class Notice has been attached to the motion as Exhibits B (mailed), C (publication), and D (website) to the Settlement Agreement.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 9
(Case No. 2:12−cv−00576−RSL)

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

7.     <u>Opt-Out Rights</u>

Members of the Class will be able to opt-out of the class by sending a written request for exclusion to the Claims Administrator by first-class mail. So-called "class" or "mass" opt-outs will not be permitted. All individual opt-out notices must be postmarked within 60 days after notice of the settlement has been issued. Also within this 60-day period, any Class Member who objects to the Settlement Agreement must file with the Court and serve upon the Parties a written notice along with supporting papers setting forth the objector's grounds for objection.

8.     <u>Deadlines Contemplated By Settlement Agreement</u>

The following table sets out the deadlines:

| EVENT | SCHEDULED DATE |
|---|---|
| Deadline for mailing Notice | 30 days after entry of Preliminary Approval Order (the "Notice Period") |
| Fee and Cost and Service Award Application Due | 14 days after the issuance of class notice |
| Parties file their briefs in support of Final Approval | No later than 21 days after the deadline to opt out or object to the Settlement |
| Deadline to Submit Claims, Opt-out, or Object | 60 Days after mailing of notice |
| Parties file responses to objections, if any | No later than 21 days after the deadline for objections to the Settlement |
| Final Approval Hearing | To allow sufficient time to accomplish Class Notice, allow the Objection/Opt-Out deadline to close, and to respond to objections (if any), the Final Approval Hearing should be set at least 120 days after entry of the Preliminary Approval Order |
| Payment of Incentive Award | Upon the Effective Date as defined in the Parties Agreement |
| Payment of Fees and Costs | Upon the Effective Date as defined in the Parties Agreement |

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 10
(Case No. 2:12-cv-00576-RSL)

| Payment to Settlement Class Members | Reasonably prompt after the later of the Effective Date or closure of the claims period. |

Under this proposed schedule, Class members will have at least 60 days to decide whether to opt-out or file objections to the terms of the Settlement Agreement, and at least 46 days to decide whether or not to object to Class Counsel's Fee and Cost Application and the Service Award.

### III. AUTHORITY AND ARGUMENT

**A.     The Proposed Settlement Should be Preliminarily Approved**

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of second public policy.  Settlement agreements conserve judicial time and limit expensive litigation.").  It is within the broad discretion of the trial court to approve a class action settlement.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The approval of a class action settlement takes place in two stages: preliminary approval and final approval.  *West v. Circle K Stores, Inc*., No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing."  *See In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)).  During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing."  *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).  The Court's review is limited to the extent necessary to reach a reasoned judgment that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.   If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1057 (9th Cir. 2008)*; Alaniz v. California Processing, Inc*., 73 F.R.D. 269, 273 (C.D. Cal. 1976).   As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

> 1.      The Proposed Settlement is Fair Because it was the Product of Arm's Length Non-Collusive Negotiations

The requirement that the proposed Settlement be conducted by arm's-length, and non-collusive negotiations protects the proposed Class Members.   Generally, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval."   Newberg § 11.41; *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("considerable weight" given to settlement reached after hard-fought negotiations).

The proposed Settlement in this case is presumptively fair because it was reached through years of arms-length, contentious negotiations and there is nothing to suggest that there was any collusion between the parties.   In fact, it was reached following a full day of mediation and multiple follow up telephone conferences with the Honorable Judge Infante, who was fully informed of the complex procedural and legal issues in the case, and has been recognized as one of the top mediators in his field.

The fact that an experienced mediator was involved in the settlement strongly evidences the non-collusiveness of the settlement. *See Thieriot v. Celtic Ins. Co*., No. C-10-04462-LB, 2011 WL 1522385, *5 (N.D. Cal. Apr. 21,2011) ("[T]he settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of an experienced mediator at JAMS . . . In sum, the court finds that viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" such  that approval of the settlement is warranted."); *see also Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 12
(Case No. 2:12−cv−00576−RSL)

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1    3225466 (N.D. Cal. Oct. 30, 2007); *see also In re Austrian and German Holocaust Litig*., 80 F.

