1

2
THE HONORABLE ROBERT S. LASNIK

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

9

10
TORREY GRAGG, on his own behalf and
on behalf of other similarly situated persons,

Case No. 2:12−cv−00576−RSL

11
Plaintiff,

12
v.
PLAINTIFF'S MOTION FOR APPROVAL
OF SERVICE AWARD AND
ATTORNEYS' FEES AND COSTS

13
ORANGE CAB COMPANY, INC., a
14
Washington corporation; and RIDECHARGE,
INC., a Delaware Corporation, doing business
15
as TAXI MAGIC,

**NOTE ON MOTION CALENDAR**:

DATE:
16
Defendants.

17
December 7, 2017
9:00 a.m.

18
LOCATION:

19
United Stated Courthouse
20
Courtroom 15106
700 Stewart Street
21
Seattle, WA 98101

22

23

24

25

26

27

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

# Table of Contents

I.   INTRODUCTION ................................................................................................ 1

II. THE SERVICE AWARD SHOULD BE APPROVED ................................................. 1

    A.   The Class Representative Risked and Endured Much to Obtain Relief for the Class ..... 1

    B.   The Proposed Service Award Reasonably Compensates the Class Representative ........ 2

III. THE REQUEST FOR ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED ..... 4

    A.   Years of Effort Were Spent to Achieve the Results Which Now Benefit the Class ........ 4

        1.  Class Counsel Engaged in Vigorous Motion Practice Over the Pleadings ................ 4

        2.  Class Counsel Engaged in Vigorous and Hard Fought Discovery Practice .............. 5

        3.  Class Counsel Engaged in Hotly Contested Class Certification Motion Practice ...... 6

        4.  Each Cause of Action was Contested Vigorously by Multiple Motions for Summary Judgment ................................................................................................. 6

        5.  Class Counsel Engaged in Lengthy Settlement Negotiations to Resolve the Case ..... 8

    B.   Application of the Percentage-of-the-Fund Method is Warranted ................................ 8

    C.   Percentage-of-the-Fund Analysis Supports Counsel's Fee Request ........................... 10

        1.  Class Counsel Obtained an Excellent Result for the Class .................................... 12

        2.  Class Counsel Faced Substantial Risk of Non-Payment ......................................... 13

        3.  Class Counsel's Fees Are Below the Market Rate .................................................. 14

        4.  The Contingent Nature of the Representation and Opportunity Costs Support the Fee ..................................................................................................................... 14

        5.  The Fee Request Is Supported by the Shifting Attorneys' Fee Provision Under CEMA .................................................................................................................... 14

    D.   A Lodestar Cross-Check Confirms the Reasonableness of the Attorneys' Fees .......... 15

    E.   The Payment of Costs is Fair and Reasonable .......................................................... 16

IV. CONCLUSION ................................................................................................... 17

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

ii

# I. INTRODUCTION

Plaintiff Torrey Gragg, individually and on behalf of the Settlement Class preliminarily approved by the Court (hereinafter "Plaintiffs"), hereby moves the Court for an order granting this Motion for Approval of Service Award and Attorneys' Fees and Costs.

On March 1, 2017, the Court granted Plaintiff's motion for preliminary approval of a class action settlement reached between Plaintiffs and defendants.  Dkt. # 202.  The class settlement provided a common fund with a total value of approximately $5,340,532.  The settlement fund is comprised of the following components:  Taxi Vouchers worth $12 each to be sent with class notice to approximately 53,808 class members, and to otherwise available by notice to all of the approximately 69,194 class members (collective value approximately $830,328); a cash payment of $48 to any class member who submits a valid and timely claim (aggregate value approximately $3,321,312); the costs of claims administration (estimated at approximately $60,000); a service award of $7,500 to the named plaintiff; reimbursement of plaintiff's litigation costs of up to $130,000; and plaintiffs' attorneys' fees in the amount of $991,392.  *See* Dkt. 199 at ECF pp. 7-27.

The Court's March 1, 2017, Order also provided that Plaintiffs would submit this motion for approval of the service award and for fees and costs 14 days after the date notice is first sent to the class.  Dkt #202 ¶ 14(c).  Plaintiffs now respectfully request that the Court approve a service award of $7,500 to the named plaintiff, plaintiffs' attorneys' fees in the amount of $991,392, and reimbursement of plaintiffs' litigation costs in the amount of $110,553.

