THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TORREY GRAGG, on his own behalf and on behalf of other similarly situated persons,

Plaintiff,

v.

ORANGE CAB COMPANY, INC., a Washington corporation; and RIDECHARGE, INC., a Delaware Corporation, doing business as TAXI MAGIC,

Defendants.

Case No. 2:12−cv−00576−RSL

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

NOTE ON MOTION CALENDAR:

October 5, 2017

9:00 a.m.

United States Courthouse
Courtroom 15106
700 Stewart Street
Seattle, WA 98101

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

## Table of Contents

I. INTRODUCTION ..... 1

II. PROCEDURAL AND FACTUAL BACKGROUND ..... 2

A. Procedural History ..... 2

1. The Parties Engaged in Vigorous Motion Practice Over the Pleadings ..... 3

2. The Parties Engaged in Extensive and Hard-Fought Discovery Practice ..... 3

3. The Class Was Certified on February 27, 2104 After Extensive Briefing ..... 4

4. Each Cause of Action was Contested Vigorously by Multiple Motions for Summary Judgment ..... 5

5. The Parties Reached a Settlement After a Full Day of Mediation and Months of Follow up Negotiations ..... 6

B. The Proposed Class Action Settlement ..... 7

C. The Parties' Compliance with the Court's Preliminary Approval Order ..... 8

III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT ..... 9

A. Reasonable Notice Was Provided to the Class ..... 10

B. The Proposed Settlement Is Fair Because It Was the Product of Arm's Length Non-Collusive Negotiations ..... 10

C. The Settlement Terms are Reasonable ..... 11

D. The Opinions of Experienced Counsel Support Settlement ..... 13

E. Class Members Have Responded Favorably to the Settlement ..... 13

F. There Are No Governmental Objections ..... 14

IV. CONCLUSION ..... 14

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

## I. INTRODUCTION

On March 1, 2017, the Court preliminarily approved the proposed class action settlement in this matter, finding that the settlement was fair, adequate, and the result of good faith and extensive arms-length negotiations; and finding that the proposed notice to the class constituted due, adequate, and sufficient notice to all class members who were entitled to receive notice. *See* Dkt. Nos. 202 & 205. Plaintiff Torrey Gragg, individually and on behalf of the class preliminarily certified, hereby moves the Court pursuant to Federal Rule of Civil Procedure Rule 23(e) for final approval of the class action settlement.

In compliance with the Court's Amended Order Granting Preliminary Approval of Class Action Settlement (Dkt. No. 205), and the parties' Settlement Agreement and Release of Claims (Dkt. No. 199 at ECF pp. 8-66), Defendants engaged a third-party settlement administrator which: (a) sent notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to 60 Attorneys General and other appropriate federal and state officials advising them of the settlement; (b) sent notice of the settlement by first-class mail, with 48,469 class members receiving a notice that was not returned; (c) published notice of the settlement on two separate days in *The Seattle Times*; and (d) posted a dedicated website (www.taxitextsettlement.com) with copies of important case documents, answers to frequently asked questions, and contact information for the administrator.

There are no objections to the settlement and no class member has requested to be excluded. No one disputes that the settlement before the Court fairly resolves this case. It is a fair and reasonable settlement. Therefore, Plaintiff respectfully requests that the Court enter the attached Proposed Settlement Order and Final Judgment, which is substantially the same as the proposed order previously submitted to the Court, as Exhibit E to the Settlement Agreement and Release of Claims. *See* Dkt. No. 199, Exh. E, ECF pp. 59-66. In a separate filing, Plaintiff has submitted a Motion for Approval of Service Award and Attorneys' Fees and Costs requesting that the Court approve a service award of $7,500 to named plaintiff Torrey Gragg, plaintiffs'

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

attorneys' fees in the amount of $991,392, and reimbursement of plaintiff's litigation costs in the amount of $110,553. *See* Dkt. No. 206.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The parties reached the proposed settlement after nearly five years of intense litigation between extremely skilled adversaries, multiple motions to dismiss, motions for certification, applications for appeal, extensive discovery and motion practice, mediation with one of the nation's leading mediators in cases like this, and months of negotiations.