2    Supp. 2d 165, 173-74 (S.D.N.Y. 2000).

3            Moreover, the settlement was based upon extensive discovery conducted in this matter

4    which spanned over four years of hard-fought litigation.  This included multiple motions to

5    compel, thousands of documents exchanged, and Court intervention necessary at multiple stages

6    of the case.  Moreover, after two separate filed Complaints, contentious motions to amend,

7    motions to dismiss, extensive class certification briefing, two rounds of motions for summary

8    judgment, numerous supplemental briefs, and hundreds of pages of mediation briefing—the

9    negotiations were well-tempered by a fully-developed factual and legal record.  Arm's-length

10   negotiations conducted by competent, informed counsel are prima-facie evidence of a

11   settlement that is fair and reasonable. *See Hughes v. Microsoft Corp*., No. C98-1646C, C93-

12   0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness

13   is said to attach to a class settlement reached in arms-length negotiations between experienced

14   capable counsel after meaningful discovery."); *see also Pelletz v. Weyerhaeuser Co.*, 255

15   F.R.D. 537, 542–43 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-

16   length negotiations"); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227

17   F.R.D. 553, 567 (W.D. Wash. 2004) (approving settlement "entered into in good faith,

18   following arms-length and non-collusive negotiations").  Accordingly, the Settlement

19   Agreement is entitled to a strong presumption of fairness.

20           The Fifth Circuit aptly stated that a "just result is often no more than an arbitrary point

21   between competing notions of reasonableness." *In re Chicken Antitrust Litig. Am. Poultry*, 669

22   F.2d 228, 238 (5th Cir. 1982).  Yet, here the result was far from arbitrary, as the parties reached

23   this settlement through arm's-length bargaining, a full day of mediation, this assistance of Judge

24   Infante, over a dozen calls between counsel and four months of follow up work, sufficient

25   investigation and discovery, extensive litigation, motions to dismiss, motions for summary

26   judgment, motions on discovery, class certification, and appeals.

27

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 13
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

2.      The Proposed Settlement is Reasonable and Adequate

In making a determination of whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel." *Hanlon*, 150 F.3d at 1026.

Here the settlement affords the certain value of a taxi voucher without submission of a claim, and cash payments of $48 in excess of the harm caused by the receipt of a text message by admittedly a class that by and large conducted business with Defendants.

Given that Plaintiff would still have to go through an appellate process, and more importantly litigate against two entities without insurance coverage that have represented a complete inability to satisfy a judgment, the Settlement is reasonable and fair. The Settlement ensures timely relief and recovery for Plaintiffs claims.  It therefore satisfies the reasonable and adequacy standards.

a.      **Assessment of the Risks**

In agreeing to a cash award of $48 for each eligible Class Member claimant, as well as a guaranteed benefit of a $12 Taxi Voucher to any Class member who receives notice, Plaintiffs, and their counsel, have considered the risks inherit to litigation and the defenses available to Defendants.  The reality is if Defendants were successful in appeals, Plaintiff and the Class could be left with no recovery after another two years of costly litigation.  Moreover, seeking judgment against RideCharge and Orange Cab could well be fruitless in light of their assets and liabilities.  Therefore the combination of recovery issues and legal issues reasonably drove the settlement before the Court.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 14
(Case No. 2:12−cv−00576−RSL)

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

### b.     The Amount Offered in Settlement and Experience and Views of Counsel

Taking in account the legal issues presented in this case, the compensation provided in this resolution strikes a reasonable balance between the statutory damages authorized by the TCPA and CEMA.  Moreover, providing the taxi voucher to everyone who receives notice insures a guaranteed benefit, balanced against the necessity of requesting confirmation by class members to receive the $48 cash payment to ensure that only those who attest to having received the text messages at issue will receive the monetary relief.  This point of negotiation was probably the hardest fought, with the mediator and the parties reaching a compromise to balance both points of view.