# II. THE SERVICE AWARD SHOULD BE APPROVED

## A.     The Class Representative Risked and Endured Much to Obtain Relief for the Class

Plaintiff, Torrey Gragg, brought this class action initially on March 5, 2012, in the Washington State courts, in King County Superior Court. *See* Dkt. No. 1.  He was the sole plaintiff attempting to seek relief on behalf of the class.  Because of the large number of class

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 1
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

members and thereby the large amount of money at stake given the statutory damages at issue, defendants attempted to convince him to abandon the class's claims.

On May 13, 2013, defendant RideCharge, Inc. offered to settle Mr. Gragg's individual claims for a payment of $30,000. *See* Declaration of Donald W. Heyrich in Support of Plaintiff's Motion for Approval of Service Award and Attorneys' Fees and Costs (hereinafter "Heyrich Decl.") ¶ 2 & Exh. A. Furthermore, at the time, RideCharge argued that it was "a factual certainty" that Mr. Gragg could be ordered to compensate RideCharge more than $100,000 to reimburse its attorneys' fees in this case. *Id.* Mr. Gragg courageously carried on despite these threats and declined RideCharge's offer. *Id.* If Mr. Gragg had not resisted such intimidation by putting the interests of the class ahead of his own, this case would have ended long before the class obtained any relief.

In addition, although Mr. Gragg's personal knowledge was limited to the commercial electronic text messages that he received in this case, defendants subjected him to an arduous and lengthy deposition. *See, e.g.,* Dkt. #70 at ECF pp. 41-45; Dkt. # 90 at ECF pp. 31-37. Mr. Gragg almost certainly would not have had such a deposition experience if he brought suit only on behalf of himself. Mr. Gragg also was subjected to invasive discovery into his private telephone records, *see* Dkt. # 70 at ECF pp. 2 (¶10), 64-65, and he spent significant time keeping tracking case developments, staying involved in case decisions, and drafting declarations and other case documents.

## B.    The Proposed Service Award Reasonably Compensates the Class Representative

Service awards are payments of money to class representatives that "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Service awards became "routine" around the turn of the century. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 2
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

UCLA L. Rev. 1303, 1311 (2006) (a survey of settled class actions between 1993 and 2002). Today, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958.

Historically, service awards approved by the Ninth Circuit and otherwise by this Court typically range between $5,000 and $40,000. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive awards of $5,000); *Pelletz v. Weyerhaeuser Co.*, 592 F.Supp.2d 1322, 1329-30 (W.D. Wash. 2009) (approving awards of $7,500); *Hughes v. Microsoft Corp.*, C98-1646C, 93-0178C, 2001 WL 34089697, *12-13 (W.D. Wash. Mar. 26, 2001) (approving incentive awards of $7,500, $25,000, and $40,000). Public policy specifically justifies higher awards when class representatives are subjected to conduct which is calculated to dissuade them from advancing class claims. *See Harris v. Vector Marketing Corp.*, C08-5198 EMC, 2012 WL 381202, *8 (N.D. Cal. Feb. 6, 2012) (approving a $12,500 incentive award just because a defendant "pursued disclosure of [plaintiff's] private information and subpoenaed her family and friends"); *also see Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (explaining the public policy against attempts to "pick off" potential class representatives in Rule 23 class action cases because such a tactic "would effectively ensure that claims that are too economically insignificant to be brought on their own would never have their day in court.").

Courts also should consider how approving service awards can encourage future class representatives to step forward to represent the interests of other classes. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). Thus, an appropriate award will encourage others to step forward to help provide justice to classes of people who cannot obtain justice individually.

Here, Mr. Gragg stepped forward to advance the interests of the class. His representation of the class proved essential to obtaining the relief provided for the class in the settlement agreement. His efforts and the risks he assumed should be rewarded. Plaintiffs respectfully request that the Court approve a service award of $7,500, which is significantly lower than the

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 3
(Case No. 2:12–cv–00576–RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

settlement offer of $30,000 which Mr. Gragg declined in order to pursue the interests of the class.