### A. Procedural History

On March 5, 2012, Torrey Gragg commenced this class action in King County Superior Court. *See* Dkt. No. 1. After the case was removed to this Court, Plaintiff filed the Second Amended Complaint on February 7, 2013. *See* Dkt. No. 44. Plaintiff's complaint alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA"), the Washington Consumer Electronic Mail Act, RCW 19.190 *et. seq.* ("CEMA"), and the Washington Consumer Protection Act ("WCPA"), RCW 19.86.10, *et seq*. *See id.* Plaintiff alleged that Defendants caused transmissions of unlawful commercial text messages and commercial solicitations to Mr. Gragg and other class members without their express consent. *See id.* ¶¶ 9-32. Plaintiff further contended that the text messages were sent with the use of an automatic telephonic dialing system ("ATDS") in express violation of the TCPA. *Id.* ¶¶ 45-50. Moreover, Plaintiff alleged that under RCW 19.190.060 any text messages sent without consent to a consumer for a commercial purpose constituted a *per se* violation of the WCPA with additional compulsory statutory damages. *Id.* ¶ ¶ 51-60.

From the beginning of the litigation, Defendants contested almost every aspect of Plaintiff's claims. Defendants collectively challenged whether Plaintiff could establish the use of an ATDS under the TCPA; whether the act of giving a telephone number when ordering a taxi cab conferred sufficient consent under the TCPA and Washington statutes; whether the text messages in question qualified as a commercial message under Washington law; whether Washington's Commercial Electronic Mail Act (CEMA) conferred a private cause of action for

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

Plaintiff to pursue damages; and whether damages were available under the WCPA for the acts alleged in the Amended Complaint. *See e.g.*, Dkt. No. 29 *Defendants' Motion for Judgment on the Pleadings;* Dkt. No. 45, *Defendants' Motion to Dismiss Plaintiffs Second Amended Complaint;* Dkt. Nos. No. 57, 56, *Defendants' Answers to Plaintiff's Second Amended Complaint;* Dkt. No. 69, *Defendants' Motion for Summary Judgment;* and Dkt. No. 163, *Defendants Motion for Reconsideration.*

Prior to entering a proposed settlement, both parties had requested appellate review by both the Ninth Circuit and the Washington State Supreme Court regarding issues related to the TCPA claim and whether damages are permitted under RCW 19.190.060 *et seq.* *See* Dkt. Nos. 165, 186. Absent settlement, the litigation path ahead was guaranteed to be long, costly, and with significant risk to all parties.

1. The Parties Engaged in Vigorous Motion Practice Over the Pleadings

On April 5, 2012, Defendants removed the case to the United States District Court for the Western District of Washington under the Class Action Fairness Act. Dkt. No. 1. The parties proceeded to engage in extensive motion practice over the pleadings. This included the filing of three separate complaints and two motions to dismiss. *See* Dkt. Nos. 24, 29, 33, 38, 39, 42, 44, 45, 46, 48, 51, and 54. Due to sharply contested motion practice, it was over a year from when the case was removed until Defendants lodged their answer to Plaintiff's Second Amended Complaint. *See* Dkt. No. 58. Defendants continued at that point to contest all of Plaintiffs' causes of action, Plaintiff's ability to certify the case, and plaintiff's right to proceed legally in any way. It was clear that each step of this litigation was going to be contested.

2. The Parties Engaged in Extensive and Hard-Fought Discovery Practice

The adversarial nature of these proceedings did not rest solely with the pleading practice and also carried over to discovery. Shortly after the filing of the initial complaint, the parties began vigorous discovery practice. This included motion practice in the Northern District of California to compel records against a third party, Twilio; Defendants' Motion for a Protective Order (Dkt. No. 31); Plaintiffs Opposition (Dkt. No. 33); Plaintiffs' Motion to Compel (Dkt. No.

HKM ATTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

90); Defendants' Opposition (Dkt. No. 95); Plaintiffs' Second Motion to Compel (Dkt. No. 169); and Defendants' Cross Motion for a Protective Order (Dkt. No. 172); as well as extensive exhibits, declarations, reply briefs, and surreplies.