The Parties have also agreed that Mr. Gragg may request an incentive award of up to $7,500. Plaintiffs believe Mr. Gragg may seek an incentive award for bringing and litigating this case on behalf of the class as such an award promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits, as well as reflects the time, cost, and effort a class representative often must personally undertake in order to bring relief to the class. Incentive awards are often approved in class settlements. *See Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 2008 WL 1901988, at *7 (W.D. Wash. Apr. 24, 2008); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2003); *see also* Manual for Complex Litig. (Fourth) § 21.62 n.336 (2004) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery") (citation omitted).

Defendants do not oppose the incentive award to Plaintiffs as provided in the Settlement Agreement.

Moreover, the attorney fees requested at about 21% of the total common fund fall below the 25% standard for Ninth Circuit class settlements.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *See also Bellows v. NCO Financial Systems, Inc.*, 2009 U.S. Dist. LEXIS 273, at *4-*5 (S.D. Cal. Jan 5, 2009) (awarding fees and costs equal to 31.6%

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 15
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

of TCPA settlement); *Satterfield v. Simon & Schuster, Inc.* et al., No. 06-2893 (N.D. Cal. Aug. 6, 2010) (collected in Ex. F to Selbin Decl.) (fees and costs of 25% of TCPA fund).  Of course, here the fee award is at risk due to the timing of payment and issues associated with Defendants Earn-Out, which is also should be a factor in the reasonableness of what is being requested.

For the sake of clarity the amount of the incentive award and fee request is what Counsel intends to seek through the settlement agreement, but is being presented at this juncture only to fully apprise the Court of the full terms of the settlement.  Thus, the Court does not need to make a determination as to the reasonableness of the proposed requests at this time.  Instead, in accordance with the Ninth Circuit's ruling in *In Re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2009), Plaintiffs' counsel will move the Court, 14 days after Class Notice is sent, for approval of their fee request and Plaintiff's incentive award. In so doing, Plaintiffs' counsel will present fulsome arguments in support of their fee petition and request for incentive awards and, in line with Ninth Circuit precedent when demonstrating the reasonableness of the requested fees, will conduct both a percentage of the benefit analysis and a lodestar cross-check.

Finally, the experienced views of all counsel involved further support preliminary approval.  As reflected in the Declaration filed by Donald W. Heyrich, counsel for Plaintiff has substantial experience prosecuting class actions—and in particular as lead counsel in multiple TCPA cases.  Plaintiff believes he would ultimately prevail, but litigating the case would be time-consuming, expensive, and, like most all class actions, risky.  As the docket already reflects, the case is complex, and given the issues involved the case could be litigated for years.

Class counsel engaged in extensive litigation in this case, including moving for class certification, opposing motions to dismiss, motions for summary judgment, fighting for discovery at every stage, and now preparing for appeals to potentially both the Ninth Circuit and the Washington State Supreme Court.  Based on their experience, Plaintiffs' counsel evaluated these various issues, including the strengths and weaknesses of the case, the consequences of not settling and the advice of Judge Infante and concluded that the Settlement is in the best interest of Class Members.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 16
(Case No. 2:12−cv−00576−RSL)

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

3.     The Class Notice is Adequate

Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure provides that, [t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Further, the court should direct "the best notice practicable under the circumstances, including direct notice to all class members who can be identified through reasonable effort."  *See* Fed. R. Civ. P. 23(c)(2).  A notice of settlement is "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The proposed Notice to the Class Members fully satisfies these requirements.  A detailed notice and claim form will be mailed by first class mail to all Class Members at their last known address based on Defendants' records.  The Supreme Court has held on several occasions that when addresses may be identified the best notice "practicable under the circumstances" is mailed notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732 (1974).  Moreover, for small minority of class members whose addresses were not identified, notice will be posted in the Seattle Times.  And notice will be posted on the Internet for all class members.

The content of the Notice complies with Rule 23.  The Notice informs Class Members of: 1) the basis of the claims; 2) who is included in the class; 3) who is eligible for payment and the potential for settlement recovery; 3) how Class Members may exclude themselves from the settlement; 4) their right to object to the Settlement; and 5) the contact information for the Claims Administrator. The Notice adequately describes the terms of the settlement in sufficient detail to alert any person with an adverse view point so that they may object and be heard.