### III.  THE REQUEST FOR ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

The Court preliminarily approved the class settlement agreement on March 1, 2017. *See* Dkt. No. 202. The class settlement provides a common fund with a total value of $5,340,532. Of this sum, $991,392, or approximately 18.5%, is requested to reimburse plaintiffs' attorneys' fees.  Plaintiffs now move the Court to approve this portion of the settlement agreement which compensates Class Counsel for the time and resources that they have expended over the five years that this case has been pending.  As set forth in more detail below, the amount requested is much less than the class counsel's fees calculated on a loadstar basis.  In fact, the fees requested herein represent approximately only 58% of class counsel's loadstar.  In addition to fees in the amount of $991,392, Plaintiffs request that the Court approve the reimbursement of their actual out-of-pocket expenditures for case expenses in the amount of $110,553.

**A.    Years of Effort Were Spent to Achieve the Results Which Now Benefit the Class**

The more than 200 docket entries in the Court's file reflect how aggressively this case has been litigated for the past five years.

**1.    Class Counsel Engaged in Vigorous Motion Practice Over the Pleadings**

On April 5, 2012, Defendants removed the case to the United States District Court for the Western District of Washington under the Class Action Fairness Act.  Dkt. No. 1.  The parties proceeded to engage in extensive motion practice over the pleadings.  This included the filing of three separate complaints and two motions to dismiss. *See* Dkt. Nos. 24, 29, 33, 38, 39, 42, 44, 45, 46, 48, 51, and 54.  Due to sharply contested motion practice, it was over a year from when the case was removed until Defendants lodged their answer to Plaintiff's Second Amended Complaint.  *See* Dkt. No. 58. Defendants continued at that point to contest all of Plaintiffs' causes of action, Plaintiffs' ability to certify the case, and plaintiffs' or right to

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 4
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

proceed legally in any way.  It was clear that each step of this litigation was going to be contested.

### 2.      Class Counsel Engaged in Vigorous and Hard Fought Discovery Practice

The adversarial nature of these proceedings did not rest solely with the pleading practice and also carried over to discovery.  Shortly after the filing of the initial complaint, the parties began vigorous discovery practice.  This included motion practice in the Northern District of California to compel records against a third party, Twilio; Defendants' Motion for a Protective Order (Dkt. No. 31); Plaintiffs Opposition (Dkt. No. 33); Plaintiffs' Motion to Compel (Dkt. No. 90); Defendants' Opposition (Dkt. No. 95); Plaintiffs' Second Motion to Compel (Dkt. No. 169); and Defendants' Cross Motion for a Protective Order (Dkt. No.  172); as well as extensive exhibits, declarations, reply briefs, and sur-replies.

The Court issued multiple orders on discovery including an order requiring extensive electronic discovery.  *See e.g.,* Dkt. Nos. 40, and 118.  Following these rulings, thousands of documents were exchanged.  *See* Dkt. No. 199.  In addition, Defendants produced electronic data in native form which required Plaintiffs to hire SQL data experts to run, cross-reference, and analyze data consisting of millions of separate records.  *Id.* This effort and the review of other documents produced by defendants took months of continuous work and required Plaintiffs' counsel to hire additional staff.  The result was a searching, extensive, and costly discovery process that was necessary to build a class list to ultimately gain certification by this Court and establish a plan for notice to the certified class.  *Id.*  In addition, the parties took multiple depositions including of Mr. Gragg, a 30(b)(6) deposition of RideCharge's former CEO, Thomas DePasquale, a 30(b)(6) deposition of Orange Cab Manager, Tadesse Woldearegaye, and Twilio representative Ameer Badri in San Francisco, California.  *Id.* Finally, three separate sets of Requests for Production, Interrogatories, and two sets of Requests for Admissions were served, contested, and exchanged. *Id.*

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 5
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

### 3.    Class Counsel Engaged in Hotly Contested Class Certification Motion Practice

On June 14, 2013, Mr. Gragg filed his motion for the Court to certify a class of Washington consumers. *See* Dkt. No. 59.  Like all other aspects of this case, the parties again vigorously contested the motion, filing opposition papers (Dkt. Nos. 73, 247), reply briefs (Dkt. Nos. 78), supplemental briefing, (Dkt. Nos. 82), and supplemental authorities (Dkt. Nos. 104, 105, 108, 110, 111, 112).  On February 27, 2014, the Court issued an order certifying a class as follows:

> All persons in the State of Washington who received a "Dispatch Notification" containing a commercial text message from RideCharge on their cellular telephones after contacting Orange Cab through a means other than a RideCharge product

Dkt. No. 119.  Defendants soon filed an extensive motion to reconsider on February 28, 2014, which was denied by the Court. (Dkt. Nos. 122, 123, 127, 130).  Defendants then requested an interlocutory appeal on the issue of certification, which was denied by the Ninth Circuit Court of Appeals on July 8, 2014, ending a year-long contest over certification. Dkt. No.134.  Defendants have indicated that absent this settlement they would appeal the issue of certification.  After extensive negotiations by the parties and work on the class list, Class Notice was issued on November 14, 2014. Dkt. No. 149.