The Court issued multiple orders on discovery including an order requiring extensive electronic discovery. *See e.g.,* Dkt. Nos. 40, and 118. Following these rulings, thousands of documents were exchanged. Dkt. No. 199 ¶ 8. In addition, Defendants produced electronic data in native form which required Plaintiffs to hire SQL data experts to run, cross-reference, and analyze data consisting of millions of separate records. *Id.* This effort and the review of other documents produced by defendants took months of continuous work and required Plaintiffs' counsel to hire additional staff. The result was a searching, extensive, and costly discovery process that was necessary to build a class list to ultimately gain certification by this Court and establish a plan for notice to the certified class. *Id.* In addition, the parties took multiple depositions including of Mr. Gragg, a 30(b)(6) deposition of RideCharge's former CEO, Thomas DePasquale, a 30(b)(6) deposition of Orange Cab Manager, Tadesse Woldearegaye, and Twilio representative Ameer Badri in San Francisco, California. *Id.*

Finally, three separate sets of Requests for Production, Interrogatories, and two sets of Requests for Admissions were served, contested, and exchanged. *Id.* The nearly two hundred docket entries reflect how aggressively this case has been litigated for over four years.

3. <u>The Class Was Certified on February 27, 2104 After Extensive Briefing</u>

On June 14, 2013, Mr. Gragg filed his motion for the Court to certify a class of Washington consumers. *See* Dkt. No. 59. Like all other aspects of this case, the parties again vigorously contested the motion, filing opposition papers (Dkt. Nos. 73, 247), reply briefs (Dkt. Nos. 78), supplemental briefing, (Dkt. Nos. 82), and supplemental authorities (Dkt. Nos. 104, 105, 108, 110, 111, 112). On February 27, 2014, the Court issued an order certifying a class as follows:

> All persons in the State of Washington who received a "Dispatch Notification" containing a commercial text message from RideCharge on their cellular telephones after contacting Orange Cab through a means other than a RideCharge product

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

Dkt. No. 119. Defendants soon filed an extensive motion to reconsider on February 28, 2014, which was denied by the Court. (Dkt. Nos. 122, 123, 127, 130). Defendants then requested an interlocutory appeal on the issue of certification, which was denied by the Ninth Circuit Court of Appeals on July 8, 2014, ending a year-long contest over certification. Dkt. No.134. Defendants have indicated that absent this settlement they would appeal the issue of certification.

4. Each Cause of Action was Contested Vigorously by Multiple Motions for Summary Judgment

Like the pleadings, discovery, and certification, the parties engaged in substantial motion practice around Plaintiff's TCPA claim as well as his WCPA/CEMA claim. On July 18, 2013, Defendants filed their Motion for Summary Judgment against Plaintiff's TCPA claim. Dkt. No. 69. Plaintiff not only filed an opposition but also submitted a Cross-Motion for Summary Judgment on September 9, 2013. Dkt. Nos. 83, 85. The parties again briefed the motion with reply briefs and supplemental briefing. Dkt. Nos. 92, 98, 100. The Court then ruled on February 28, 2014 that Plaintiff's TCPA claim was dismissed as a matter of law because Plaintiff could not establish that the system used to send the dispatch notifications at issue qualified as an automatic telephone dialing system (ATDS) under the statute, stating as follows:

> The Court will . . . determine the TaxiMagic program's status under the TCPA based on the system's present, not potential, capacity to store, produce, or call randomly or sequentially generated telephone numbers.

*Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014). Plaintiff timely moved for reconsideration which was denied. Dkt. Nos. 116, 120.

Plaintiff immediately requested an appeal to the Ninth Circuit and the Court certified the issue on April 15, 2014 recognizing the "substantial ground for difference of opinion" on the issue and its substantive impact on the law. *Id.* The FCC took up a substantially similar issue shortly thereafter. Counsel for Plaintiff submitted comments to the FCC because the outcome of the ruling could have a direct impact and benefit for the class. Dkt. No. 199 ¶ 9. On July 10, 2015, the FCC issued a ruling holding that "Congress intended a broad definition of autodialer,

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

and that the [FCC]has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so." Dkt. No. 168. Plaintiff requested the Court to reconsider its previous ruling in light of the change/clarification of law, which Defendants opposed. *Id.* This motion was pending when the parties reached this agreement. Dkt. No. 183. Absent this settlement the Court would ultimately rule on the matter once again, changing the risk for the parties going forward.

Finally, Mr. Gragg filed his own Motion for Summary Judgment on March 12, 2015, under CEMA or alternatively under WCPA, which do not require an ATDS to establish liability. Dkt. No. 151. Defendants responded with a robust opposition. Dkt. No. 155. On November 9, 2015, the Court granted in part Plaintiff's motion finding a cause of action for damages under the WCPA. Dkt. No. 162. Defendants timely moved for reconsideration, which was ultimately denied. Dkts. Nos. 163, 164. Defendants then requested an appeal on December 23, 2015. On April 22, 2016, the Court certified the issue to the Washington State Supreme Court. Dkt. No. 186. Thus, like the ATDS issue related to the TCPA, there continued to be risk for both parties at the time that the proposed settlement was reached.