**B.  Provisional Certification of the Settlement Class Is Appropriate.**

For settlement purposes only, Plaintiffs request that the Court provisionally certify the proposed Class because all of the applicable certification requirements are satisfied.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 17
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1.      **The Rule 23(a) Factors Are Satisfied.**

a.      **Numerosity.**

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  Here, the settlement Class consists of up to 69,194 persons. The large number of persons in the settlement Class renders joinder impracticable.  *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010).

2.      **Commonality.**

The commonality requirement of Rule 23(a)(2) is satisfied because, as the Court earlier found, there are questions of law and fact common to the settlement Class regarding whether Defendants' alleged practice of sending text messages to Orange Cab customers without consent violates the TCPA and CPA.  *See Gragg v. Orange Cab, Co.*, 2014 WL 794266, at *2 (W.D. Wash. Feb. 27, 2014) (finding "there are common questions of both law and fact in this matter").

3.      **Typicality.**

The typicality element requires that the claims or defenses of the proposed class representative be typical of the claims or defenses of the class he seeks to represent. Typicality has been interpreted to mean that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  As the Court found, these requirements are met here.  *Gragg*, 2014 WL 794266, at *2.

4.      **Adequacy.**

In determining whether the named plaintiff will fairly and adequately protect the interests of the class, the district court "must consider two questions: (1) do the named plaintiffs

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 18
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (internal quotation marks omitted). The Court has found that Plaintiff and his counsel will adequately represent the interest of the class here. *Gragg*, 2014 WL 974266, at *3.

### 5.      The Rule 23(b)(3) Criteria Are Met.

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance inquiry measures the relative weight of the common questions. *Amchem*, 521 U.S. at 624. Common issues predominate here because the central liability question in this case — whether Defendants sent commercial text messages using an automatic telephone dialing system without consent — can be established through generalized evidence. *See Gragg*, 2014 WL 974266, at *4.

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Additionally, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). Certification for purposes of settlement is appropriate.

## C.  Scheduling a Final Approval Hearing Is Appropriate.

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 19
(Case No. 2:12−cv−00576−RSL)

Proponents of the settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval.  The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).  To allow sufficient time to accomplish Class Notice, allow the Objection/Opt-Out deadline to close, and to respond to objections (if any), Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 120 days after entry of an order preliminarily approving the settlement.

### IV.   CONCLUSION

For the all of the foregoing reasons, the parties respectfully requests that the Court enter an order (a) preliminarily approving the Class Action Settlement, (b) approving the notice which shall issue to Class Members, (c) preliminarily certifying a settlement Class; and (d) schedule a final approval hearing.

RESPECTFULLY SUBMITTED:  January 31, 2017

*/s/ Donald W. Heyrich*, WSBA #23091
**HKM ATTORNEYS**
600 Steward Street, Suite 901
Seattle, WA  98101
Tel: (206) 838-2504
Fax: (206) 838-2505
Email: dheyrich@hkm.com

Albert H. Kirby, WSBA #40187
**KIRBY LAW GROUP**
93 S. Jackson St. #63230
Seattle, WA 98104-2818
Tel: (206) 414-9950
Fax: (866) 845-6302
Email: ahkirby@kirby-legal.com

Attorneys for Plaintiff

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 20
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

## <u>DECLARATION OF SERVICE</u>

I, the undersigned, certify that, on this date, I filed the foregoing document via the ECF system which will serve a copy on the counsel listed below:

Kenneth E. Payson, WSBA #26369
Jaime Drozd Allen, WSBA # 35742
James Harlan Corning, WSBA #45177
Jordan A. Clark, WSBA #49659
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Tel: (206) 622-3150
kenpayson@dwt.com
jaimeallen@dwt.com
jamescorning@dwt.com
jordanclark@dwt.com

Benjamin A. Stone
Benjamin.Stone@lewisbrisbois.com
John T. Bender
John.Bender@lewsbrisbois.com
Lewis Brisbois Bisgaard & Smith LLP
1111 3rd Ave Ste 2700
Seattle, WA 98101-3224

Dated: January 31 , 2017

/s/ Donald W. Heyrich
Donald W. Heyrich, WSBA #23091

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT - 21
(Case No. 2:12−cv−00576−RSL)

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504