### 4.    Each Cause of Action was Contested Vigorously by Multiple Motions for Summary Judgment

Like the pleadings, discovery, and certification, the parties engaged in substantial motion practice around both Plaintiffs' TCPA claim as well as the WCPA/CEMA claim.  On July 18, 2013, Defendants filed their Motion for Summary Judgment against Plaintiffs' TCPA claim. Dkt. No. 69.  Plaintiffs not only filed an opposition but also submitted a Cross-Motion for Summary Judgment on September 9, 2013.  Dkt. Nos. 83, 85.  The parties again briefed the motion with reply briefs and supplemental briefing.  Dkt. Nos. 92, 98, 100.  The Court then ruled on February 28, 2014 that Plaintiffs' TCPA claim was dismissed as a matter of law because Plaintiffs could not establish that the system used to send the dispatch notifications at

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 6
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

issue qualified as an automatic telephone dialing system (ATDS) under the statute, stating as follows:

> The Court will . . . determine the TaxiMagic program's status under the TCPA based on the system's present, not potential, capacity to store, produce, or call randomly or sequentially generated telephone numbers.

*Gragg v. Orange Cab Co.,* 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014).  Plaintiffs timely moved for reconsideration which was denied.  Dkt. Nos. 116, 120.

Plaintiffs immediately requested an appeal to the Ninth Circuit and this Court certified the issue on April 15, 2014 recognizing the "substantial ground for difference of opinion" on the issue and its substantive impact on the law. *Id.*  The FCC took up a substantially similar issue shortly thereafter.  Counsel for Plaintiffs submitted comments to the FCC because the outcome of the ruling could have a direct impact and benefit for the class.  On July 10, 2015, the FCC issued a ruling holding that "Congress intended a broad definition of autodialer, and that the [FCC]has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so." Dkt. No. 168.  Plaintiffs requested the Court to reconsider its previous ruling in light of the change/clarification of law.  *Id.*  This motion was pending when the parties reached their settlement agreement.  Dkt. No. 183.

Finally, Mr. Gragg filed his own Motion for Summary Judgment on March 12, 2015, under CEMA or alternatively under WCPA, which do not require an ATDS to establish liability.  Dkt. No. 151.  Defendants responded with a robust opposition.  Dkt. No. 155.  On November 9, 2015, the Court granted in part Plaintiffs' motion finding a cause of action for damages under the WCPA.  Dkt. No. 162.  Defendants timely moved for reconsideration, which was ultimately denied.  Dkts. Nos. 163, 164. Defendants then requested an appeal on December 23, 2015.  On April 22, 2016, the Court certified the issue to the Washington State Supreme Court.  Dkt. No. 186.

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 7
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1    **5.      Class Counsel Engaged in Lengthy Settlement Negotiations to Resolve the Case**

2            Settlement negotiations in this matter were as hard fought as the litigation.  With a

3    certified class and risk on several significant legal issues pending, the parties agreed to mediate

4    this matter on June 9, 2016.  Dkt. No. 192.  The parties engaged the Honorable Edward A.

5    Infante (Ret.), an experienced mediator and former Chief Magistrate Judge of the United States

6    District Court for the Northern District of California, who has developed a national reputation

7    as an expert on TCPA cases. Due to the significance of the case, as well as the difficulty in

8    finding a resolution, the parties agreed to the expense and time necessary to conduct a full day

9    mediation out-of-state.  The parties exchanged detailed mediation statements and exchanged

10   hundreds of pages of documents, outlining their arguments in light of the discovery record.

11   Even after a full day of mediation, the case did not resolve.  The parties continued settlement

12   discussions with the aid of Judge Infante, and for the next four months the parties worked on

13   putting together this settlement agreement that would balance the Defendants' financial

14   condition against the risks and potential financial exposures.  A settlement in principle was

15   reached in early September of this year with this fully-signed settlement agreement occurring on

16   January 19, 2017.  The Parties present those terms for the Court's preliminary approval, which

17   was granted on March 1, 2017.