5. The Parties Reached a Settlement After a Full Day of Mediation and Months of Follow up Negotiations

Settlement negotiations in this matter were as hard fought as the litigation. With a certified class and risk on several significant legal issues pending, the parties agreed to mediate this matter on June 9, 2016. Dkt. No. 192. The parties engaged the Honorable Edward A. Infante (Ret.), an experienced mediator and former Chief Magistrate Judge of the United States District Court for the Northern District of California, who has developed a national reputation as an expert on TCPA cases. Dkt. No. 199 ¶ 10. Due to the significance of the case, as well as the difficulty in finding a resolution, the parties agreed to the expense and time necessary to conduct a full day mediation out-of-state. The parties exchanged detailed mediation statements and exchanged hundreds of pages of documents, outlining their arguments in light of the

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

discovery record. *Id.* Even after a full day of mediation, the case did not resolve. The parties continued settlement discussions with the aid of Judge Infante, and for the next four months the parties worked on putting together a settlement that would balance the Defendants' financial condition against the risks and potential financial exposures. *Id.* The final settlement agreement was fully executed on January 19, 2017.

**B. The Proposed Class Action Settlement**

For the purposes of settlement, the class definition encompasses both the CEMA/WCPA and TCPA claims to not only ensure full and complete relief for the class, but a settlement of all disputed claims for Defendants. The class receiving the benefits and scope of this settlement is as follows: "All persons or entities who received at least one Orange Cab dispatch notification text message on their cellular telephone from RideCharge."

Under the terms of the Settlement Agreement, class members were provided with fully transferrable Taxi Vouchers, with a collective value of approximately $830,328. With class notice, members of the class with identified addresses automatically received a Taxi Voucher worth $12 and redeemable toward a taxi ride by Orange Cab. Other class members could claim a taxi voucher with the submission of a valid claim form. In other words, all class members could avail themselves of the $12 taxi voucher, and all class members with an identified address received the voucher directly with the class notice. In addition, any class member submitting a valid and timely claim will receive a $48 payment from Defendants, with an aggregate potential value of these cash payments of $3,321,312. Defendants also agreed to pay all claims administration costs (estimated at approximately $60,000), Plaintiff's attorney fees and costs, and a service award to the Class Representative.

Due to the Defendants' financial condition, the cash portion of the settlement relief to class members, the plaintiff's service award, and attorneys' fees and costs will be paid out of amounts that RideCharge is entitled to receive as part of the sale of assets (the "Earn-Out"). In settlement negotiations, the defendants offered proof that both Orange Cab and RideCharge lack financial resources to satisfy the range of potential judgments under the TCPA and CEMA. The

HKM ATTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

only viable means of resolving this case and securing relief for the class is to receive payments from the Earn-Out. Therefore, the cash payments to eligible Class Member claimants and Plaintiff's costs, attorney fees, and service award will be funded from Earn-Out payments received by RideCharge.

**C. The Parties' Compliance with the Court's Preliminary Approval Order**

The Parties have fully complied with the Amended Order Granting Preliminary Approval of Class Action Settlement (Dkt. No. 205). The parties engaged JND Legal Administration LLC ("JND") to serve as Settlement Administrator. *See Declaration of Settlement Administrator Jennifer M. Keough* ¶1. JND is a legal administration services provider with operations centers in Denver, Minneapolis, and Seattle. JND has extensive experience with all aspects of legal administration and has administered settlements in hundreds of class action cases. *Id.*

Notice to government agencies under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, occurred on February 10, 2017. JND mailed a cover letter (including a list of case documents) and a CD-ROM containing PDF copies of case documents required under CAFA to 60 Attorneys General and other appropriate federal and state officials advising them of the settlement. *Id.* ¶ 3 & Exh. A.