18   **B.      Application of the Percentage-of-the-Fund Method is Warranted**

19           Federal courts long have recognized that when counsel's efforts result in the creation of a

20   common fund that benefits plaintiffs and unnamed class members, counsel have an equitable

21   right to be compensated from that fund for their successful efforts in creating it. *See, e.g.,*

22   *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) (the Supreme Court "has recognized

23   consistently that a litigant or a lawyer who recovers a common fund ... is entitled to a reasonable

24   attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116

25   (1885); *Staton v. Boeing Co*., 327 F.3d 938, 967 (9th Cir. 2003; *In re Washington Public Power

26   Supply System Sec. Litig.,* 19 F.3d 1291,1300 (9th Cir. 1994) ("those who benefit in the creation

27   of a fund should share the wealth with the lawyers whose skill and effort helped create it");

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 8
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1    *Vincent v. Hughes Air West. Inc.,* 557 F.2d 759, 769 (9th Cir. 1977) ("[A] private plaintiff, or

2    his attorney, whose efforts create, discover, increase or preserve a fund to which others also

3    have a claim is entitled to recover from the fund the costs of his litigation, including attorneys'

4    fees.").

5        The common fund doctrine rests on the understanding that attorneys should normally be

6    paid by their clients. *See Boeing,* 444 U.S. at 478. Where the attorneys and unnamed class

7    member clients have no express retainer agreement, those who benefit from the fund without

8    contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common

9    fund. *See id.*; *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

10   When clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an

11   agreement in which counsel's fee is based upon a percentage of any recovery. The percentage-

12   of-the-fund approach mirrors this aspect of the market and thereby reflects the fee that would

13   have been negotiated by the class members in advance, had such negotiations been feasible,

14   given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g.,*

15   *Paul, Johnson, Alston* & *Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled

16   that the lawyer who creates a common fund is allowed an extra reward, beyond that which he

17   has arranged with his client, so that he might share the wealth of those upon whom he has

18   conferred a benefit."); *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee

19   levels in common fund cases, we have consistently directed district courts to 'do their best to

20   award counsel the market price for legal services, in light of the risk of nonpayment and the

21   normal rate of compensation in the market at the time.'"); *cf. Missouri v. Jenkins by Agyei,* 491

22   U.S. 274, 285 (1989) (market factors should be considered in evaluating reasonableness).

23       For these reasons, the percentage-of-the-fund method is overwhelmingly preferred by

24   courts. Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action*

25   *Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies, 248-281 (June 2010) (attached at

26   *Decl. Kirby*, Ex. 2). An empirical study based on eighteen years of published opinions on

27   settlements in 689 common fund class action and shareholder derivative settlements in both

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

state and federal courts found that: (1) 83 percent of cases employed the percentage-of-the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6 percent from 2003 to 2008. *Id.*, at 267-69; *accord* Fitzpatrick, Brian T., *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 Journal of Empirical Legal Studies, 24 (July 2010) (finding, in a similar empirical study of 688 settlements approved by federal district courts during 2006 and 2007, that 69 percent of courts employed the percentage-of-the-settlement method, 12 percent employed the lodestar method, and 20 percent did not report which method they used).

Here, the Settlement preliminarily approved by the Court establishes a Settlement Fund. Because Class members have not paid Class Counsel for their efforts, equity requires that a fair and reasonable fee be paid, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Boeing,* 444 U.S. at 479-81.

## C.   Percentage-of-the-Fund Analysis Supports Counsel's Fee Request

The typical range of acceptable attorneys' fees in class action cases in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% being considered the "benchmark." *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston* & *Hunt* v. *Graulty,* 886 F.2d 268,272 (9th Cir. 1989). Courts frequently award fees greater than the benchmark. *See, e.g., Vizcaino,* 290 F.3d at 1049-50; *In re Mega Fin. Corp. Sec. Litig.,* 213 F 3d 454,460 (9th Cir. 2000); *Bond* v. *Ferguson Enterprises, Inc.,* 1:09-cv-1662 OWW MJS, 2011 WL 2648879, *9-11 (E.D. Cal. June 30, 2011) ("[T]he exact percentage varies depending on the facts of the case, and in 'most common fund cases, the award exceeds that benchmark.'") (citation omitted); *see also In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").

In determining whether an upward adjustment of the 25% benchmark is warranted in a common fund class action case, courts in the Ninth Circuit look to the following factors:

(1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 10
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*Vizcaino,* 290 F.3d at 1048-52.