In addition, JND analyzed the available contact information for Class Members, updated the address information using data from the National Change of Address ("NCOA",) and mailed a postcard notice, along with a taxi voucher code, via first-class regular mail. *Id.* ¶¶ 6 & Exh. B. After all mailing attempts and address updates, there were 48,469 class members whose notices were not returned. *Id.* ¶ 7. A publication version of class notice appeared in *The Seattle Times* on March 30 and April 6, 2017. *Id.* ¶¶ 8 & Exh. C. JND also established a dedicated website (www.taxitextsettlement.com) with copies of important case documents, answers to frequently asked questions, and contact information for the administrator. *Id.* ¶ 10. No class member has objected to the settlement and no class member has opted to be excluded from the settlement. *See Declaration of Donald W. Heyrich in Support of Motion for Final Approval of Class Action*

HKM ATTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

*Settlement; Keough Decl*. ¶¶ 12 & 14.

**III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Speed Shore Corp., v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of second public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution."). "[T]he very essence of settlement is a compromise, a yielding of absolutes and an abandoning of highest hopes." *See Officers for Justice*, 688 F.2d at 624. The Ninth Circuit has repeated on many occasions that "[t]here is an overriding public interest in settling litigation," particularly Class action suits. *See Franklin v. Kaypro Corp.* 884 F.2d 1222, 1225 (9th Cir. 1989).

When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is whether the settlement is "fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litig.* (Fourth) § 21.61, at 480 (2004). The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted). This Court has broad discretion to approve or reject a proposed settlement. *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 942, 944 (9th Cir. 2015).

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

## A. Reasonable Notice Was Provided to the Class

Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *Id.* Further, the court should direct "the best notice practicable under the circumstances, including direct notice to all class members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2). The Supreme Court has held that, when addresses are available, first-class U.S. Mail provides the best notice "practicable under the circumstances." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732 (1974).

Here, the parties executed the notice plan as approved by the Court in the Amended Order Granting Preliminary Approval of Class Action Settlement (Dkt. No. 205): (a) CAFA notices were sent to 60 Attorneys General and other federal and state officials advising them of the settlement; (b) notice of the settlement was sent by first-class mail to 48,469 class members; (c) notice of the settlement was published in *The Seattle Times* on two separate days; and (d) the settlement administrator posted a dedicated website (www.taxitextsettlement.com) with copies of important case documents, answers to frequently asked questions, and contact information for the administrator The notice informed class members of the basis of the claims; who is included in the class; who is eligible for payment and the potential for settlement recovery; how class members may exclude themselves from the settlement; their right to object to the settlement; and the contact information for the settlement administrator. The notice adequately described the terms of the settlement in sufficient detail to alert any person with an adverse view point so that they could have objected and be heard. Adequate notice was provided.

## B. The Proposed Settlement Is Fair Because It Was the Product of Arm's Length Non-Collusive Negotiations

The requirement that the proposed settlement be conducted by arm's-length and non-collusive negotiations protects the proposed class members. Generally, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length

HKM ATTORNEYS
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

by counsel for the class, is presented for Court approval." Newberg § 11.41; *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("considerable weight" given to settlement reached after hard-fought negotiations).

The settlement in this case is presumptively fair because it was reached after more than four years and litigation and months of arms-length negotiations. There is nothing to suggest that there was any collusion between the parties—as the Court found in its order on preliminary approval. Arm's-length negotiations conducted by competent, informed counsel are prima-facie evidence of a settlement that is fair and reasonable. *See Hughes v. Microsoft Corp.,* No. C98-1646C, C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery."); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542–43 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length negotiations"); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004) (approving settlement "entered into in good faith, following arms-length and non-collusive negotiations"). Moreover, the fact that an experienced mediator was involved in the settlement strongly evidences the non-collusiveness of the settlement. *See Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, *5 (N.D. Cal. Apr. 21, 2011) ("[T]he settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of an experienced mediator at JAMS . . . In sum, the court finds that viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted.").

**C. The Settlement Terms are Reasonable**

In considering whether the settlement is adequate and reasonable, the courts balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel." *See Hanlon*, 150 F.3d at 1026. The Ninth

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

Circuit instructs that "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Rather, "the very essence of a settlement is compromise." *Id*. at 624. Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 455 & n. 2 (2nd Cir. 1974)). When a Court considers the risks of litigation, it may look to "the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted).