Courts in the Ninth Circuit frequently award a percentage of the fund that is higher than the 25% benchmark. *See In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). In fact, the fee award exceeds the 25% benchmark in *most* common fund cases. *See Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *12 (E.D. Cal. Sept. 1, 2011) (fees in common fund cases average 32% or 34.64%); *Omnivision* at 1047 ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery" (citing 4 Newberg, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)); *In re Mego*, 213 F.3d 457, 463 (9th Cir. 2000) (affirming award of 33% of common fund); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% of fund in TCPA class action)); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *18 (D. Mont. Feb. 11, 2015) (common fund fee assessment for Class Counsel is approved in the amount of 33% or $15 million, from the common fund of $45 million obtained for the Class).

Similarly, courts in other circuits routinely award one-third of the common fund in TCPA class actions. *See, e.g., Prater v. Medicredit, Inc.*, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding one-third of $6.75MM settlement fund in class counsel fees); *Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving 34% of $4.75MM settlement fund in class counsel fees); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Dkt. No. 95, 13–cv–21016 (S.D. Fla. June 24, 2015) (granting an award for fees of one-third of the $4.5MM settlement fund when the litigation proceeded for more than

two years and required rigorous discovery and motion practice).  In fact, the court in *In re Capital One Tel. Consumer Prot. Act Litig*, 2015 U.S. Dist. LEXIS 17120, *62 (N.D. Ill. Feb. 12, 2015), analyzed dozens of TCPA class settlements throughout the country and determined that a risk adjusted fee structure would provide a fee of 36% for the first $10 million.[1]

### 1.    Class Counsel Obtained an Excellent Result for the Class

In this lawsuit, the claims shared by the entire class were for statutory damages under the Telephone Consumer Protection Act ("TCPA") and the Washington Consumer Electronic Mail Act. TCPA statutory damages are generally considered to be punitive damages designed to deter wrongful conduct, not compensatory damages. *See, e.g., Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, *2 (S.D. Cal. May 29, 2012) ("the TCPA contains a punitive element to deter") (citation omitted); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1321 (S.D. Fla. 2012) ("The TCPA was intended to protect individuals from unsolicited automated telemarketing calls, and to deter callers from utilizing such calls in an unregulated fashion."), *citing Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

Here, the settlement provides every class member entitlement to a transferable taxi voucher which is good for a free taxi ride and has a $12 value. Also, every class member with a

---

[1] *See Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs.*, Inc., No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (same); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys.*, Inc., No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. v. Verizon Wireless*, No. 03-CV-161, 2007 U.S. Dist. LEXIS 97153, at *6-7 (M.D. La. 2007) (awarding in excess of 35% of the common fund plus costs).

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 12
(Case No. 2:12-cv-00576-RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

valid claim can obtain a further payment of $48 *in cash*. Thus, the settling defendants have agreed to make cash and voucher payments to the class totaling up to $4,151,640, exclusive of the attorney fees, costs, service award, and class administration fees that the settling defendants also agreed to pay. These results are consistent with the settlements in other similar cases. *See Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (granting final approval of TCPA settlement where class members would receive $40 cash or $80 merchandise certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

### 2.   Class Counsel Faced Substantial Risk of Non-Payment

Though the settlement now before the Court is substantial, there has never been any assurance of a meaningful award which could compensate either the class for their damages or Class Counsel for their attorney fees and costs.  The taxi industry, with the rise of Uber, Lyft, and other ridesharing applications, has struggled financially in recent years.  Throughout this case, there was a significant risk that Orange Cab and RideCharge would not have the ability to satisfy the range of potential judgments that both the TCPA and CEMA claims present.   In addition, since the outset of this case, defendants have vigorously disputed any legal liability for the marketing scheme at issue in this case. Accordingly, throughout this case, there existed—as there now exists—a substantial risk that neither the class nor Class Counsel would obtain any compensation even if they prevailed in the class claims.