Here, the settlement is fair and reasonable in light of the significant liability disputes in this case which could deny the class any relief, and the fact that the defendants lack resources to pay a large judgment. *See In re Portal Software Inc. Sec. Litig*., No. C-03-5138 VRW, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of trial and appeal support settlement); *Lane v. Facebook, Inc*., No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (stating that the "risk that a class action may be decertified at any time generally weighs in favor of settlement"). The settlement affords the certain value of a fully transferrable taxi voucher, which was mailed with class notice without requiring the submission of a claim. The settlement also provides a cash payment of $48. The settlement delivers recovery for class members and avoids the risks and expenses of years-long litigation, including potential interlocutory appeals and an appeal after a trial. This case will join a lengthy list of disputed TCPA/CEMA cases which have settled on similar terms.[1]

---

[1] *See, e.g.*, *Manouchehri v. Styles for Less, Inc.*, No. 14CV2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Rinky Dink, Inc. v. Elec. Merchant Sys.*, *et al*., No. 13-CV-1347-JCC, Dkt. No. 151 (W.D. Wash. April 19, 2016) (approving awards in TCPA action of approximately $97 per class member); *Franklin v. Wells Fargo Bank, N.A.*, No. 14CV2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

**D. The Opinions of Experienced Counsel Support Settlement**

Because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation," the Court should give considerable weight to the parties' settlement. *In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995). Plaintiff and Defendants are represented by experienced class action counsel possessing extensive experience in class action matters. The parties' recommendation to approve this settlement is a factor supporting approval. *Eisen v. Porsche*, 2014 WL 439006, at *5 (giving credit to counsels' experience and views of and a mediator's involvement in approving a settlement).

**E. Class Members Have Responded Favorably to the Settlement**

In evaluating whether to grant final approval of a settlement, a court may "gauge the reaction of other class members" by evaluating "the number of requests for exclusion, as well as the objections submitted." *In re Toys 'R' Us-Del., Inc. FACTA Litig*., 295 F.R.D. 438, 455 (C.D. Cal. 2014). Here, no class member has objected to the settlement and no class member has requested to be excluded. This indicates that "the overwhelming majority of the class willingly approved the offer and stayed in the class," which creates some "objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Nat'l Rural Tele. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Chun-Hoon v. McKee Foods Corp*., 716

---

class members received approximately $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-CV-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (granting final approval of TCPA settlement where class members would receive $40 cash or $80 merchandise certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-CV-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-CV-01925, Dkt. No. 229 (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-CV-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("[T]he absence of a negative reaction [] strongly supports settlement. A total of zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of [329] members. The lack of any objection or any requests for exclusion strongly favors approval of the settlement.

**F. There Are No Governmental Objections**

Notice of the settlement was sent to 60 Attorneys General and other appropriate federal and state officials and no governmental entity has objected. This factor weighs in favor of approval. "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to class action settlement, CAFA presumes that, once put on notice, either state of federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *14 (N.D. Cal. April 22, 2010).

## IV. CONCLUSION

For the all of the foregoing reasons, Plaintiff respectfully requests that the Court enter the attached Proposed Settlement Order and Final Judgment.

RESPECTFULLY SUBMITTED: June 27, 2017

*/s/ Donald W. Heyrich*, WSBA #23091
**HKM ATTORNEYS**
600 Steward Street, Suite 901
Seattle, WA 98101
Tel: (206) 838-2504
Fax: (206) 838-2505
Email: dheyrich@hkm.com

Albert H. Kirby, WSBA #40187
**SOUND JUSTICE LAW GROUP PLLC**
936 N. 34th St., Ste. 300
Seattle, WA 98103
Tel: (206) 389-3210
ahkirby@soundjustice.com

Attorneys for Plaintiff

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 14
(Case No. 2:12−cv−00576−RSL)

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

**DECLARATION OF SERVICE**

I, the undersigned, certify that, on this date, I filed the foregoing document via the ECF system which will serve a copy on the counsel listed below:

Kenneth E. Payson, WSBA #26369
Jaime Drozd Allen, WSBA # 35742
James Harlan Corning, WSBA #45177
Jordan A. Clark, WSBA #49659
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Tel: (206) 622-3150
kenpayson@dwt.com
jaimeallen@dwt.com
jamescorning@dwt.com
jordanclark@dwt.com

Benjamin A. Stone
Benjamin.Stone@lewisbrisbois.com
John T. Bender
John.Bender@lewsbrisbois.com
Lewis Brisbois Bisgaard & Smith LLP
1111 3rd Ave Ste 2700
Seattle, WA 98101-3224

Dated: June 27, 2017

*/s/ Donald W. Heyrich*
Donald W. Heyrich, WSBA #23091

**HKM ATTORNEYS**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504