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 13
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

### 3.      Class Counsel's Fees Are Below the Market Rate

Plaintiff's' requested attorney fees are lower than attorney fees granted in other class action settlements. On a percentage-of-the-fund basis, Class Counsel's request is for approximately 18.5 percent of the Common Fund. This percentage is lower than fees approved in other Ninth Circuit cases involving consumer protection claims, including TCPA and related state statute claims. *See*, *e.g.*, *Palmer v. Nigaglioni*, 508 F. App'x 658 (9th Cir. 2013) ("The district court did not abuse its discretion in approving an attorney's fees award in the sum of 28% of the gross common fund recovery."); *Bellows v. NCO Financial Systems, Inc.*, No. 07-CV-1413 W (AJB), 2009 WL 35468, *8 (S.D. Cal. Jan 5, 2009) (awarding fees and costs equal to 31.6% of the settlement fund); *Thieriot v. Celtic Ins. Co.*,C10-4462 LB 2011 WL 1522385, *5-7 (N.D. Cal., April 21, 2011) (awarding fees equal to 33 1/3% of the common fund); *Kanawi v. Bechtel Corp.*, C6-5566 CRB, 2011 WL 782244, *1-2 (N.D. Cal., March 1, 2011) (awarding fees of 30% of the Settlement Fund).

### 4.      The Contingent Nature of the Representation and Opportunity Costs Support the Fee

The public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing at all for their work. *In re Wash. Pub. Power,* 19 F.3d at 1299. Because Class Counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, they faced substantial risk should they proceed to trial. From the outset, prosecution of this action on behalf of the class has involved significant risk, but nonetheless Class Counsel advanced all costs of suit. In agreeing to represent the Class on a contingent basis, Class Counsel risked their own resources with no guarantee of recovery.

### 5.      The Fee Request Is Supported by the Shifting Attorneys' Fee Provision Under CEMA

Finally, it should be noted that attorneys' fees may be awarded under the fee-shifting provisions of Washington law.  Under CEMA and the Washington Consumer Protection Act, "[a]ny person who is injured in his or her business or property" by a violation of the act to bring

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 14
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

a civil suit for injunctive relief, damages, attorney's fees, and treble damages. RCW 19.86.090; *see also Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1054 (W.D. Wash. 2015) ("The named plaintiff in this action, having established a violation of RCW 19.190.060(1) and the elements of a CPA claim, is entitled to recover the damages set forth in CEMA (RCW 19.190.040(1)) and to seek the other remedies available under the CPA.").  Thus, under Washington law, a prevailing plaintiff is entitled to a loadstar attorney fee award plus a potential multiplier.  *See Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp*., 122 Wn.2d 299, 334, 858 P.2d 1054, 1073 (1993).

**D.     A Lodestar Cross-Check Confirms the Reasonableness of the Attorneys' Fees**

A basic lodestar cross-check multiplies the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon*, 150 F.3d at 1029. "The lodestar figure is a presumptively reasonable amount of attorney's fees." *S.E.C. v. Sunwest Mgmt., Inc.*, 11-35789, 2013 WL 1987373, *1 (9th Cir. May 15, 2013), *citing Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010).

Class Counsel and their affiliated attorneys expended over 2,706 hours of attorney time on this case. *See Heyrich Decl.*, ¶ 8.  These hours are reasonable if for no other reason than that Class Counsel knew that it was possible they would never be paid for this substantial amount of work. Counsel had no incentive to act in a manner that was anything but economical. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."). That said, counsel took their responsibility seriously and endeavored to represent the interests of the class members to the greatest extent possible. As reflected by the hundreds of filings with the Court, this advocacy required a substantial amount of work.

The attorney hourly rates applied for the loadstar cross-check range from $550 to $685 per hour. *See Heyrich Decl.* ¶ 9. These rates are consistent with rates applied in cases like this in the Western District of Washington. *See Heyrich Decl.* ¶ 7; *see also Pelletz v. Weyerhaeuser*

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 15
(Case No. 2:12−cv−00576−RSL)

**HKM Attorneys**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

*Co.*, 592 F. Supp. 2d 1322, 1326 (W.D. Wash. 2009) (approving hourly rates for work performed in Seattle that ranged from $415 to $760 per hour as part of 2,407.4 total hours spent over the course of litigation spanning about 1 1/2 years); *Palmer v. Spring Solutions, Inc.*, C9-1211 JLR, Dkt. No. 90 (W.D. Wash. Oct. 21, 2011) (granting motion for attorney fees as percentage of common fund where rates of Seattle attorneys ranged from $650 to $760 per hour for a case litigated about two years), *affirmed by* 508 F.App'x 658 (9th Cir. 2013); *Joseph v. TrueBlue, Inc.*, Case No. 3:14-cv-05963-BHS (applying a rate of $725 per hour to an attorney with experience to that of class counsel in this case, and applying rates overall ranging from $425 to $725).

Multiplying the reasonable hours worked by class counsel by the reasonable hourly rates establishes that the base lodestar attorney fee award in this case would be $1,709,813.[2]  Heyrich Decl. ¶ 9.  However, Class Counsel seeks approval for only $991,392 in attorneys' fees. Class Counsel are seeking an amount for attorneys' fees that *much less* than the unmodified and presumptively reasonable lodestar amount of attorney fees. *See Sunwest Mgmt., Inc.*, 2013 WL 1987373, *1 ("The lodestar figure is a presumptively reasonable amount of attorney's fees."). Thus, the lodestar cross-check substantiates the reasonableness of Plaintiffs' request.

**E.    The Payment of Costs is Fair and Reasonable**

Counsel who help to create a common fund are entitled to the litigation expenses they incurred in prosecuting the case "so that the burden is spread proportionally among those who have benefited." *Staton*, 327 F.3d at 969-70 (quoting Van Gemert, 444 U.S. at 478); *see also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement.").

---

[2] Once this raw lodestar figure is determined, the court may take into consideration additional factors to enhance the lodestar, if necessary, to arrive at a reasonable fee that is greater. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *also see Vizcaino*, 290 F.3d at 1052-54 (approving multiplier of 3.65 and citing a survey of class settlements from 1996-2001 indicating that most multipliers range from 1.0 to 4.0); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where effective multiplier was 6.85) *Hanlon*, 150 F.3d at 1029; *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). However, no adjustment is necessary because the unmodified lodestar is significantly larger than attorneys' fees requested – much lower.

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 16
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

Class Counsel seek reimbursement of their out-of-pocket litigation expenses, totaling approximately $110,553. Class Counsel incurred these out-of-pocket expenses without assurance that they would ever be repaid. These out-of-pocket expenses were necessary to secure the resolution of this litigation, and should be recouped. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).

### IV. CONCLUSION

For the all of the foregoing reasons, Plaintiffs respectfully request that the Court approve a service award of $7,500 to the named plaintiff, plaintiffs' attorneys' fees in the amount of $991,392, and reimbursement of plaintiff's litigation costs in the amount of $110,553.

RESPECTFULLY SUBMITTED:  April 14, 2017

*/s/ Donald W. Heyrich*, WSBA #23091
**HKM ATTORNEYS**
600 Steward Street, Suite 901
Seattle, WA  98101
Tel: (206) 838-2504
Fax: (206) 838-2505
Email: dheyrich@hkm.com

Albert H. Kirby, WSBA #40187
**SOUND JUSTICE LAW GROUP**
936 N. 24th Street, Suite 300
Seattle, WA 98103-8869
Tel: (206) 389-3210
Fax: (866) 845-6302
Email: ahkirby@soundjustice.com

Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS - 17
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1

## DECLARATION OF SERVICE

2        I, the undersigned, certify that, on this date, I filed the foregoing document via the ECF

3   system which will serve a copy on the counsel listed below:

4

5        Kenneth E. Payson, WSBA #26369
         Jaime Drozd Allen, WSBA # 35742
6        James Harlan Corning, WSBA #45177
         Jordan A. Clark, WSBA #49659
7        Davis Wright Tremaine LLP
         1201 Third Avenue, Suite 2200
8        Seattle, WA 98101-3045
         Tel: (206) 622-3150
9        kenpayson@dwt.com
         jaimeallen@dwt.com
10       jamescorning@dwt.com
         jordanclark@dwt.com

11       Benjamin A. Stone
12       Benjamin.Stone@lewisbrisbois.com
         John T. Bender
13       John.Bender@lewsbrisbois.com
         Lewis Brisbois Bisgaard & Smith LLP
14       1111 3rd Ave Ste 2700
         Seattle, WA 98101-3224
15

16

17       Dated: April 14, 2017

18                                                    _/s/ Donald W. Heyrich_____
                                                      Donald W. Heyrich, WSBA #23091
19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION FOR APPROVAL OF SERVICE AWARD                    **HKM ATTORNEYS**
AND ATTORNEYS' FEES AND COSTS - 18                            600 Stewart Street, Suite 901
(Case No. 2:12−cv−00576−RSL)                                   Seattle, Washington  98101
                                                                    (206) 838-2504